**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SPORTVISION, INC. and SPORTSMEDIA TECHNOLOGY CORPORATION, | : : : : | |
| | : | No. 18-cv-03025 |
| Plaintiffs, | : : | |
| v. | : : : | |
| MLB ADVANCED MEDIA, LP, | : : : | |
| Defendant. | : | |

## FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.  SUMMARY OF THE CASE .................................................................................. 1

II.  THE PARTIES ................................................................................................. 21

III.  JURISDICTION AND VENUE ........................................................................ 23

IV.  BACKGROUND FACTS .................................................................................. 23

    A.  SPORTVISION HISTORY OF INNOVATION ................................................. 23

    B.  SPORTVISION'S "K-ZONE" VIRTUAL STRIKE ZONE GRAPHIC REVOLUTIONIZES BASEBALL ..................................................................... 25

    C.  U.S. PATENT NO. 7,341,530 ........................................................................ 30

    D.  SPORTVISION'S PITCHf/x PITCH TRACKING SYSTEM ........................... 35

    E.  SPORTVISION AND MLBAM SIGN THE ENDEAVOR CONTRACT .......... 37

    F.  OPERATION OF THE ENDEAVOR CONTRACT .......................................... 44

    G.  AMENDMENTS TO THE ENDEAVOR CONTRACT ..................................... 46

    H.  SPORTVISION'S AGREEMENTS WITH REGIONAL AND NATIONAL BROADCASTERS TO EXPLOIT PITCHf/x ............................... 48

    I.  SPORTVISION'S TRADE SECRETS ............................................................... 49

V.  MLBAM'S WRONGDOING ........................................................................... 54

    A.  STRIKE ONE:  MLBAM REPLACES CORE SPORTVISION COMPONENTS IN THE PITCHf/x SYSTEM, BREACHES ITS EXCLUSIVITY OBLIGATIONS, AND INFRINGES PLAINTIFFS' PATENT RIGHTS ............................................................................................ 55

        1.  MLBAM Replaces Core Sportvision Components from the PITCHf/x System with Third Party Components .................................... 55

        2.  MLBAM Infringes SMT's Patent Rights ................................................ 57

    B.  STRIKE TWO:  MLBAM FAILS TO PERFORM UNDER ITS CONTRACT WITH SPORTVISION .................................................................. 60

        1.  MLBAM's Refusal to Negotiate and its Abandonment of the Endeavor Contract .................................................................................. 60

        2.  MLBAM's Failure to Perform its Operational Obligations ..................... 63

    C.  STRIKE THREE:  MLBAM WILLFULLY MISAPPROPRIATES SPORTVISION'S TRADE SECRETS ................................................................ 64

        1.  MLBAM Builds a Derivative System Using Sportvision Intellectual Property .............................................................................. 64

    2.    MLBAM Hires Sportvision's Key Employee to Further its
          Misappropriation of Sportvision Trade Secrets ....................................... 66

  D.    MLBAM'S ONGOING WRONGFUL CONDUCT ........................................... 70

VI.   CLAIMS FOR RELIEF ............................................................................................. 71

VII.  PRAYER FOR RELIEF ............................................................................................ 91

Plaintiffs Sportvision, Inc. ("Sportvision") and SportsMEDIA Technology Corporation ("SMT" and collectively "Plaintiffs"), by way of their Complaint against Defendant MLB Advanced Media, LP ("MLBAM"), hereby allege and say as follows:

## I.    <u>SUMMARY OF THE CASE</u>

1.    This case concerns MLBAM's intentional and wrongful actions that have caused the Plaintiffs substantial and ongoing harm.

2.    For decades, Plaintiff SMT has been an industry leader and an Emmy award-winning provider of products and services to live sports television broadcasters and live sports event producers.

3.    Plaintiff Sportvision has also had a decades-long history of creating innovative graphic enhancements of sports objects and graphic visualizations of sports elements.

4.    Over its 30-year history, SMT has built, and continues to build, its business based on mutually beneficial, long-term, relationships with a Who's Who list of blue-chip clients in four (4) broad categories:

- Broadcasters:  national, regional, and local sports broadcaster in the US and Internationally, e.g., NBC Sports, FOX Sports, ABC Sports, CBS Sports, ESPN, Turner Sports, HBO Sports, Showtime Sports, NESN, MSG, and The Yes Network.

- Sports Organizations: The NFL, The NBA, The NHL, The PGA Tour, NASCAR, IndyCar, The NHRA, The NCAA, The IOC, Crossfit Games, The ATP, The USTA, The USGA, The Governing Bodies of the Four (4) Golf Majors, The Governing Bodies of the Four (4) Tennis Grand Slams..

- Prestigious Events: The Super Bowl, The World Series, The World Cup, The Stanley Cup Finals, The NBA Finals, NCAA March Madness, The Four (4) Golf Majors, The Four (4) Tennis Grand Slams, The Olympics, and The Daytona 500.

- Sports Promotors and Sponsors: IBM, Lagardere, Red Bull, IMG Sports, and Feld Entertainment.

5.      On October 4, 2016, SMT closed on an over $25 million transaction to acquire Sportvision.

6.      SMT's acquisition of Sportvision brought together two of the biggest names in live sports video enhancement and virtual insertion graphics and combined SMT's live-data-integration technology, real-time graphics presentation and video-enhancement solutions with Sportvision's comprehensive virtual-graphics/insertion portfolio.

7.      SMT's strategic interest in Sportvision focused on three asset categories:

1) **Unique Sportvision Core Technology**:  Sportvision had invested tens of millions of dollars to create state-of-the-art core technology components and modules that SMT targeted for incorporation into SMT's technology roadmap.  Sportvision's components, once integrated into SMT's technology pipeline,  could greatly improve, enhance, and expand the features, capabilities, and market reach of SMT's current and future products and services;

2) **Patented Broadcast Enhancement Technology for Three Major U.S. Sports**:

   a) **MLB Baseball**

   i)   Strike Zone and Pitch Location Rendering Technology;

  

K-ZONE                              PITCHf/x
16-years with ESPN                  11-years with MLBAM

ii)  Virtual ADs Behind Home-Plate Technology

 

16-years with ESPN, FOX, and Turner

b)  **NHL Hockey**

i)  Player and Puck 3-D Object Tracking System.

 

"Glowing Hockey Puck" FOX 1995-1996          World Cup of Hockey 2016 - ESPN

c)  **NASCAR**

i)  GPS Tracking of Racecars and the RACEf/x Virtual Pointer System



16 years with FOX, NBC, and ESPN

3) **Sportvision Broadcaster Relationships** (to add to SMT's existing

relationships):  Sportvision had long-standing and comprehensive

contractual relationships with FOX Sports and FOX Sports Regionals,

and with ESPN for Baseball and Monday Night Football.

8.     One of the key factors underlying SMT's decision to acquire Sportvision

was Sportvision's relationship and contractual agreement with Defendant MLBAM, which

generated over $3.0 million in annual revenue – almost all of which was pure licensing fee.

9.     Prior to the date of its acquisition of Sportvision, SMT conducted a 12-

month, in-depth, due diligence process that included analyzing the Sportvision-MLBAM

"Endeavor Contract" that had been signed on February 7, 2006.  The Endeavor Contract defines

a joint initiative between Sportvision and MLBAM to commercially exploit Sportvision's

patented PITCHf/x Tracking System and to meet four key objectives:

Objective 1:  To design, assemble, install league-wide, and operate the
Sportvision designed, Sportvision architected, and Sportvision
assembled PITCHf/x System to capture data on pitches at MLB
games.

Objective 2:  To provide PITCHf/x System Data to MLB-associated entities at
no charge;

Objective 3:  To generate revenue by selling PITCHf/x System Data Rendering
Services to MLB Broadcasters; and,

Objective 4:  To generate revenue by selling PITCHf/x System Data to Data
Subscribers.

10.     The Endeavor Contract contemplates that MLBAM and Sportvision would

work together in a mutually beneficial business arrangement that can be summarized and stated

in terms of the four (4) primary objectives:

1) MLBAM agrees to pay all expenses and costs for Objective 1, and in

exchange for  that funding MLBAM gets:

a) To perform <u>Objective 2</u>;

b) To share in the revenue generated by <u>Objective 3;</u> and,

c) To share in the revenue generated by <u>Objective 4</u>;

2) Sportvision agrees to supply the Sportvision Patents, the Sportvision Intellectual Property, and the Sportvision expertise needed to perform <u>Objective 1</u>, and in exchange for those contributions Sportvision gets:

a) To share in the revenue generated by <u>Objective 3</u>; and,

b) To share in the revenue generated by <u>Objective 4</u>.

11.    SMT's diligence and analysis of the Endeavor Contract revealed 12 sections, paragraphs, and clauses that provide Sportvision with specific commercial protections, risk mitigations, partnership protections and exclusive rights guarantees – all of which would be in full force through December 31, 2019, i.e., three (3) full MLB Seasons from the date of acquisition.  Five (5) of those Endeavor Contract clauses are:

<u>Section 2.4</u>:    MLBAM will notify Sportvision in writing of additional data sets that MLBAM would like to have the Endeavor acquire and exploit but that are outside the scope of the PITCHf/x System. Sportvision will have first option to create such additional data sets.

<u>Section 3.6</u>:    MLBAM will host PITCHf/x Master Data and will provide Sportvision with undisturbed, real-time, 24/7/365 electronic access to PITCHf/x Master Data.

<u>Section 4.1</u>:    MLBAM shall not contract with any third party for the purpose of providing the same data as that provided by the PITCHf/x System.

Section 5.3:   MLBAM shall be responsible for all Total Expenses (a

defined term meaning all costs of operating the PITCHf/x System) on an

annual basis.

Section 7.5:   MLBAM agrees that it will not copy, modify, create any

derivative work, reverse engineer or otherwise attempt to derive the

underlying ideas, algorithms, structure or organization of Sportvision's

Intellectual Property.

12.   As part of its diligence process, SMT scheduled and conducted a due

diligence call on August 18, 2016 with MLBAM's Executive VP of Business, Kenny Gersh, to

discuss the history and current state of the Sportvision/MLBAM relationship and to assess the

likelihood that MLBAM would continue to have a mutually-beneficial business relationship with

the combined SMT/Sportvision entity post-acquisition.  SMT received glowing reviews of the

history of the relationship between Sportvision and MLBAM from Kenny Gersh during that

diligence call.  SMT also received from Kenny Gersh a positive reaction to the prospect of the

combined SMT/Sportvision entity's ability to contribute to the MLBAM relationship.  SMT

received no indication from MLBAM that MLBAM believed the overall Sportvision /MLBAM

contract was void in the eyes of MLBAM at the end of the 2016 MLB Season.

13.   SMT and its investors relied on several factors when deciding to spend

over $25 million dollars to acquire Sportvision on October 4, 2016:

1)  SMT's diligent reading of Endeavor Contract protections, exclusivity,

and 3-year term;

2)  Representations made by MLBAM during the August 18, 2016

diligence call;

3) The over $3.0 million of annual earnings generated by the Endeavor Contract; and,

4) The continued management of the Sportvision/MLBAM relationship by Sportvision's long-term General Manager of Baseball, Ryan Zander, who had been a Sportvision employee since July 18, 2005 and who has intimate Trade Secret knowledge of every aspect of the Sportvision PITCHf/x System – historically, technically, operationally, and commercially.

14.     Other data points reinforced SMT's positive assessment of, and confidence in, the long-term viability of Sportvision's baseball offering and the long-term prospects for the Sportvision baseball business:

1) Sportvision's K-Zone system has been running on ESPN MLB telecasts since 2001;

2) Sportvision's PITCHf/x System has been running during every MLB game since 2008 and has accurately tracked over 10 million pitches in over 30,000 MLB baseball games;

3) Since 2001, MLB fans have come to expect strike-zone graphic renderings and pitch-location graphic renderings with their televised baseball experience; and,

4) Sportvision's PITCHf/x System on-air visualizations have evolved from a "nice to have" feature to a "need to have" feature for any high-quality telecast of an MLB game.

15.     Two (2) forms of multi-year exclusivity gave SMT high confidence in the market viability of the Sportvision baseball business:

1) The Sportvision/MLBAM Endeavor Contract runs through December 31, 2019, and precludes any other entity from supplying pitch tracking technology to MLBAM during the Endeavor Contract Term; and,

2) Sportvision/ESPN co-owned the Virtual Strike Zone patent (U.S. Patent No. 7,341,530 ("the '530 Patent"))[1], which runs through 2023, and which gives Sportvision/ESPN patent protection and market exclusivity over the insertion and display of a strike zone graphic and/or pitch location(s) graphic relative to a strike zone in an image or in video;

16.    These two (2) forms of Sportvision exclusivity – one contained in the Endeavor Contract and one granted by the U.S. Patent office – convinced SMT that any form of MLBAM pitch tracking and any form of MLB broadcaster strike zone and pitch visualizations through December 31, 2019 must necessarily include the commercial participation of Sportvision – effectively a 3-year guarantee of the commercial viability of Sportvision's MLB tracking technology.

17.    Based on the results and findings of SMT's analysis of the Endeavor Contract, SMT confidently included over $3.0 million of annual MLBAM license fees for the 2017, 2018, and 2019 MLB Seasons into its post-acquisition pro forma financial model.  SMT was excited to be acquiring the company that had invented, had perfected, and who would enjoy seven (7) more years of patent protection for the virtual strike-zone and virtual pitch location graphic enhancement for baseball.  In addition, SMT planned to invest in the MLBAM relationship post-acquisition by introducing next-generation SMT graphics renderers, SMT data

_____

[1] As explained in paragraphs 80 - 83, *infra*, prior to the start of the 2017 MLB season, SMT became, and is now, the sole owner of all rights, title and interest in the '530 Patent and ESPN no longer has any ownership interest in the '530 Patent.

transfer technologies, and SMT high-frame rate cameras into the Endeavor's PITCHf/x System. On the day SMT closed on the transaction to acquire Sportvision, SMT was excited about building and growing a stronger and more comprehensive relationship with MLBAM and with MLB.

18.     Within 2 hours of SMT's funds clearing the bank, Sportvision's General Manager of Baseball Products, Ryan Zander, resigned his position at Sportvision to take an Executive Position with MLBAM where his primary responsibilities would be:

1)  overseeing the final stages of removing and replacing several core Sportvision components within the PITCHf/x System to create an MLBAM derivative system; and,

2)  negotiating all MLB broadcaster contracts for the provision of Data Rendering services using the MLBAM derivative system.

19.     This was SMT's first indication that MLBAM's Executive Leadership viewed the MLBAM and Sportvision relationship radically differently from the relationship defined in the language of the Endeavor Contract and described by Kenny Gersh during the August 18, 2016 diligence call.

## SMT'S INTRODUCTION TO THE "REAL" SPORTVISION-MLBAM RELATIONSHIP

20.     In November 2016, the month after SMT closed on the acquisition of Sportvision, SMT's COO, Kirk Brown, reached out to Sportvision's former GM of Baseball, Ryan Zander, who had transitioned from ***Sportvision's lead negotiator*** on PITCHf/x to ***MLBAM's lead negotiator*** on PITCHf/x.  Mr. Brown was seeking to commence good faith negotiations on the Financial Terms between Sportvision and MLBAM for the use of the PITCHf/x System during the upcoming 2017 MLB Season.  Mr. Zander informed Mr. Brown that discussion on that topic would not begin until sometime in December because MLBAM's

immediate focus was on post-World Series meetings and was on the 2016 Season wrap-up.  On December 21, 2016, SMT's Kirk Brown spoke via telephone with MLBAM's Ryan Zander about the status of SMT's Endeavor Contact with MLBAM.  Mr. Zander told Mr. Brown that MLBAM had made the decision to cease using Sportvision's PITCHf/x tracking system for the 2017 MLB season.  Following this December phone conversation between Mr. Zander and Mr. Brown SMT contacted its outside legal counsel.

21.     On January 24, 2017, SMT's counsel sent a letter to MLBAM, making clear SMT's position that the Endeavor Contract remained in effect through 2019.  MLBAM did not respond to SMT's counsel's letter.

22.     On January 30, 2017, SMT's CEO, Gerard J. Hall, contacted Kenny Gersh, MLBAM's Executive Vice President of Business, and requested an in-person meeting.

23.     On February 10, 2017, MLBAM's Kenny Gersh and SMT's Gerard J. Hall met at MLBAM's offices in NYC.

24.     During that meeting:

1)   MLBAM's Kenny Gersh expressed surprise at SMT's position vis-à-vis the Endeavor Contract since, as Mr. Gersh stated to Mr. Hall:

a)   MLBAM's Executive Leadership viewed the Endeavor Contract as being over;

b)   Everyone knew that MLBAM's Executive Leadership and Sportvision's Executive Leadership hated each other.  They had been at odds for years – in fact, there had been literal scream fests between the two of them right in this very office; and,

c)   Everyone knew that MLBAM had been looking to get out of the Sportvision relationship for years.

2) Mr. Hall expressed shock at Mr. Gersh's comments since;

a) This information that supposedly "everyone knew" had not been shared with SMT during the August 18, 2016 due diligence call and certainly was not known by SMT; and,

b) A much different picture of the Sportvision MLBAM relationship had been painted in response to SMT's diligence questions that were posed during the August 18, 2016 diligence call with MLBAM;

25. Mr. Hall reiterated SMT's position that the Endeavor Contract was in full effect through December 31, 2019. Mr. Gersh opined for the sake of academic argument that even if SMT's view of the Endeavor Contract were accurate it would be of no consequence because there is nothing of any substance left in the Endeavor Contract, e.g., SMT does not have the rights to sell PITCHf/x System Data or to sell services to render PITCHf/x System Data; ergo, the Endeavor Contract would be vacuous. Mr. Hall asked Mr. Gersh for an opportunity to present data to Mr. Gersh that Mr. Hall believed would disabuse Mr. Gersh of his opinion regarding the Endeavor Contract. The meeting ended cordially with Mr. Hall committing to send Mr. Gersh a document that would make the case for SMT's position vis-à-vis the contract status as between MLBAM and SMT.

26. On February 21, 2017, Mr. Hall sent Mr. Gersh an email that:

1) Included an attachment which showed SMT's meticulous analysis of the Endeavor Contract including its four (4) Amendments and which enumerated the reasons why SMT believed that the entirety of the Endeavor Contract (i.e., the original Agreement plus the four Amendments) remains in force until December 31, 2019;

2) Enumerated the significant MLBAM obligations under the Endeavor
   Contract that remain in force through December 31, 2019; and,

3) Proposed a solution whereby MLBAM could avoid willfully breaching
   the Endeavor Contract and could avoid willfully infringing SMT
   Patents prior to the start of the 2017 MLB Season.

27.     Mr. Hall's February 21, 2017 email to MLBAM closed with the

suggestion of a face-to-face meeting between Mr. Hall and Mr. Gersh to discuss the solution that

SMT had proposed in the email to continue the SMT-MLBAM relationship under the existing

term of the Endeavor Contract so that MLBAM would avoid willfully breaching the Endeavor

Contract and avoid willfully infringing SMT Patents during the 2017 MLB Season.

28.     On February 24, 2017 Mr. Gersh, presumably in some part due to the

strength of the SMT analysis shared in Mr. Hall's February 21, 2017 email, reversed positions

and acknowledged that MLBAM did not consider the Endeavor Contract terminated.  He further

acknowledged that MLBAM still had obligations to SMT under the Agreement:

> To be clear, MLBAM has not taken the position that it has
> terminated the current PITCHf/x agreement as amended. Rather,
> MLBAM intends to cooperate and continue abiding by the ongoing
> portions of the agreement and will hold SMT to doing the same.

29.     Following Mr. Gersh's February 24, 2017 email, Mr. Hall responded by

asking MLBAM to elaborate on what it viewed its current obligations under the Endeavor

Contract to be since its position on the contract had changed significantly over time.  MLBAM's

refusal to take an actual position on these issues made it impossible for SMT to negotiate with

MLBAM on the core open issue, the revenue sharing metrics for the 2017 season.  Mr. Hall

never received a response from MLBAM to his question as to what specific obligations under the

Endeavor Contract was MLBAM intending to honor for the 2017 MLB season.

30.     Despite all SMT attempts for an amicable resolution prior to the start of the 2017 MLB Season, MLBAM moved forward with its willful and unilateral decision to abandon Sportvision's PITCHf/x Tracking System.  This MLBAM willful decision caused MLBAM to willfully not perform any of its PITCHf/x System obligations under the Endeavor Contract for the entirety of the 2017 MLB Season and caused MLBAM to willfully infringe SMT's patent for the entirety of the 2017 MLB Season.

## HOW DID SMT AND MLBAM GET INTO SUCH AN UGLY SITUATION?

31.     Unbeknownst to SMT and sometime well before SMT's acquisition of Sportvision, the Executive Leadership of MLBAM became unilaterally and willfully focused on stopping Sportvision from receiving any revenue for the tracking and rendering of MLB pitches using an MLB installed league-wide system.  MLBAM's Executive Leadership instructed MLBAM resources to begin a campaign to create a derivative system by replacing several core Sportvision-supplied components within the existing PITCHf/x System.  MLBAM's Executive Leadership was operating under the premise that once core Sportvision components were replaced in the PITCHf/x System there would be no reason for MLBAM to share PITCHf/x System revenue with Sportvision, and no reason for Sportvision to claim any rights to receive any share of the PITCHf/x System revenue.  MLBAM's Executive Leadership had decided without justification or cause to renege on its contractual obligations under the Endeavor Contract that obligated both MLBAM and Sportvision to work together to exploit Sportvision's PITCHf/x technology. MLBAM's Executive Leadership instead wanted to take the fruits of Sportvision's labors for MLBAM's benefit alone, and began a campaign to bring the PITCHf/x System in-house.

32.     Sportvision's legal right to revenue participation in MLB pitch tracking and rendering through December 31, 2019, is protected by:

> 1)  The terms and protective covenants of the Endeavor Contract;

2) The irrefutable fact that Sportvision invented Strike Zone Rendering and Pitch Location Rendering and evidenced by the '530 Patent; and,

3) The irrefutable fact that Sportvision designed and architected the PITCHf/x System.

33.    The above three statements collectively make it impossible to legally remove Sportvision from revenue participation in the PITCHf/x System prior to December 31, 2019.  MLBAM's Executive Leadership's misguided crusade to stop Sportvision from receiving revenue from the PITCHf/x System prior to December 31, 2019 resulted in MLBAM breaching the terms of the Endeavor Contract.  MLBAM's Executive Leadership's campaign to offer a competing pitch tracking and strike-zone rendering service prior to December 31, 2019 – especially a service that is a derivative of the PITCHf/x System, resulted in MLBAM breaching the protective covenants of the Endeavor Contract and in MLBAM infringing SMT's '530 Patent in multiple categories.

34.    Efforts initially by Sportvision, and then by SMT, to professionally remind MLBAM's Executive Leadership of (1) MLBAM obligations under the Endeavor contract; (2) SMT ownership of patents for Strike Zone and Pitch Location Rendering; and, (3) MLBAM revenue obligations to Sportvision for use of SMT patents, SMT intellectual property, and SMT trade secrets in the PITCHf/x System; were met, discounted, and rebuffed with arrogant posturing, and attempts at strong-arm bullying and intimidation tactics from MLBAM's Executive Leadership which in the end effectively equated to daring Sportvision to sue MLBAM.

35.    Over its 30-year history, SMT has never encountered an Executive Leader of a Major US Sports League behaving as if the rules of civility, professional conduct, U.S. contract law, and U.S. Patent law do not apply to their actions and behavior.

36.     SMT Executive Management, relying in part on its 30-year record of engendering mutually beneficial relationships and goodwill with other major US sports leagues and US broadcast clients, was ever-hopeful that the Executive Leadership of MLBAM, despite all evidence to the contrary, would be open to a conversation with the new management of the combined SMT/Sportvision entity about SMT plans for investing in the future of the MLBAM relationship.  Alas, this was not to be the case, MLBAM's Executive Leader would not engage with SMT's Executive Management and so any chance of an amicable resolution to this situation was not possible.  SMT was forced by the actions and behavior of MLBAM's Executive Leadership to resort to legal recourse.

37.     SMT now realizes that the die was cast for the molding of the Sportvision-MLBAM relationship far earlier than the date of SMT's acquisition of Sportvision; ergo, there was no action that SMT's Executive Management could take to convince MLBAM's Executive Leadership not to commit legal wrongs against SMT prior to and during the 2017 MLB Season. In the end, MLBAM's Executive Leadership chose to put MLBAM in legal peril and legal jeopardy rather than honor MLBAM's legal commitments to share revenue with Sportvision for MLBAM's committed and exclusive use of Sportvision's Intellectual Property in the PITCHf/x System.

38.     SMT asserts the following six (6) statements:

1)  The Endeavor Contract is valid through December 31, 2019.

2)  MLBAM has Endeavor Contract obligations through December 31, 2019;

3)  SMT's '530 Patent grants SMT market exclusivity over a means for inserting and displaying a strike zone graphic and/or pitch location graphic relative to a strike zone in an image or video;

4) SMT's '530 Patent is directed to camera image-based strike-zone sizing systems where strike-zone sizes influence strike-zone graphic renderings;

5) MLBAM's assembling of a derivative pitch tracking and strike zone rendering system that uses Sportvision's PITCHf/x System as a blueprint and framework violates the terms of the Endeavor Contract, misappropriates Sportvision's Intellectual Property, and misappropriates Sportvision's Trade Secrets; and,

6) MLBAM's hiring of Sportvision's GM of Baseball Products, Ryan Zander, to oversee MLBAM's market delivery of a derivative PITCHf/x System violates the Defend Trade Secrets Act of 2016.

39.     As detailed herein, MLBAM has harmed SMT and Sportvision through a series of three separate acts:  (1) Strike One:  willfully disregarding the parties' exclusivity agreement and engaging third parties to provide the services previously provided by Sportvision and infringing the Plaintiffs' patent rights; (2) Strike Two:  willfully failing to perform its explicit contractual obligations to Sportvision, including its operational obligations; and (3) Strike Three:  willfully misappropriating Sportvision's trade secrets.  SMT's grievances against MLBAM can be summarized and grouped as three (3) strikes:

| | | Endeavor Breaches | '530 Patent Infringement | Trade Secret Violation |
|---|---|:---:|:---:|:---:|
| **Strike One:** | **Exclusivity Breaches:** | ✓ | | |
| | **'530 Patent Infringements:** | | ✓ | |
| **Strike Two:** | **Non- Performance Breaches:** | ✓ | | |
| **Strike Three:** | **Misappropriation:** | | | ✓ |

## STRIKE ONE:  MLBAM's EXCLUSIVITY BREACHES and '530 PATENT

## INFRINGEMENT

### A.  MLBAM's Ten (10) Endeavor Contract Exclusivity Breaches

| BREACH | CLAUSE | ACTIONS BY MLBAM THAT BREACH ENDEAVOR CONTRACT EXCLUSIVITY PROVISIONS | LANGUAGE |
|---|---|---|---|
| 1 | 2.4 | MLBAM contracted Trackman to measure Pitch Rotations. No MLBAM written notice given to Sportvision. | Sportvision has 1st right of refusal to create additional data sets. |
| 2 | | MLBAM contracted ChyronHego to track player locations on the field vis-à-vis pitches thrown.  No written notice given to Sportvision. | |
| 3 | 4.1 | MLBAM replaced Sportvision's PITCHf/x Tracking System with a Trackman Radar Tracking System | MLBAM shall not contract with any third party for the purpose of providing the same data as that provided by the PITCHf/x System. |
| 4 | | MLBAM replaced Sportvision's Video-Based Strike-Zone Sizing System with Auditor System | |
| 5 | | MLBAM replaced Sportvision's Rendering Systems with ChyronHego Rendering Systems | |
| 6 | 7.5 | MLBAM plugged the replacement tracking component into the PITCHf/x System and tested side-by-side against Sportvision's tracking component. | MLBAM agrees that it will not copy, modify, create any derivative work, reverse engineer or otherwise attempt to derive the underlying ideas, algorithms, structure or organization of Sportvision's IP. |
| 7 | | MLBAM plugged the replacement rendering component into the PITCHf/x System and tested side-by-side against Sportvision's rendering component. | |
| 8 | | MLBAM hired Ryan Zander to give market credibility to PITCHcast vis a vis PITCHf/x | |
| 9 | | MLBAM used the PITCHf/x System to assess, refine, and drive the PITCHcast System development. | |
| 10 | 8.2 | In working with third parties to replace key Sportvision components of the PITCHf/x System with third party components, MLBAM has engaged in processes that reveal to those third parties Sportvision Confidential Information | MLBAM will not use or disclose to any third party Sportvision Confidential Information |

### B.  MLBAM's Infringement Of The '530 Patent

| INFRINGEMENT BY MLBAM |
|---|
| MLBAM makes, uses, sells, and/or offers for sale in the United States PITCHCast*. PITCHcast infringes at least Claim 31 of the '530 Patent |
| * PITCHcast is a component of MLBAM's Statcast system. PITCHcast and its associated digital properties such as At Bat VR, MLBAM's umpire evaluation app, and MLB.com pitch visualizations are collectively referred to as "PITCHcast". |

## STRIKE TWO: MLBAM's ENDEAVOR CONTRACT BREACHES FOR NON-PERFORMANCE

| BREACH | CLAUSE | ACTIONS THAT MLBAM ARE OBLIGATED TO PERFORM  PER THE ENDEAVOR CONTRACT | MLBAM STATUS |
|---|---|---|---|
| 1 | 3.2 | MLBAM will fund the annual PITCHf/x Capital Equipment Budget. | MLBAM Failed to Perform |
| 2 | 3.3 | MLBAM will hire and pay for the PITCHf/x Equipment Operators. | MLBAM Failed to Perform |
| 3 | 3.4 | MLBAM will provide Sportvision access to stadiums and facilities. | MLBAM Failed to Perform |
| 4 | 3.5 | MLBAM will provide contextual game data and the means to conflate that data with the PITCHf/x data | MLBAM Failed to Perform |
| 5 | 3.6 | MLBAM will host the PITCHf/x Master Database | MLBAM Failed to Perform |
| 6 | 3.6 | MLBAM will provide Sportvision with undisturbed, real-time, 24/7/365 electronic access to the  PITCHf/x Master Data | MLBAM Failed to Perform |
| 7 | 4.1 | MLBAM will work in good faith to exploit all reasonable business opportunities for selling the PITCHf/x System Data | MLBAM Failed to Perform |
| 8 | 5.3 | MLBAM will pay all Total Expenses for the operation of the PITCHf/x System on an annual basis. | MLBAM Failed to Perform |
| 9 | 9.3(iii) | MLBAM will perform its obligations per this Agreement in a timely, professional, competent and workmanlike manner | MLBAM Failed to Perform |
| 10 | 12.1 | MLBAM will negotiate in good faith no later than 6 months prior to the Termination of the Contract Term | MLBAM Failed to Perform |

**STRIKE THREE: MLBAM'S MISAPPROPRIATION OF SPORTVISION INTELLECTUAL PROPERTY AND TRADE SECRETS**

### A. MLBAM Misappropriates Sportvision's Intellectual Property in the PITCHf/x Design and Architecture

| | |
|---|---|
| | *MLBAM misappropriated Sportvision's Intellectual Propety in the PITCHf/x Architecture and Design by using the existing and functioning Sportvision-designed and Sportvision-architected PITCHf/x System as a blueprint, roadmap, and shortcut to guide and direct the MLBAM process of assembling a derivative pitch tracking and pitch rendering system that included the steps of:* |
| 1 | Surgically replacing several core Sportvision components within the existing Sportvision designed and architected PITCHf/x System with 3rd Party Components ; |
| 2 | Conducting side-by-side testing of 3rd Party replacement components against existing Sportvision components to characterize performance differences; |
| 3 | Iteratively refining each 3rd Party replacement component's performance to ensure it matches the performance of the original Sportvision component; |
| 4 | Renewing all pitch-tracking rendering service contracts with all MLB broadcasters for the 2017 MLB Season; |
| 5 | Ensuring that all Plug and Play Client interfaces to the derivative system are IDENTICAL to the Plug and Play Client Interfaces to the PITCHf/x System; |

### B. MLBAM Misappropriates Sportvision Trade Secrets

| | |
|---|---|
| | *MLBAM hired Ryan Zander and relied on his knowledge of the following Sportvision Trade Secrets to shortcut MLBAM's development and licensing or a derivative pitch tracking and pitch rendering system to replace the PITCHf/x System:* |
| 1 | Sportvision's Testing and Calibration Trade Secrets, including but not limited to testing and calibration techniques. |
| 2 | Sportvision's Broadcast Display Trade Secrets, including but not limited to customized, nuanced rendering of broadcast graphics, Sportvision's graphic rendering systems, and algorithms that enhance the readability to the viewer, Sportvision's additional pitch positin processing of pitches and contextual algorithm for pitches thrown near the boundary of the strike zone, Sportvision's plug and play design and architecture, and the design and implementation of Sportvision's "Button Box" to control PITCHf/x System Data Rendering output. |
| 3 | Sportvision's Deployment Trade Secrets, including but not limited to deployment and operational know-how and techniques for deploying PITCHf/x in MLB stadiums, such as information concerning the most competent, capable, and PITCHf/x-knowledgeable person in each MLB city and each MLB stadium. |
| 4 | Sportvision's MLB Broadcast Contract Negotiation Trade Secrets, including but not limited to confidential information regarding the broadcast features requested by MLB Broadcasters, the Sportvision price for each feature, Sportvision's pricing methodologies, what works for each broadcaster, what doesn't work for each broadcaster, who is the person in charge of negotiation for each broadcaster, who is the financial decision-maker, who is the on-air production decision-maker for each broadcaster. |

40.     Despite the existence of the binding Endeavor Contract, which is explicitly in force and effect through the 2019 baseball season – a fact that, as detailed herein, MLBAM first denied and now (as it must) accepts – MLBAM has wholly abandoned its contract with Sportvision.  Until MLBAM's wrongful actions that are the subject of this lawsuit, Sportvision worked with MLBAM to operate PITCHf/x and generate the necessary data so that Sportvision could provide the graphical enhancements to broadcasters and others pursuant to the Endeavor Contract and its subsequent amendments.

41.     By jettisoning the PITCHf/x pitch tracking system, reneging on its obligations under its contract with Sportvision, and misappropriating Sportvision's trade secrets and infringing the '530 Patent, MLBAM has injured Plaintiffs and has caused Plaintiffs to suffer significant harm by virtue of lost revenues from broadcasters and MLB teams.  These revenues were expressly contemplated by the parties' contracts.  This has materially undermined Plaintiffs' reputation as a partner for the major professional sports.  Among the collateral damage to Plaintiffs has been an additional loss of revenue within the minor leagues and disrupted relationships with foreign business partners in Korea.

42.     MLBAM's actions also rendered impossible Sportvision's performance of its own contractual obligations to third-party broadcasters for the 2017 and 2018 baseball seasons thus causing Sportvision further injury and reputational harm.

**IN CONCLUSION**

43.     SMT enjoys an enviable industry reputation for being the best in the world at creatively harnessing cutting-edge technology to innovate state-of-the-art features for the benefit of sports leagues, sports broadcasters, and sports fans.

44.     SMT, through is acquisition of Sportvision, has acquired the company that conceived, invented, perfected, developed, and deployed:

1) Live and accurate pitch path tracking;

2) Virtual Strike-Zone and Virtual Pitch Location graphics for broadcast; and,

3) The PITCHf/x System; (which has run flawlessly in every MLB stadium for the last nine (9) full MLB seasons including accurately tracking over 10 million pitches.)

45. Sportvision has had a hugely positive impact and made a significantly positive contribution to the cultural landscape and fan experience of Major League Baseball over the past 16 years. SMT's broadcast offerings have improved and enhanced the viewing experience of MLB baseball fans and SMT's pitch data capture and pitch data delivery systems have improved and enhanced the analytics of baseball across every MLB baseball constituency including the biggest stakeholders in the MLB's future success: owners, players, fans and broadcasters.

46. SMT takes significant pride in all that Sportvision technology has accomplished for the sport of baseball and for Major League Baseball over the past 16 years. SMT also takes considerable pride in Sportvision's having added such an innovative, visible, and positively received contribution to the baseball fan's broadcast viewing experience. Finally, SMT takes significant pride in its overall positive association with Major League Baseball, but the actions of MLBAM's Executive Leadership compelled SMT to file this action.

## II.    THE PARTIES

47. Sportvision is a Delaware corporation that maintains its principal place of business at 3511 University Drive, Durham, North Carolina 27707.

48. Sportvision is a premier innovator of sports and entertainment products for fans, media and marketers and has enhanced experiences for fans, media and marketing partners

of the NFL, MLB, NASCAR, The Olympic Games, NHL, PGA TOUR, LPGA Tour, NBA, NCAA, WTA, MLS, IRL, X Games, America's Cup and other sporting events on-Air and online.

49.     SMT is a Delaware corporation that maintains its principal place of business at 3511 University Drive, Durham, North Carolina 27707.

50.     SMT is a pioneer in real-time on-screen graphics, tickers, clock-and-score, virtual insertions and social media integration for live televised sport and entertainment events.

51.     SMT's solutions have enhanced events including the Super Bowl, NASCAR, the NCAA Men's Basketball Tournament, the PGA Tour, the Indianapolis 500 and the X Games.

52.     SMT also has long-standing relationships with national sports broadcasters including NBC Sports, ESPN, ABC Sports, CBS Sports, Fox Sports, HBO Sports, and Turner Sports and with regional broadcasters and local affiliates.

53.     On October 4, 2016, SMT acquired all of the outstanding stock of Sportvision.  SMT's acquisition of Sportvision brought together two of the biggest names in live sports video enhancement and virtual insertion graphics and combined SMT's live-data-integration technology, real-time graphics presentation and video-enhancement solutions with Sportvision's comprehensive virtual-graphics/insertion portfolio.

54.     MLBAM is a Delaware limited partnership of the club owners of MLB with its principal place of business located at 75 Ninth Avenue, New York, New York 10011.

55.     MLBAM manages and directs MLB's digital properties, including the website for all thirty MLB teams.

### III.   JURISDICTION AND VENUE

56.     This Court has jurisdiction over this action pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331 and 1338 and because this is an action for patent infringement that seeks damages and injunctive relief and so arises under the Patent Laws of the United States.  35 U.S.C. § 1 *et seq*.  The Court has supplemental jurisdiction over the other claims asserted herein pursuant to 28 U.S.C. § 1367.

57.     This Court has personal jurisdiction over MLBAM because MLBAM has its principal place of business within the State of New York.

58.     Venue is appropriate in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1391 and 1400 because acts of infringement of the asserted patent have occurred in this District, and because MLBAM has a regular and established place of business in this District and is subject to personal jurisdiction in this District.

59.     Additionally, pursuant to Section 13.10 of the Endeavor Contract, "the parties consent to the exclusive jurisdiction and venue of any court of competent jurisdiction sitting within the State of New York, County of New York with respect to any dispute arising of or relating to th[e] [a]greement."

### IV.   BACKGROUND FACTS

#### A.   SPORTVISION HISTORY OF INNOVATION

60.     Sportvision has had a long history of creating innovative and game-changing graphic enhancements of sports objects and game-changing graphic visualizations of otherwise non-visible sports elements that are integral to how the sport activity is conducted.

61.     Upon information and belief, Sportvision innovations have increased the total broadcast audience for the sports in which they have been employed.

-23-

62.     Sportvision's innovations allow a sports telecast to appeal to a broader audience because the innovations simplify the action (or in some cases makes an otherwise not visible component visible) which allows the immediate objective of the athletes in the contest to become intuitive and obvious even for a newcomer to the sport.

63.     In a mere five-year span from 1996 to 2000 Sportvision engineers conceived, designed, developed, commercially deployed and patented four (4) of the most innovative and iconic sports broadcast enhancements in the history of sports television:

1)   The Glowing Hockey Puck (U.S. Patent 5,564,698);



2)   The 1st & Ten Yellow Line (U.S. Patent 6,266,100);



3)  NASCAR Pointers (U.S. Patent 6,744,703)



4)  MLB Virtual Ads (U.S. Patent 6,864,886)

 

**B.    SPORTVISION'S "K-ZONE" VIRTUAL STRIKE ZONE GRAPHIC REVOLUTIONIZES BASEBALL**

64.    In late 1999, Jed Drake, the ESPN Senior Coordinating Producer who had worked with Sportvision on the ESPN debut of the 1st and Ten Yellow Line, and who had worked with Sportvision on the ESPN debut of the Sportvision MLB Virtual ADs System, collaborated with Sportvision engineers on the idea of creating a new Sportvision virtual insertion system capable of:

1)  Generating and inserting a Virtual Strike Zone graphic, custom-sized for each batter, over home plate during ESPN broadcasts of Major League Baseball games; and,

2)  Generating and inserting a Virtual Pitch Location graphic showing the

location of where the last pitch crossed the front plane of home plate

relative to the current Virtual Strike Zone.

65.     True to Sportvision's marketing tagline, "Changing the Game",

Sportvision engineers welcomed the opportunity to take on such a technically challenging project

for ESPN; particularly, because such a project (1) would leverage and use most of the innovative

technology that Sportvision had developed during the previous 5-year period; (2) would allow

Sportvision to create an unprecedented baseball broadcast feature; and, (3) would allow

Sportvision to positively impact, enhance, and "Change the Game" of how baseball was

presented to baseball fans on television.

66.     ESPN called the Sportvision on-air enhancement "K-Zone$^{TM}$". Jed Drake

described ESPN's motivation for wanting to add this new virtual insertion feature to ESPN

broadcasts of baseball: "As a baseball fan, we wanted to do for baseball something that has

never been done before.  It was not an easy thing to do."

(https://www.espnfrontrow.com/2011/07/happy-10th-birthday-k-zone/ last visited March 16,

2018.)

67.     ESPN made the project objective very definitive, very specific, and very

clear.  Sportvision was to create, develop and operate during each ESPN MLB broadcast a never-

before-seen baseball broadcast enhancement.  The on-air presentation of this enhancement would

comprise two components, a persistent Virtual Strike Zone Graphic and temporal Virtual Pitch

Location Reveal Graphic called K-Zone.  K-Zone was to be used by ESPN only and only during

ESPN broadcasts of baseball.  ESPN wanted K-Zone to be an exclusive positive differentiator of

ESPN MLB broadcasts against all other broadcasters of MLB baseball games.

68.     Because the K-Zone system is complex, unconventional, and novel, it took Sportvision engineers approximately eighteen months to perfect the Sportvision K-Zone virtual system and to make it ready for use during ESPN telecasts of MLB baseball games.  As ESPN's Jed Drake stated, "Unlike the 1st and 10 line in football – which stays fixed in one position – the strike zone is constantly varying in vertical height.  [ESPN and Sportvision] were developing this system from scratch and it was very complex at times."

(https://www.espnfrontrow.com/2011/07/happy-10th-birthday-k-zone/ last visited March 16, 2018.)

69.     Sportvision's K-Zone system consists of multiple sub-systems, including a pitch tracking system, a strike zone sizing system, a virtual graphics rendering system for virtual strike zone and virtual pitch location reveal, and a virtual graphics insert recording system for replay.  The pitch tracking system tracks the pitch as it crosses home plate and identifies the location where the pitch crosses within 1 inch of accuracy and within 1 second of delay.  The strike zone sizing system stores the strike zone height parameters for every batter ever seen by the system, and it also allows the strike zone for the current batter to be measured and or adjusted as needed by referencing the video image from a camera (*e.g.*, the centerfield camera).  The virtual graphics rendering system for the virtual strike zone and virtual pitch location reveal combines the outputs of (1) the pitch tracking system, (2) the strike zone sizing system, and (3) the centerfield camera to produce three formats of the virtual strike zone, and the virtual pitch location renderings: single-pitch; accruing at-bat pitches; and a 3-D prism strike-zone.  The virtual graphics insert recording system records the outputs of the virtual graphics rendering system into separate channels for use by ESPN in replay.

70.     Sportvision operations engineers designed the Sportvision K-Zone System to be housed in, operated in, and transported game-to-game by, an ESPN-dedicated broadcast

truck or trailer.  In this way, the system could be installed in that ESPN-dedicated truck or trailer once - at the start of an MLB Season - and then ride to each MLB game on the ESPN schedule for that season.  The Sportvision mobile, camera-based, pitch tracking system component of the K-Zone system, (which had to be installed in each stadium prior to the game, operated during the game, and then removed after the game), was also packed, stored, and traveled with the ESPN-dedicated truck or trailer from venue to venue.

71.      Sportvision licensed K-Zone to ESPN exclusively.  On July 1, 2001, ESPN officially debuted the K-Zone baseball broadcast enhancement on ESPN's Sunday Night Baseball, and since that 2001 debut, Sportvision has run the K-Zone System on ESPN Sunday Night Baseball, ESPN Monday Night Baseball and ESPN Wednesday Night Baseball telecasts.



**Example of a single pitch package graphic rendering of the K-Zone:**



**Example of a multiple pitch package graphic rendering of the K-Zone:**

72.     In 2002, Sportvision patented the Camera-Based Pitch-Tracking System and Virtual Strike Zone System, (See the '530 Patent.)  The '530 Patent grants Sportvision patent protection over the insertion of a Strike Zone Graphic and/or Pitch Location Graphic into any form of a video representation including broadcast and digital applications.

73.     In 2002, Sportvision and ESPN won the Technical Achievement and Innovation Emmy for its development of the K-Zone system and the positive impact it has had on the presentation and television coverage of MLB games.  Hundreds of articles have been written about the K-Zone system and the positive impact of having a Virtual Strike Zone and Live Pitch Location system on-air during MLB broadcasts.  The K-Zone computer-generated Virtual Strike Zone and Pitch Location Graphics, with accuracy within 1-inch, has greatly increased the viewing experience of ESPN baseball fans.  Because the K-Zone System can visually contradict the call of umpire, it has been the source of interest and debate over many years among baseball statisticians, fans, team owners, players, umpires, and MLB.

74.     Upon information and belief, Sportvision's K-Zone system revolutionized the television coverage and broadcast of MLB games.  Sportvision's K-Zone system has had a positive impact on MLB viewership.  ESPN's adoption and use of K-Zone has been very good for baseball in general and for MLB specifically.

75.     For five (5) years from 2001 to 2005, ESPN was the only MLB broadcaster with the right to insert Virtual Strike Zones and Pitch Location Reveal Graphics into broadcasts of MLB games.

76.     Upon information and belief, after the introduction of K-Zone, market demand for pitch graphics and pitch data from other MLB broadcasters who wanted their own versions of Virtual Strike Zone Graphics and Pitch Location Reveal Graphics greatly increased. In addition, upon information and belief, the display of Sportvision's K-Zone Pitch Location Reveal Graphics on-air during every ESPN MLB broadcast since 2001 drew tremendous attention from baseball statisticians who were very interested in getting their hands on as much pitch data as possible.

77.     Despite K-Zone's revolutionary innovation, market success, and positive fan reception, Sportvision's K-Zone System nonetheless had inherent limitations.  In particular, the pitch tracking technology inherent in the K-Zone system is limited to tracking the flight of the pitch over home plate only; and since the pitch tracking technology has an inherent one (1) second delay before the system reports the location of the pitch at the moment it crossed the plane of home plate, K-Zone's Virtual Pitch Location Reveals were available only in replay. Sportvision engineers saw these inherent K-Zone tracking system limitations as an opportunity to create a faster, more complete, baseball tracking system

## C.     U.S. PATENT NO. 7,341,530

78.     On March 11, 2008, the United States Patent and Trademark Office ("USPTO") duly issued the '530 Patent, entitled "VIRTUAL STRIKE ZONE." A true and correct copy of the '530 Patent is attached hereto as Exhibit A.

79.     The invention claimed in the '530 Patent is practiced in Sportvision's K-Zone systems.

80.     Prior to SMT's acquisition of Sportvision on October 4, 2016, Sportvision and ESPN each held an undivided joint ownership interest in the '530 Patent.

81.     Following SMT's acquisition of Sportvision on October 4, 2016, Sportvision assigned its interests in all of its patents, including the '530 Patent to SMT.

82.     Effective February 1, 2017, approximately two (2) full months prior to the start of the 2017 MLB Season, ESPN assigned its undivided joint ownership interest in the '530 Patent to SMT.

83.     As a result of the above actions, prior to the start of the 2017 MLB season, SMT became, and is now, the sole owner of all rights, title and interest in the '530 Patent.

84.     The claims of the '530 Patent are directed to systems and methods that determine the location of the strike zone and add a graphical image of the strike zone to a video or other image of a baseball game.  For example, claim 31 recites:

> A method of providing strike zone information, comprising the steps of:
>
> determining a location of a strike zone for a first batter by receiving an indication of one or more positions on said first batter in an image of said first batter and using said indicated positions to automatically calculate height and a three dimensional volume of said strike zone;
>
> determining a first position in a video, said first position corresponding to said location of said strike zone; and
>
> adding an image for said strike zone to said video at said first position, wherein said step of determining the first position includes:
>
> converting the three dimensional volume of said strike zone to two-dimensional locations within the video using data in video.

85.     Prior to the invention claimed in the '530 Patent and practiced in Sportvision's K-Zone system, the determination of the strike zone for a batter was determined

through visual estimation by the viewer.  Such estimation is problematic and undesirable because it includes a wide range of error.

86.     Casual fans may not know what the rules are to determine a strike zone, and even if those rules are known, casual fans and even umpires are not able to make consistent strike zone determinations, which affects how one determines if a pitch is a strike.  The problem of determining a strike zone is magnified for viewers of a baseball video because the video is two dimensional, and a strike zone is three dimensional.  When viewers watch a baseball game on television, it is not clear to the viewer where the exact boundaries of the strike zone exist, and whether the umpire correctly determined whether the pitch was a strike or a ball.  Prior to K-Zone, television broadcasters could only overlay an uncalibrated graphical rectangle on the video broadcast portending to be the strike zone.  Given the state of the art at the time of the invention of the '530 Patent, including the deficiencies in prevailing video depictions of the strike zone, the inventive concepts of the '530 Patent cannot be considered to be conventional, well-understood, or routine.

87.     "[D]etermining a location of a strike zone for a first batter by receiving an indication of one or more positions on said first batter in an image of said first batter and using said indicated positions to automatically calculate height and a three dimensional volume of said strike zone" is a principal object and advantage of the present invention.  Conventional solutions were not able to determine a location of a strike zone in the claimed manner because they did not receive an indication of one or more positions of the batter in an image of the first batter and use those positions to automatically calculate height and a three dimensional volume of the strike zone.  Automatically calculating height and a three dimensional volume of a strike zone using one or more positions of the batter in an image was not well-understood, routine, or conventional at the time of the invention.

88.    The '530 Patent discloses an exemplary embodiment of this unconventional means for determining a strike zone.  First, "[a] three dimensional coordinate system is defined with the origin of the coordinate system at the corner of home plate."  ('530 Patent at 2:52-60.)  Then three parallel lines in the three dimensional coordinate system are created, with each at a different height.  ('530 Patent at 2:61-63.)  The bottom line is at the batter's feet, the middle line through the hollow of the back of the batter's knee, and the top line through the batter's belt.  ('530 Patent at 3:4-8.)  These one or more positions from the first batter in an image along with the dimensions of home plate are used to determine height and the three dimensional volume of the strike zone, as required by claim 31.  ('530 Patent at 3:21-28.)  This unconventional means of determining the strike zone is advantageous because it provides accuracy and consistency, which differs significantly from conventional means in which viewers (including umpires) merely "eyeball" or use their best estimate to determine the location of the strike zone.  In the claimed invention, the actual volume over home plate is measured and calculated, and that measurement is used with the one or more positions of the batter in an image to calculate an accurate and consistent strike zone for that batter that is superior to human estimation.

89.    Another principal object and advantage of the claimed invention is the addition of the strike zone image to the video of the batter.  As ESPN's Jed Drake confirmed when asked what makes Sportvision's K-Zone system unique, "The most important aspect is that it's inserted over live video."  (https://www.espnfrontrow.com/2011/07/happy-10th-birthday-k-zone/ last visited March 16, 2018.).  Conventional means for adding a strike zone to an image comprised of simply drawing a rectangle based on a visual estimate of the actual strike zone.  This is problematic for the reasons discussed above in that it is based on human estimation and does not accurately consider three-dimensional volume of the strike zone.  Advantageously, the

claimed invention improves upon the display of a strike zone graphic in a nonconventional way by using the accurate height and three dimensional strike zone determined above and converting this information into two-dimensional locations within the video by using data in the video.  For example, the '530 Patent discloses a novel Strike Zone computer receiving video from the broadcaster, wherein the video includes a camera identifier in the vertical blanking interval, and based on the camera identifier, the Strike Zone computer accesses the appropriate camera sensor data and transforms the three dimensional strike zone into a two dimensional coordinate set to insert into the video.  ('530 Patent at 5:1-35.)

90.    Sportvision's graphical renderings of strike zones and pitches through Sportvision's K-Zone system practice at least claim 31.  Sportvision's K-Zone system determines a strike zone for a batter using a sophisticated process that includes using a three dimensional coordinate system to define the strike zone.

91.    In the Sportvision K-Zone system, a camera mounted in centerfield of a stadium was used to adjust the height of the strike zone for each batter.  Strike zone data is identified as follows:  the top of the strike zone is designated as "sz_top" and "sz_bot" designates the bottom of the strike zone.  (http://www.baseballprospectus.com/article.php?articleid=14098 (last visited June 28, 2017).)  Inputs indicating one or more positions in a video regarding the batter's strike zone are used to adjust the strike zone height.  (*Id*.)  For example, "[j]ust before each pitch, as the batter takes his stance, the operator marks lines on the center field camera video corresponding to the height of the hollow of the batter's back knee and to the batter's belt." (*Id*.)  The line at the batter's knee is reported in the data as sz_bot and the system automatically calculates the top of the strike zone at the height of the batter's belt and reports that value as sz_top.  (*Id*.)  The units are in feet, and measurements for sz_bot and sz_top can vary from day to day and pitch to pitch for a given batter.  (*Id*.)  Because the strike zone is a three dimensional

volume, the volume for the strike zone is also automatically calculated by the Sportvision K-Zone system.

92.     Every strike zone measurement for every batter is recorded and available through select web sites.  (*See, e.g.*, http://gd2.mlb.com/gdcross/components/game/mlb/year_2017/month_06/day_13/gid_2017_06_1 3_milmlb_slnmlb_1/inning/inning_all.xml (last visited June 28, 2017).)

93.     After the Sportvision K-Zone system determines the strike zone, the Sportvision K-Zone system determines the position in the video to insert the strike zone, and the strike zone is converted to a two-dimensional representation and placed on the video:



(http://www.sportvision.com/baseball (last visited June 28, 2017).)

94.     The invention claimed in the '530 Patent can be practiced in television broadcast enhancements like Sportvision's K-Zone, consumer applications like MLB At-Bat, performance analysis like MLB umpire evaluation systems, or other forms of entertainment and/or evaluation.

**D.     SPORTVISION'S PITCHf/x PITCH TRACKING SYSTEM**

95.     From 2001 through 2005, ESPN's highly successful, and fan favorite use of Sportvision's K-Zone system in all ESPN MLB Broadcasts increased the market demand for

all forms of MLB pitch data and the market demand for a broadcast alternative to K-Zone that could be used by other MLB Broadcasters.  Sportvision's CTO, Marv White, began investigating if it was possible to accurately estimate the full pitch path trajectory for any pitch by using only the tracking data received from the K-Zone tracking system.  Marv White worked and collaborated closely with Yale professor and author of The Physics of Baseball, Robert Adair. The project's research and analysis concluded that it was not possible for the K-Zone tracking system, which provides tracking data over home plate only, to provide enough information to calculate or infer the full trajectory path of a pitch.

96.     That same study also concluded that by using cameras that are angled to capture the pitcher and batter in the same frame, the path of the pitch can be sampled in a video sequence from release to catch and the equations of motion of the pitch can be solved with linear algebra.  Sportvision engineers worked for years to independently develop and then patent a new and sophisticated camera-based pitch tracking system that could track detailed information along the entire trajectory of a pitch, *i.e.*, from the pitchers' release point through to the catchers' mitt.

97.     Sportvision called the new, full pitch path, tracking system PITCHf/x.

98.     Differentiated from the original Sportvision K-Zone pitch tracking system, the Sportvision PITCHf/x pitch tracking system is not limited to just tracking pitches as they crossed home plate.  Rather, the Sportvision PITCHf/x pitch tracking system can track the entire pitch path and can also derive detailed information along each pitch's entire path, such as location, angle, amount of break, speed at release, and speed as the ball crossed home plate.

99.     In addition to the richness of the tracking data over the entire pitch path, the Sportvision PITCHf/x pitch tracking system is also much faster than the Sportvision K-Zone pitch tracking system:  the PITCHf/x system tracks the entire trajectory of the pitch in near real-time, and can "track" the location of where the pitch will cross home plate faster than real-time,

i.e., the Sportvision PITCHf/x pitch tracking system can predict the location of where the pitch will cross home-plate to within one inch accuracy - before it happens.

100.    Sportvision's PITCHf/x's pitch tracking system's predictive capability opened the possibility of combining the display of a persistent on-air Virtual Strike Zone Graphic with the instant display of a Virtual Pitch Location Reveal Graphic synchronized with live video. Sportvision's PITCHf/x pitch tracking system provided Sportvision with the missing component that would allow Sportvision to build a system that could insert pitch locations graphics into live video.  In 2006, Sportvision patented the Sportvision PITCHf/x pitch tracking system, see U.S. Patent No. 8,335,345, Tracking an Object with Multiple Asynchronous Cameras.

101.    Sportvision engineers also designed and developed a database system to store all of the PITCHf/x pitch path data, and designed a distribution interface system to make the pitch data available in a variety of formats that would be needed to serve different data consumption use cases.

## E.    SPORTVISION AND MLBAM SIGN THE ENDEAVOR CONTRACT

102.    In an effort to make the benefits of the Sportvision PITCHf/x Pitch Tracking system available to the widest audience possible and to monetize its new invention, Sportvision in 2005 presented a proposal to MLBAM whereby Sportvision would (1) permanently install a Sportvision camera-based PITCHf/x Pitch Tracking system in every MLB Stadium, (2) operate the Sportvision PITCHf/x Pitch Tracking system for every MLB game, (3) record the pitch path trajectory for every pitch thrown in every MLB game, and (4) make the pitch data in various formats available to a variety of users and use cases, including live pitch data graphic renderings, replay pitch data graphic renderings, and post-game digital summaries and reports.

103.    Upon information and belief, because of Sportvision's five (5) years of success with ESPN and Sportvision's K-Zone system, MLBAM was receptive to Sportvision's PITCHf/x pitch tracking system proposal.  Sportvision proposed that MLB pitch data captured and produced in the manner proposed by the Sportvision PITCHf/x Pitch Tracking system, rendered into strike-zone graphics and pitch location graphics by the Sportvision renderers, and delivered to MLB broadcasters or delivered to MLB data subscribers would have material valuable to MLB teams and the league for both evaluating player performance as well as umpire performance and would enable MLB broadcasters to explain and show aspects of the game that were simply impossible previously.

104.    Following the presentation of its proposal to MLBAM, Sportvision and MLBAM began negotiating and finalizing the structure and terms of an agreement which contemplated installing Sportvision's PITCHf/x Pitch Tracking system and Sportvision Rendering systems into every MLB stadium.

105.    On February 7, 2006, Sportvision and MLBAM entered into a six (6) – year contract, which defined a joint initiative between the parties called the "Endeavor".  A true and correct copy of the Endeavor Contract is attached hereto as Exhibit B.

106.    "PITCHf/x System" as used throughout the Endeavor Contract refers to the system conceived, designed, architected, developed, assembled, installed and maintained by Sportvision to capture and present pitch data from MLB games.  It is comprised of several Sportvision sub-systems including:  (a) Sportvision's patented PITCHf/x pitch tracking system; (b) Sportvision's patented Strike Zone Sizing system; (c) Sportvision's patented Strike Zone Rendering System; (d) Sportvision's External Interface System; and, (e) Sportvision's Intellectual Property and Trade Secrets.  "PITCHf/x System Data" as used throughout the Endeavor Contract refers to data on pitches captured by the PITCHf/x System.

107.    The purpose of the Endeavor Contract was to provide a way for

Sportvision and MLBAM "to work together on an endeavor to capture, collect, market and

disseminate" data collected on the pitches of MLB players.  Ex. B, Recitals, at 1.  The Endeavor

Contract had four primary objectives:

> Objective 1:    To design, assemble, install league-wide, and operate the
> Sportvision designed, Sportvision architected, and Sportvision
> assembled PITCHf/x System to capture data on pitches at MLB
> games.
>
> Objective 2:    To provide PITCHf/x System Data to MLB-associated entities at
> no charge;
>
> Objective 3:    To generate revenue by selling PITCHf/x System Data Rendering
> Services to MLB Broadcasters; and,
>
> Objective 4:    To generate revenue by selling PITCHf/x System Data to Data
> Subscribers.

108.    Through the Endeavor Contract, the parties "desire[d] to establish the

Endeavor to exploit commercial opportunities related to the PITCHf/x System."  Ex. B, § 4.1.

109.    In order to exploit these commercial opportunities, the Endeavor Contract

contemplates that MLBAM and Sportvision would work together in a mutually beneficial

business arrangement that can be summarized and stated in terms of the four (4) primary

objectives:

> 1)  MLBAM agrees to pay all expenses for Objective 1, and in exchange
>
> for that funding MLBAM gets:
>
> > a)  To perform Objective 2;
> >
> > b)  To share in the revenue generated by Objective 3; and,
> >
> > c)  To share in the revenue generated by Objective 4;

2) Sportvision agrees to supply the Sportvision Patents, the Sportvision
Intellectual Property, and the Sportvision expertise needed to perform
Objective 1, and in exchange for those contributions Sportvision gets:

    a) To share in the revenue generated by Objective 3; and,

    b) To share in the revenue generated by Objective 4.

110.    The Endeavor Contract required Sportvision to provide all the Sportvision

patented technology and Sportvision IP required to assemble and build out the PITCHf/x System.

*Id.* § 2.1.

111.    The Endeavor Contract required MLBAM to do the following, among

other operational requirements:

- Use commercially reasonable efforts to maximize the participation of
Major League Baseball teams that will permit the installation of the
PITCHf/x system.  (§ 3.1)

- Work with Sportvision "to generate leads, set up and attend meetings with
potential clients and sponsors, create sales materials, approve deals, and
prepare and finalize contracts with clients and sponsors."  (§ 4.1)

- Fund the costs of the capital equipment (such as cameras, cable, monitors,
software, etc.) necessary to operate the PITCHf/x system.  (§ 3.2)

- Hire, schedule and manage the operators of the PITCHf/x system.  (§ 3.3)

- Host and maintain the master version of all PITCHf/x system data. (§ 3.6).

112.    Section 3 of the Endeavor Contract thus required that MLBAM pay for the

installation, operation, maintenance and use the Sportvision pitch tracking system in every one of

the 30 MLB stadiums and to pay all the expenses and costs necessary to support the PITCHf/x

systems in each one of the stadiums.

113.    Because the operation of the Endeavor's PITCHf/x System fundamentally

depends on Sportvision patents and intellectual property, Sportvision insisted that the Endeavor

Contract include certain exclusivity language and safeguards to protect Sportvision's

involvement in the Endeavor:

- Section 2.1(b) of the Endeavor Contract provides that Sportvision shall own any improvements or modifications made by MLBAM to any aspect of the PITCHf/x system except for improvements or modifications made by MLBAM to the Sportvision External Data Interface, which MLBAM shall own.  The section further states that Sportvision will not deliver or share any source code, documentation, technical processes, formulas, or Sportvision intellectual property related to Sportvision's ability to optically track objects and collect information about such objects.

- Section 2.4 of the Endeavor Contract requires that MLBAM notify Sportvision in writing of additional data sets that MLBAM would like the Endeavor to acquire that are outside the scope of the current PITCHf/x System, and Sportvision has the exclusive first rights to create additional data sets for the Endeavor.

- Section 4.1 of the Endeavor Contract requires that MLBAM will not contract with any third party for the purpose of providing the same data as that provided by the PITCHf/x System.

- Section 7.5 of the Endeavor Contract requires that MLBAM will not copy, modify, create any derivative work, reverse engineer, or otherwise attempt to derive the underlying ideas, algorithms, structure or organization of Sportvision's intellectual property.

- Section 8 of the Endeavor Contract imposes non-disclosure obligations on both MLBAM and Sportvision.

114.    Section 4.1 of the Endeavor Contract further provides that during the term

of the agreement, "the Parties will work in good faith to explore and exploit all reasonable

business opportunities for the marketing, sale and licensing of the PITCHf/x System Data to

maximize revenues for the Endeavor . . . ."

115.    As set forth in Section 4.1 of the Endeavor Contract, MLBAM and

Sportvision intended for the PITCHf/x System data to be marketed and sold for use in the

following applications:  (i) internet-based applications; (ii) national broadcast network

enhancements; (iii) regional sports network and local broadcast enhancements; (iv) gaming

platforms; (v) national sponsorships; (vi) wireless, syndication, and Club data; (vii) customized

data integration with digital editing suites for MLB Clubs; and (viii) interactive television.

116.    MLBAM and Sportvision also agreed that they would divide the revenues

generated from the joint endeavor.  *Id.* § 5.1.  The biggest source of revenue for the Endeavor

was anticipated to be, and has proven to be, the sale of Sportvision PITCHf/x Data Rendering

services to MLB broadcasters.  Because Sportvision's PITCHf/x Data Rendering services

practice the invention claimed in the '530 Patent, Sportvision took several careful and strategic

steps to preserve, protect, and cleanly delineate Sportvision's right to provide valuable PITCHf/x

Data Rendering services to the Endeavor's MLB broadcaster clients. Specifically, under

Sportvision's ESPN K-Zone contract Agreement:

> 1)  Sportvision had granted ESPN exclusive rights to display Virtual
>     Strike Zone Graphics and Virtual Pitch Location Reveal Graphics over
>     home plate in broadcast video; and,
>
> 2)  Sportvision had compelled ESPN to explicitly affirm and agree that
>     displaying Virtual Strike Zone Graphics and Virtual Pitch Location
>     Graphics ***not over home plate*** in broadcast video was outside the
>     scope of ESPN's exclusivity.

These steps preserved Sportvision's right to provide and offer, without conflict with ESPN,

graphic rendering services of Virtual Strike Zone Graphics and Virtual Pitch Location Reveal

Graphics ***not over home plate*** in broadcast video to MLB Broadcasters.

117.    The strategic contractual steps that Sportvision had taken with ESPN

outside of the Endeavor Contract, allowed Sportvision to cleanly contribute significantly

valuable Virtual Strike Zone Graphic Rendering Intellectual Property to the Endeavor.

Sportvision's rendering Intellectual Property and Sportvision's participation in the Endeavor

allowed the Endeavor to sell lucrative PITCHf/x System Data Rendering Services (i.e., Virtual Strike Zone and Virtual Pitch Location Reveal Graphics not over home plate) to MLB Broadcasters.

118.    In the interest of further clarifying the delineation of Virtual Strike Zone Graphic Rendering IP even more sharply, Appendix A of the Endeavor Contract explicitly states that Virtual Strike Zone Graphics ***over home plate*** and Virtual Pitch Location Reveal Graphics over home plate are not considered part of the PITCHf/x System.  The language of Appendix A explicitly frees Sportvision to support its Sportvision-ESPN K-Zone contract obligations without conflict with the Endeavor, and with the express understanding that K-Zone revenue is not part of the Endeavor revenue.



**Example of a PITCHf/x System Data Rendering graphic for a single pitch.**



**Example of a PITCHf/x System Data Rendering graphic for a multiple pitch package.**

119. During the term of the Endeavor Contract, Sportvision granted to MLBAM "an irrevocable royalty-free license to utilize such Sportvision IP." *Id.* § 7.1.

120. The parties agreed that the initial term of the Endeavor Contract was from February 7, 2006 through December 31, 2011. *Id.* at § 12.1.

## F. OPERATION OF THE ENDEAVOR CONTRACT

121. In accordance with its obligations under the Endeavor Contract, MLBAM funded all of the Capital Equipment required and made all venue personnel and access arrangements as needed so that the PITCHf/x system could be installed in all MLB stadiums and utilized during regional and national broadcasts.

122. Sportvision began installing and deploying the PITCHf/x System in MLB stadiums in a phased roll-out beginning in 2006 as follows:

- The 2006 MLB Season began with 3 stadiums installed and finished with 9 installed.

- The 2007 MLB Season began with 16 stadiums installed and finished with 29 installed.

- The 2008 MLB Season began with all 30 stadiums installed.

123. During this initial term, MLBAM and Sportvision successfully marketed PITCHf/x for its intended uses and, as the parties foresaw, Sportvision consequently entered into many contracts with national and regional broadcasters to sell the data and graphical renderings provided by PITCHf/x.

124. Sportvision's various agreements with broadcasters resulted in both national and regional baseball broadcasters employing Sportvision graphical renderings using PITCHf/x data in their broadcasts, and those broadcast agreements resulted in significant revenue for both MLBAM and Sportvision.

125.    Upon information and belief, the reception to the PITCHf/x System since its first installation in 2006 has been positive.  In 2008, Sportvision created the PITCHf/x Summit and hosted annual PITCHf/x Summit conventions through 2011.  Presentations by Sportvision, MLBAM, private analysts and team analysts provided insight into MLB pitching and MLB pitch tracking.  This fostered an explosion in baseball pitching and hitting analysis by fans, Sabermetricians, team analysts, and academic researchers.  Many teams augmented their analytics teams with PITCHf/x Summit contributors.

126.    In 2008 and subsequent years, Sportvision worked closely with MLB's Vice President for Umpiring and his team to provide umpire performance evaluation based on PITCHf/x tracking of game pitches.  This successful program substantially improved umpire accuracy and consistency.

127.    At the conclusion of the 2016 MLB Regular Season, the PITCHf/x System had been running in every MLB stadium for every MLB game for nine (9) consecutive MLB Seasons.  Since its initial installation in 2006, the PITCHf/x System has accurately tracked over 10 million pitches in over 30,000 baseball games.  The PITCHf/x System enjoys a hard-earned reputation in every corner of the baseball community as a trusted generator of accurate MLB pitch path and strike zone data.  The PITCHf/x System earned this reputation through flawless execution and the accurate tracking of over 10 million pitches over the course of nine (9) full MLB seasons.

128.    In September of 2016, HBO's Real Sports episode 234 was dedicated to the accuracy of the PITCHf/x System and the question of Man vs. Machine.  The episode compared the accuracy of the PITCHf/x System in calling balls and strikes to the systemic inaccuracy of MLB umpires in calling balls and strikes.  Yale economic Professor Toby

Moskowitz and retired MLB player Eric Byrnes were featured in the piece and both advocated for replacing the umpire calling of balls and strikes with the PITCHf/x System.

### G.      AMENDMENTS TO THE ENDEAVOR CONTRACT

129.    Effective January 1, 2009, Sportvision and MLBAM executed the Amendment to the Endeavor Contract, which adjusted how the parties allocated certain revenues and revised other definitions in the Endeavor Contract.  A true and correct copy of the Amendment is attached hereto as Exhibit C.

130.    Effective December 31, 2011, Sportvision and MLBAM executed the Second Amendment to the Endeavor Contract, which further adjusted the revenue allocations of the Endeavor Contract and extended the term of the agreement an additional three years through December 31, 2014.  A true and correct copy of the Second Amendment is attached hereto as Exhibit D.

131.    The Second Amendment provides that, "[w]ithin six months prior to the end of the Term [(December 31, 2014)], the Parties shall enter into good faith negotiations regarding the renewal of this Agreement and the terms of such renewal."  *Id.* at § D.

132.    Consistent with the terms set forth in the Second Amendment, the parties negotiated in good faith regarding the renewal of the agreement.  As a result of these good faith negotiations, effective December 15, 2014, Sportvision and MLBAM executed the Third Amendment to the Endeavor Contract, which expanded the scope of the Endeavor Contract to provide MLBAM with access to Sportvision's FIELDf/x system.  A true and correct copy of the Third Amendment is attached hereto as Exhibit E.

133.    The Third Amendment also amended the parties' revenue sharing agreement.  *Id.* § E, 5.1(b).

134.    The Third Amendment required that MLBAM make certain license fee payments and other system payments to Sportvision for its provided services.  *See e.g. id.* at § E, 5.6.

135.    The Third Amendment extended the term of the Endeavor Contract for an additional five years through December 31, 2019.  *Id.* § F, 12.1.

136.    The Term of Agreement section in the Third Amendment requires that "the Parties agree to negotiate in good faith to continue the commercial exploitation of PITCHf/x Derivative Data beyond the 2015 MLB season, but absent such a continuation Sportvision's obligations with respect to PITCHf/x System will cease (except as to ESPN for the 2016 MLB season as expressly provided herein) and MLBAM's obligations with respect to payment for the PITCHf/x System set forth in Section 5.6 will likewise cease."  *Id.*

137.    Effective January 4, 2016, Sportvision and MLBAM executed the Fourth Amendment to the Endeavor Contract, which amended the parties' revenue allocations.  A true and correct copy of the Fourth Amendment is attached hereto as Exhibit F.

138.    The Fourth Amendment provided that "the Parties agree to negotiate in good faith to continue the commercial exploitation of PITCHf/x Derivative Data beyond the 2016 MLB season, but absent such a continuation Sportvision's obligations with respect to PITCHf/x System will cease and MLBAM's obligations with respect to payment for the PITCHf/x System set forth in Section 5.6 will likewise cease."  *Id.* § C, 12.1.

139.    The Fourth Amendment did not alter or amend the December 31, 2019 termination date.  *Id.*

140.    As a result of the above-described amendments, the Endeavor Contract contains two distinct contractual terms, each with a different termination date.

- The obligations of the parties to provide services to make the production of the graphical rendering and data of the PITCHf/x system possible, including the agreement's exclusivity provision, do not expire until December 31, 2019.

- The parties' agreement on how to divide up the revenues generated by PITCHf/x expired in December 2016; however, the Endeavor Contract requires MLBAM to negotiate with Sportvision following the 2016 acquisition, in good faith with respect to how the parties would continue to work together. Ex. F, § C, 12.1.

141. The Endeavor Contract required that the parties negotiate revenue sharing in good faith for the 2017 season.  In addition, Section 4.1 of the Endeavor Contract requires that "During the Term of this Agreement, the Parties will work together in good faith to explore and exploit all reasonable business opportunities for the marketing, sale and licensing of the PITCHf/x System Data to maximize revenues for the Endeavor."  The Fourth Amendment did not authorize or entitle MLBAM to go out and find a new partner to collect the pitch data and to produce graphical renderings using Sportvision's IP if it abandoned its partner, Sportvision. Notwithstanding these contractual limitations and obligations, this is precisely what MLBAM did.

## H.   SPORTVISION'S AGREEMENTS WITH REGIONAL AND NATIONAL BROADCASTERS TO EXPLOIT PITCHf/x

142. In complying with its obligations to exploit the PITCHf/x technology for the benefit of both Sportvision and MLBAM, Sportvision over the course of its agreement with MLBAM entered into contracts with regional and national broadcasters to provide PITCHf/x data and graphical renderings for use in broadcasts.

143. During the 2016 MLB season, Sportvision had contracts with national and regional broadcasters.

144. Sportvision's agreements with broadcasters include different terms and payment structures.  Some of the contracts include flat annual fees and others include more

modest per game fees.  As a result of these contracts, Sportvision and MLBAM have collected millions of dollars in revenue through their joint efforts.

145.    In total, Sportvision received in excess of $3.0 million in revenue in connection with the PITCHf/x system and its contracts with its broadcast partners in 2016.

146.    While many of Sportvision's MLB broadcaster contracts were negotiated on an annual basis, Sportvision had several contracts that covered multiple MLB Seasons and thus which were effective through the 2017 major league baseball season (i.e., upon completion of the World Series).

147.    In addition, Sportvision had several contracts with other MLB broadcasters that each contained options for the 2017 season.

148.    Upon information and belief, those Sportvision MLB broadcaster clients with options for the 2017 season all declined their options with Sportvision because MLBAM told those Sportvision MLB Broadcaster clients that MLBAM would be the only entity providing pitch rendering services to MLB broadcasters for the 2017 MLB season.

149.    SMT had intended to renew all of Sportvision's other contracts with national and regional broadcasters for the 2017 season but for the wrongful actions of MLBAM set forth further below.

I.     **SPORTVISION'S TRADE SECRETS**

150.    As Executive Vice President and General Manager of Baseball Products, Ryan Zander had unique and intimate knowledge of all aspects of the PITCHf/x system and was responsible for managing Sportvision's business relationships with regard to PITCHf/x.  Given his status and through his role, Mr. Zander had knowledge of and access to highly confidential Sportvision trade secret information and know-how.

-49-

151.    The Sportvision trade secrets include both confidential technical and business information and know-how, including but not limited to, Testing and Calibration Trade Secrets, Broadcast Display Trade Secrets, Deployment Trade Secrets, and MLB Broadcaster Contract Negotiations.

152.    Sportvision's Testing and Calibration Trade Secrets include but are not limited to the testing and calibration techniques.  Mr. Zander had knowledge of Sportvision's Testing and Calibration Trade Secrets because he used this knowledge in his job function almost daily during his 11-year tenure as Sportvision's GM in charge of the PITCHf/x System. Sportvision's Testing and Calibration Trade Secrets are particularly important because they describe how Sportvision tracking systems behaved and interfaced with other components, for example, the nuanced timing of delivery of pitch data to broadcasters, including Pitch Speed and Pitch Equations of Motion, and how Sportvision rendering systems behaved and performed.  The Testing and Calibration Trade Secrets are valuable because they enable the precise measurements that are required of a pitch tracking system and can be used as a benchmark for side-by-side testing, unit testing and/or regression testing.  The Testing and Calibration Trade Secrets also include the product design of Sportvision's PITCHf/x System Data Database.

153.    Sportvision's Broadcast Display Trade Secrets include but are not limited to confidential information and know-how relating to how Sportvision designed and customized the nuanced rendering of broadcast graphics for PITCHf/x System Data Rendering, Sportvision's graphic rendering systems and algorithms to enhance the readability to the viewer, Sportvision's additional pitch position processing of pitches and contextual algorithm for pitches thrown near the boundary of the strike zone, Sportvision's plug and play design and architecture, and the design and implementation of Sportvision's "Button Box" to control PITCHf/x System Data Rendering output.  The Display Trade Secrets are valuable because this confidential information

and know-how is important to meeting the requirements and expectations of MLB Broadcasters for a commercially viable pitch tracking system.

154.   Sportvision's Deployment Trade Secrets include but are not limited to the confidential information regarding deployment and operational know-how and techniques for deploying PITCHf/x in MLB stadiums, such as information concerning the most competent, capable, and PITCHf/x-knowledgeable person in each MLB city and each MLB stadium.  This internal Sportvision institutional knowledge and internal assessment of the best MLB personnel in each MLB city and each MLB stadium, is very different from and much more valuable than just the name and job title listing in some MLBAM rolodex or personnel directory.  Sportvision operations and PITCHf/x staff, including Ryan Zander, while performing their duties as Sportvision employees, kept confidential internal notes as to who Sportvision believed were the best personnel in each MLB city and each MLB stadium to get things accomplished quickly and competently.

155.   Sportvision's MLB Broadcaster Contract Negotiation Trade Secrets include but are not limited to confidential information regarding the broadcast features requested by MLB Broadcasters, the Sportvision price for each feature, Sportvision's pricing methodologies, what works with each broadcaster, what doesn't work for each broadcaster, who is the person in charge of negotiation for each broadcaster, who is the financial decision-maker for each broadcaster, who is the on-air production decision maker for each broadcaster.  This trade secret information is valuable because it enables a party to successfully conduct a negotiation for services and products such as PITCHf/x with MLB Broadcasters.  For example, the MLB Broadcaster Contract Negotiation Trade Secrets would enable a party to know how to price pitch tracking and rendering services, how to package and bundle such services, how to

offer compelling and fair volume discounts, how to engage with the broadcasters, and how to close deals.

156.    As Sportvision's Executive Vice President and General Manager of Baseball Products, Mr. Zander had knowledge and access to the Testing and Calibration Trade Secrets, the Broadcast Display Trade Secrets, the Deployment Trade Secrets, and the MLB Broadcaster Contract Negotiation Trade Secrets because he was intimately involved with both the technical (Testing and Calibration Trade Secrets and Broadcast Display Trade Secrets) and business side (Deployment Trade Secrets and MLB Broadcaster Contract Negotiation Trade Secrets) of the PITCHf/x system.  Mr. Zander depended on and applied these trade secrets to perform his duties almost daily during his 11-year tenure as Sportvision's GM in charge of the PITCHf/x System.

157.    On the technical side of PITCHf/x, Mr. Zander's position required him to ensure that as MLB Broadcaster requirements for PITCHf/x System Data Rendering Services and graphic rendering features evolve over time and that the corresponding PITCHf/x System Components (Renderers and Interfaces) evolve to meet the changing functional requirements. To do this, Mr. Zander was required to have an intimate and fluent knowledge of the product design of Sportvision's PITCHf/x System Data Rendering systems including and especially the Plug and Play architecture which is radically different than typical broadcast requirements.  Such knowledge would enable him to communicate the technical capabilities of the PITCHf/x system to Sportvision's clients and client technical requests to Sportvision engineers.  Mr. Zander had to understand the product design of Sportvision's PITCHf/x System Data Database: what data values to capture, how they relate to each other, the database table design and other storage design criteria.  Accordingly, to do his job, Mr. Zander had access and knowledge of the Testing and Calibration Trade Secrets and the Broadcast Display Trade Secrets.

158.    On the business side of PITCHf/x, Mr. Zander's position required him to negotiate all contracts with MLB broadcasters on behalf of the Endeavor for the provision of PITCHf/x System Data Rendering Services.  In fact, Mr. Zander was intimately aware of every negotiation history and every negotiation process that Sportvision ever conducted with every MLB Broadcaster who ever used the PITCHf/x System Data Rendering Services.  To do this, Mr. Zander had access to and knowledge of the Deployment and MLB Broadcaster Contract Negotiation Trade Secrets.

159.    Sportvision's Testing and Calibration Trade Secrets, the Broadcast Display Trade Secrets, the Deployment Trade Secrets, and the MLB Broadcaster Contract Negotiation Trade Secrets are in continuous use in Sportvision's business.

160.    Sportvision derives significant independent economic value from all of the above trade secret information not being generally known to the public or to MLBAM.  The Testing and Calibration Trade Secrets, the Broadcast Display Trade Secrets, the Deployment Trade Secrets, and the MLB Broadcaster Contract Negotiation Trade Secrets were developed over years (since 1999) of extensive effort involving significant resources.  To duplicate the trade secrets, it would take, at minimum, the equal amount of years and resources.

161.    Sportvision's trade secrets have given Sportvision a competitive edge in the industry specifically because of their secrecy.  For example, these Sportvision trade secrets have enabled the PITCHf/x System's success by enabling Sportvision to offer a competitively priced and technically superior product.  Competitors can obtain economic value from use of Sportvision's Testing and Calibration Trade Secrets, the Broadcast Display Trade Secrets, the Deployment Trade Secrets, and the MLB Broadcaster Contract Negotiation Trade Secrets information as set forth below.

162.    The Testing and Calibration Trade Secrets, the Broadcast Display Trade Secrets, the Deployment Trade Secrets, and the MLB Broadcaster Contract Negotiation Trade Secrets are related to the PITCHf/x system, which is sold or licensed to customers throughout the United States.

163.    In the highly competitive industry in which Sportvision operates, Sportvision's confidential, proprietary, and trade secret information is critical to maintaining Sportvision's competitive position.  Accordingly, Sportvision takes a number of steps to protect the confidentiality of its trade secrets, including:  (1) requiring all employees such as Mr. Zander to sign the Sportvision Proprietary Information, Inventions and Non-Solicitation Agreement; (2) implementing electronic security measures, such as use of passwords, security time-outs on computers, and segregation of confidential information; and/or (3) employing physical security measures, such as placing electronic or physical locks to offices, doors, and file cabinets.

164.    The Endeavor Contract further acknowledges the secrecy surrounding Sportvision's trade secrets:  for example, Section 2.1(b) reflects that "the Parties agree and acknowledge that Sportvision will not deliver or share any source code, documentation technical processes, formulas or Sportvision IP related to Sportvision's ability to optically track objects and collect information about such objects."

## V.    **MLBAM'S WRONGDOING**

165.    Unbeknownst to SMT and sometime well before SMT's acquisition of Sportvision, the Executive Leadership of MLBAM became unilaterally and willfully focused on stopping Sportvision from receiving any revenue for the tracking and rendering of MLB pitches using a league-wide installed system.

166.    Upon information and belief, and as described more fully herein, in furtherance of its campaign to remove Sportvision, MLBAM has taken the following unjustified

actions:  (1) Strike One:  willfully disregarding the parties' exclusivity agreement and engaging third parties to provide the services previously provided by Sportvision and infringing the Plaintiffs' patent rights; (2) Strike Two:  willfully failing to perform its explicit contractual obligations to Sportvision, including its operational obligations; and (3) Strike Three:  willfully misappropriating Sportvision's trade secrets.

**A.      STRIKE ONE:  MLBAM REPLACES CORE SPORTVISION COMPONENTS IN THE PITCHf/x SYSTEM, BREACHES ITS EXCLUSIVITY OBLIGATIONS, AND INFRINGES PLAINTIFFS' PATENT RIGHTS**

**1.      MLBAM Replaces Core Sportvision Components from the PITCHf/x System with Third Party Components**

167.      Upon information and belief, in furtherance of its campaign to stop Sportvision from receiving any revenue for the tracking and rendering of MLB pitches using a league-wide installed system, MLBAM's Executive Leadership instructed MLBAM resources to begin replacing core Sportvision components within the Sportvision-designed PITCHf/x System with third-party components.

168.      Upon information and belief, MLBAM's Executive Leadership was operating under the premise that once core Sportvision components were replaced within the PITCHf/x System there would be no reason for MLBAM to share PITCHf/x System revenue with Sportvision, and no reason for Sportvision to claim any rights to receive any share of the PITCHf/x System revenue.

169.      Upon information and belief, MLBAM's campaign ignores the protections provided in the Endeavor Contract and the protections provided by the U.S. Patent Office for Sportvision's patented invention.

170.      Indeed, upon information and belief, rather than developing an entirely new league-wide pitch tracking and pitch rendering system, MLBAM used the fully-designed,

fully-installed and fully functioning Sportvision PITCHf/x System that had been running for nine consecutive MLB Seasons (which contained Sportvision Intellectual Property and trade secrets) as a blueprint and roadmap.

171.    Upon information and belief, rather than designing and building a new system from scratch, MLBAM began conducting a controlled process of surgically swapping out some of the core Sportvision components from within the existing PITCHf/x System with third party-provided components.

172.    Upon information and belief, MLBAM hired a key Sportvision employee to oversee the final phase of this effort and to further its campaign to oust and eliminate Sportvision.

173.    Indeed, on October 4, 2016, and within two hours of SMT transferring funds to formally close the SMT transaction to acquire Sportvision, Ryan Zander – Sportvision's Vice President and General Manager of Baseball – resigned his position at Sportvision to take an executive position with MLBAM where one of his primary responsibilities would be to oversee MLBAM's final implementation, testing, and deployment of an MLBAM derivative PITCHf/x System that MLBAM created by replacing some core Sportvision components within the PITCHf/x System with third-party components.

174.    The derivative PITCHf/x System – which MLBAM called PITCHcast – is the Sportvision designed PITCHf/x System with some of the core Sportvision-supplied components removed and replaced with components from third parties including Trackman and ChyronHego.

175.    All efforts by Sportvision, and then by SMT, to remind MLBAM's Executive Leadership of (1) MLBAM obligations under the Endeavor Contract; (2) SMT owned patents for Strike Zone and Pitch Location Rendering; and (3) MLBAM revenue obligations to

Sportvision for use of patents, intellectual property, and trade secrets in the PITCHf/x System were rebuffed.

176.    Upon information and belief, MLBAM's Executive Leadership was so determined to stop Sportvision from receiving any revenue for the tracking and rendering of MLB pitches using a league-wide installed system that he became blind to the legal facts and legal reality of the situation.

177.    Upon information and belief, MLBAM hired Ryan Zander to oversee, direct, and complete this MLBAM process of reverse engineering and misappropriating the Sportvision Intellectual Property and Trade Secrets in the PITCHf/x System and with the expectation that Mr. Zander would rely on his intimate Trade Secret knowledge of Sportvision's Intellectual Property in the PITCHf/x System to complete the MLBAM process of successfully replacing some of the core Sportvision components within the PITCHf/x System with third-party components.

178.    MLBAM offered its derivative PITCHf/x System (the PITCHf/x System with some core Sportvision components replaced with third party components) to the MLB marketplace for the 2017 MLB Season under the name PITCHcast – with Mr. Zander, the 11-year industry face for pitch tracking, (1) marketing the benefits of the PITCHcast System to MLB Broadcasters and MLB data subscribers; and (2) with Mr. Zander negotiating all MLB broadcaster deals for pitch data rendering services using the PITCHcast System.

## 2.    MLBAM Infringes SMT's Patent Rights

179.    To complete MLBAM's plan of removing Sportvision completely from the process of providing pitch data and strike zone graphics for MLB games, the only hurdle that remained was the patent.

180. When the season started in 2017, MLBAM showed that it had no problem infringing on SMT's patent rights, just like it showed no remorse in walking all over Sportvision's contract and trade secret rights.

181. Since the start of the 2017 season, MLBAM has provided strike zone information, including PITCHcast, that directly infringes one or more claims of the '530 Patent.

182. PITCHcast infringes the '530 Patent by determining a location of a strike zone for a batter by receiving an indication of one or more positions on said first batter in an image of said first batter.

183. PITCHcast then determines the position in the video corresponding to the location of the strike zone.

184. The use of PITCHcast by MLBAM to determine a strike zone and place a graphical representation of the strike zone on the video satisfies each and every limitation of claim 31 of the '530 Patent.

185. PITCHcast is also associated with other Statcast digital properties, including but not limited to At Bat and At Bat VR, which also infringe at least claim 31 of the '530 Patent.

186. For example, At Bat using Statcast places a graphical representation of the strike zone on the video as shown below:



(*MLB At Bat*, MLB.com, https://www.mlb.com/apps/atbat (last visited 3/23/2018).)

187.   MLBAM's At Bat app features "[e]xpanded Statcast data in the game feed." (*MLB At Bat*, MLB.com, https://www.mlb.com/apps/atbat (last visited 3/23/2018).)

188.   "With At Bat VR, users will be able to consume live games – and many of the data-filled features MLB.com fans have come to expect – in a new way.  The app offers a fully immersive, 360-degree environment in which users can access a 3D strike zone (that will make statheads drool), historical and real-time Statcast-powered data, and interactive information like scores, stats, and standings."  (Brandon Costa, *MLBAM To Launch At Bat VR App for Google Daydream on June 1*, Sports Video Group (May 18, 2017, 8:14 PM), https://www.sportsvideo.org/2017/05/18/mlbam-to-launch-at-bat-vr-app-for-google-daydream-on-june-1/

189.   MLBAM's umpire evaluation app also infringes at least claim 31 of the '530 Patent as it uses PITCHcast by MLBAM to determine a strike zone and place a graphical representation of the strike zone on the video in order to provide umpire performance evaluation

of the called balls and strikes.  Previously, PITCHf/x provided the same information to the MLB umpiring officials for training and performance evaluation because the PITCHf/x system is approximately 100% accurate in its determinations of balls and strikes.

190.    Also associated with PITCHcast and infringing at least claim 31 of the '530 Patent are MLB.com's pitch visualizations.

**B.    STRIKE TWO:  MLBAM FAILS TO PERFORM UNDER ITS CONTRACT WITH SPORTVISION**

**1.    MLBAM's Refusal to Negotiate and its Abandonment of the Endeavor Contract**

191.    In November 2016, the month after SMT closed on the acquisition of Sportvision, SMT's COO, Kirk Brown, reached out to Mr. Zander, now at MLBAM, to discuss operational and revenue sharing arrangements relating to the Endeavor Contract with MLBAM.

192.    Mr. Brown sought to commence good faith negotiations on the financial terms between Sportvision and MLBAM for the use of the PITCHf/x System during the 2017 MLB Season.  Mr. Zander then informed Mr. Brown that discussion on that topic would not begin until December 2016 because of MLBAM's immediate focus on post-World Series meetings and the 2016 wrap-up.

193.    On December 21, 2016, Mr. Brown again spoke to Mr. Zander, by telephone, about the status of SMT's Endeavor Contract with MLBAM.

194.    During that phone call, Mr. Zander told Mr. Brown that MLBAM had made the decision to cease using PITCHf/x for the 2017 MLB season.

195.    Mr. Zander also told Mr. Brown that MLBAM had a new arrangement with a new vendor, which was likely to be for a three-year deal (*i.e.* through 2019, which is the termination date of the Endeavor Contract) and that SMT might have the opportunity to provide PITCHf/x to MLBAM again after the initial term, following the 2019 MLB season.

196.    Following that December 2016 phone call, on January 24, 2017, SMT's counsel sent a letter to MLBAM, making SMT's position clear that the Endeavor Contract remained in effect through 2019.  The letter states in relevant part as follows:

> SMT has asked us to write at this time due to its concern about several recent statements by MLBAM as to the purported "termination" of the Agreement.  These statements were made informally by MLBAM to SMT in December [2016].  Additionally, SMT understands that MLBAM has made similar statements to broadcast contract customers of SMT.
>
> SMT is surprised and disturbed by these statements.  The Agreement remains in effect through December 31, 2019.  While certain provisions of the Agreement as last amended applied only to the 2016 season, MLBAM was under an obligation to negotiate in good faith with respect to the 2017 season's provisions – and, in either event, the bulk of the Agreement survives through 2019 as stated.  Accordingly, MLBAM's obligation to host and make available to SMT the PITCHf/x system survives, as do SMT's rights to make use of that system in its own contracts with broadcast clients.

A true and correct copy of the January 24, 2017 letter is attached hereto as Exhibit G.

197.    MLBAM did not respond to SMT's letter.  Consequently, on January 30, 2017, SMT's CEO, Gerard Hall, contacted Kenny Gersh of MLBAM requesting an in-person meeting.

198.    On February 10, 2017, Messrs. Gersh and Hall met in Mr. Gersh's New York office to discuss the Endeavor Contract.

199.    During that meeting, Mr. Gersh informed Mr. Hall that MLBAM viewed the Endeavor Contract as being "over" and that "everyone knew" that MLBAM had been looking to get out of the Sportvision relationship for years.

200.    On February 21, 2017, Mr. Hall sent Mr. Gersh an email that included an attachment which showed SMT's meticulous analysis of the Endeavor Contract including its four (4) Amendments and enumerated the reasons why the entirety of the Endeavor Contract (the

original Agreement plus the four Amendments) remains in force until December 31, 2019 and

that MLBAM has significant obligations that continue to run through the entire term of the

agreement.

201. Mr. Hall's February 21, 2017 email to MLBAM closed with the

suggestion of a face-to-face meeting between Mr. Hall and Mr. Gersh to adopt a solution that

SMT provided as a way to continue the relationship forward under the existing term of the

Endeavor Contract so that MLBAM would avoid willfully breaching the Endeavor Contract and

avoid willfully infringing SMT Patents during the 2017 MLB Season.

202. On February 24, 2017 Mr. Gersh, presumably in some part due to the

strength of the SMT analysis shared in Mr. Hall's February 21, 2017 email, reversed positions

and acknowledged that the Endeavor Contract was not "over."  He further acknowledged that

MLBAM still had obligations to SMT under the Agreement:

> To be clear, MLBAM has not taken the position that it has
> terminated the current PITCHf/x agreement as amended. Rather,
> **MLBAM intends to cooperate and continue abiding by the
> ongoing portions of the agreement** and will hold SMT to doing
> the same. MLBAM does not waive the rights it has under the
> agreement or otherwise. This includes MLBAM's rights to enforce
> and/or terminate the agreement in response to SMT violating any
> of its provisions, for instance by engaging in prohibited discussions
> with MLB broadcasters.

A true and correct copy of Mr. Gersh's Feb. 24, 2017 e-mail is attached hereto as Exhibit H

(emphasis added).

203. Mr. Gersh never elaborated on what obligations under the Endeavor

Contract MLBAM would continue to perform, nor has MLBAM ever substantiated the basis for

its improper and unjustified threat against SMT for contacting SMT and MLBAM's broadcast

partners.

204.    No provisions of the Endeavor Contract and its Amendments prohibit SMT from contacting any of the MLB broadcast partners that utilize Sportvision's PITCHf/x Data Rendering services System or utilize PITCHf/x System Data.  Indeed, Plaintiffs have existing contracts with many of the broadcasters, all of which require ongoing communication with the broadcasters.

205.    Following Mr. Gersh's February 24, 2017 email, Mr. Hall responded by asking MLBAM to elaborate on what it viewed its current obligations under the Endeavor Contract to be since its position on the contract had changed significantly over time.  MLBAM's refusal to take an actual position on these issues made it impossible for SMT to negotiate with MLBAM on the core open issue, the revenue sharing metrics for the 2017 season.

206.    On March 31, 2017, MLBAM's counsel wrote that "[i]t is both troubling and telling that Mr. Hall has ignored MLBAM's reasonable request for" "information regarding conversations about MLBAM that transpired between SMT and MLB Broadcasters" and "urge[d]" SMT to reconsider its approach.

207.    At all relevant times, despite the explicit terms of the Endeavor Contract, MLBAM refused to negotiate revenue sharing terms for the 2017 season.  Moreover, MLBAM has refused to acknowledge that it cannot contract with other parties for the services that Sportvision was contracted to provide by the Endeavor Contract.

## 2.    MLBAM's Failure to Perform its Operational Obligations

208.    Neither as of Opening Day 2017, nor at any point throughout the 2017 MLB Season since did MLBAM perform any of its ongoing contractual obligations for the 2017 MLB Season, including to:

1)  fund the Capital Equipment Budget (§3.2);

2)  hire the Equipment Operators (§3.3);

-63-

3) provide Sportvision access to stadiums and facilities (§3.4);

4) provide contextual game data (§3.5);

5) host the PITCHf/x Master Data with current pitch tracking data (§3.6);

6) provide Sportvision with undisturbed, real-time, 24/7/365 electronic access to the PITCHf/x Master Database (§3.6);

7) work in good faith to exploit all reasonable business opportunities for selling the PITCHf/x System Data (§4.1); and

8) pay all Total Expenses for the operation of the PITCHf/x System on an annual basis (§5.3).

209. MLBAM's actions denied Sportvision the ability to perform under its 2017 contracts with broadcasters and from entering into new contracts for the 2017 and 2018 MLB seasons with other national, regional and local broadcasters. As a result, Sportvision lost the revenues from those contracts.

210. Additionally, there is zero indication that MLBAM intends to perform its obligations for the 2018 season.

## C.   STRIKE THREE:  MLBAM WILLFULLY MISAPPROPRIATES SPORTVISION'S TRADE SECRETS

### 1.   MLBAM Builds a Derivative System Using Sportvision Intellectual Property

211. The PITCHf/x system is not merely a conglomeration of components that can be interchanged at will. In order to make PITCHf/x a commercial and technical success, Sportvision employed a vast array of confidential and proprietary intellectual property to ensure that each and every component was seamlessly integrated into PITCHf/x so that precise pitch tracking and measurement can be obtained. For example, Sportvision's Testing and Calibration Trade Secrets enabled Sportvision to finely tune the PITCHf/x system to accurately adjust for the

nuanced timing of delivery of pitch data to broadcasters, including Pitch Speed and Pitch Equations of Motion, and how Sportvision rendering systems behaved and performed.

212. On information and belief, when MLBAM assembled PITCHcast, which largely comprises the PITCHf/x system with some Sportvision components replaced with third-party solutions, MLBAM then needed to test and integrate the new components to ensure that PITCHcast could replicate the accurate results of PITCHf/x. In order to be successful, MLBAM's PITCHcast had to match as nearly as possible the performance standard and behavior established by PITCHf/x. On information and belief, MLBAM did not have the technical know-how to achieve a successful integration.

213. MLBAM also had to deploy and install PITCHcast in every MLB stadium. This is not an insignificant task. It took Sportvision significant time and resources to learn the nuances of every MLB stadium for installation as well as the most competent and knowledgeable people at each stadium that needed to be involved. This information is essential to the success of PITCHcast, and on information and belief, MLBAM did not have this information.

214. In conjunction with building and installing PITCHcast, MLBAM also had to negotiate business deals with each MLB broadcaster that wanted to use MLBAM's PITCHcast data rendering services.

215. Successfully negotiating such deals requires specific know-how that on information and belief, MLBAM did not possess. Previously, MLBAM had attempted to negotiate all PITCHf/x deals with MLB broadcasters on behalf of the Endeavor Contract. MLBAM did not close any deals because MLBAM did not have the requisite MLB Broadcaster Contract Negotiation Trade Secrets.

216. On information and belief, MLBAM needed Sportvision's trade secrets to make the MLBAM PITCHcast offering a commercially and technically viable substitute for

PITCHf/x.  On information and belief, MLBAM identified Ryan Zander, the face of

Sportvision's PITCHf/x program, as the person with the confidential and proprietary Sportvision

know-how to make MLBAM's PITCHcast a success.  MLBAM hired Mr. Zander to

misappropriate Sportvision's trade secrets in order to replace PITCHf/x and cause financial harm

to Sportvision.

### 2.      MLBAM Hires Sportvision's Key Employee to Further its Misappropriation of Sportvision Trade Secrets

217.    From July 18, 2005 until October 14, 2016, Mr. Zander worked for

Sportvision.  At Sportvision, Mr. Zander was originally hired as the Director of Business

Development and was later promoted to Executive Vice President and General Manager of

Baseball Products.

218.    In his 11-year tenure at Sportvision, Mr. Zander created and managed the

direction and strategy for all of Sportvision's baseball products, including PITCHf/x.

219.    Through his work at Sportvision, Mr. Zander was exposed to and had

access to Sportvision's proprietary technology and confidential information and know-how,

including the Testing and Calibration Trade Secrets, the Broadcast Display Trade Secrets, the

Deployment Trade Secrets, and the MLB Broadcaster Contract Negotiation Trade Secrets set

forth above.

220.    As a natural consequence of the timing of Mr. Zander's hiring vis-à-vis

the timing of the company's signing of the Endeavor Contract in 2006 and in the course of

fulfilling his job responsibilities as Director of Business Development and Executive Vice

President and General Manager of Baseball Products, Mr. Zander was exposed to, personally

generated, and sat at the epicenter of valuable confidential information and know-how related to

the design, development, deployment, installation, testing, calibration, performance

characteristics, operation, sales, and maintenance of the PITCHf/x System—*i.e.*, the Testing and Calibration Trade Secrets, the Broadcast Display Trade Secrets, the Deployment Trade Secrets.

221.    Mr. Zander negotiated all the contracts with MLB broadcasters.  He had access to and used Sportvision's MLB Broadcaster Contract Negotiation Trade Secrets in the negotiations.

222.    In his role as General Manager for Baseball Operations at Sportvision, Mr. Zander was not a corner office executive; rather, he was required, like all Sportvision managers, to be hands-on from a technical, operational, and business development perspective.

223.    As a natural consequence of fulfilling Sportvision's obligations to the Endeavor, Mr. Zander often ran cables, mounted cameras, and installed, calibrated, tested, and operated PITCHf/x System components.

224.    Over time, this management structure gave Mr. Zander a comprehensive exposure to every aspect of the PITCHf/x System – including Sportvision's patented PITCHf/x tracking system, Sportvision's patented Video-Based Strike Zone Measuring and Adjusting System, Sportvision's patented Virtual Strike Zone Rendering System, and Sportvision's External Interface System IP.

225.    In directing Sportvision's strategy and managing Sportvision's interest in the PITCHf/x System, Mr. Zander was responsible for (1) negotiating all contracts with MLB broadcasters on behalf of the Endeavor for the provision of PITCHf/x System Data Rendering Services, and (2) ensuring that the PITCHf/x System components evolve to meet any changing functional requirements imposed by MLB broadcasters.

226.    Mr. Zander's position was highly visible to MLBAM:  the Endeavor's biggest source of revenue from the PITCHf/x System is the sale of PITCHf/x System Data Rendering Services to MLB Broadcasters.

227.     Mr. Zander also was primarily responsible for managing Sportvision's relationship with MLBAM.

228.     As a result, Mr. Zander was involved in the drafting and formation of the original Endeavor Contract and all subsequent amendments.

229.     As alleged above, Mr. Zander announced his departure from Sportvision hours after SMT closed on its deal to acquire Sportvision.  On information and belief, Mr. Zander and MLBAM had already negotiated the terms of Mr. Zander's new executive position at MLBAM well in advance of SMT closing on the transaction to acquire Sportvision.

230.     Upon Mr. Zander's departure from Sportvision, he signed the Sportvision Proprietary Information, Inventions and Non-Solicitation Agreement for California Employees and agreed that he would maintain the confidentiality of all Sportvision confidential information and trade secrets and agreed that he would continue to abide by the terms of Sportvision's Proprietary Information, Inventions and Non-Solicitation Agreement for California Employees.

231.     Specifically, Mr. Zander agreed that he had "complied with and will continue to comply with all of its terms, including, without limitation, (i) the reporting of any idea, process, invention, technology, writing, program, design, formula, discovery, patent, copyright, or trademark, or any improvement, rights, or claims related to the foregoing, conceived or developed by me and covered by the Agreement and (ii) the preservation as confidential of all proprietary information pertaining to the Company."

232.     As a former Sportvision executive, Mr. Zander is bound by ongoing contractual and fiduciary obligations to maintain the confidentiality of the Sportvision trade secrets and to refrain from using that information on his own behalf or on behalf of any third party.  MLBAM knows or has reason to know that Mr. Zander is bound by these obligations.

233.    On information and belief, Mr. Zander's role and responsibilities at MLBAM are substantially similar to those he held at Sportvision.  On information and belief, MLBAM hired Mr. Zander to further MLBAM's misappropriation and theft of Sportvision trade secret information and know-how in its development, implementation, and deployment of an MLBAM system to compete with and replace PITCHf/x.  MLBAM's misappropriation in this regard involves the Sportvision trade secrets described above.  On information and belief, MLBAM and Mr. Zander's misappropriation of Sportvision's trade secrets provided MLBAM a significant advantage in implementing a competing product because MLBAM was able to "leap-frog" over the challenges and technical hurdles that Sportvision took years of research and development to solve and has given MLBAM an unfair advantage in the marketplace which has resulted in severe financial harm to Sportvision.

234.    On information and belief, MLBAM and Mr. Zander misappropriated Sportvision's Testing and Calibration Trade Secrets to enable MLBAM to swap out Sportvision components from within the PITCHf/x system in place at MLB stadiums and replace them with MLBAM components, including but not limited to PITCHcast.  The Testing and Calibration Trade Secrets enabled MLBAM to use the PITCHf/x system as a benchmark for side-by-side testing, unit testing, and/or regression testing to configure PITCHcast to behave and interface with other third party components such that the performance of PITCHcast matched as nearly as possible the performance of the PITCHf/x system to meet the changing functional requirements imposed by MLB Broadcasters.

235.    On information and belief, MLBAM and Mr. Zander misappropriated Sportvision's Broadcast Display Trade Secrets to enable MLBAM to customize the nuanced rendering of its broadcast graphics.  For example, through use of Sportvision's Broadcast Display Trade Secrets, MLBAM is able to provide the same viewer experience as Sportvision

when rendering pitches thrown near the boundary of the strike zone.  In addition, MLBAM and

Mr. Zander misappropriated Sportvision's Broadcast Display Trade Secrets to meet the

requirements and expectation of MLB Broadcasters for a commercially viable pitch tracking

system.  For example, on information and belief, MLBAM and Mr. Zander used Sportvision's

Broadcast Display Trade Secrets to develop its plug and play design and architecture.

236.   On information and belief, MLBAM misappropriated Sportvision's

Deployment Trade Secrets to deploy PITCHcast at MLB stadiums.  For example, to implement

PITCHcast's radar based system, MLBAM used Sportvision's Deployment Trade Secrets,

including the confidential and proprietary knowledge of the personnel at each MLB stadium to

replace components of PITCHf/x with PITCHcast's new radar system at each MLB stadium.

237.   On information and belief, MLBAM misappropriated Sportvision's MLB

Broadcaster Contract Negotiation Trade Secrets when negotiating Statcast (with PITCHcast) data

rendering deals with MLB broadcasters.  Previously, Sportvision performed this duty for

MLBAM because MLBAM was unsuccessful in negotiating any PITCHf/x System Data

Rendering deals with MLB broadcasters on its own.  MLBAM used Sportvision's MLB

Broadcaster Contract Negotiation Trade Secrets, for example to negotiate price with MLB

Broadcasters.

**D.     MLBAM'S ONGOING WRONGFUL CONDUCT**

238.   MLBAM has continued to breach its contractual obligations,

misappropriate Sportvision's trade secrets, and infringe SMT's '530 Patent.

239.   On or about March 13, 2018, an SMT account manager was inadvertently

copied on an email string between MLBAM and a FOX graphics producer.

240.   That email string discussed the graphic presentation of MLBAM's third-

party Trackman/ChyronHego solution for 2018 and discussed developing a strike zone image

over home plate – despite the term of the Endeavor Contract running through 2019 and SMT's

patent rights in the '530 Patent.

241.    This email is clear evidence of MLBAM's ongoing willful disregard of its

contractual obligations – ranging from its obligations regarding Sportvision technology to its

operational obligations – as well as its misappropriation of Sportvision's trade secrets and

MLBAM's willful disregard of SMT's patent rights in the '530 Patent.

242.    As a result of MLBAM's actions, Sportvision has suffered substantial

harm.

## VI.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### INFRINGEMENT OF THE '530 PATENT
### SMT v. MLBAM

243.    Plaintiffs repeat and re-allege paragraphs 1-242 of this Complaint as if

fully set forth herein.

244.    MLBAM makes, uses, sells and/or offers for sale in the United States

products and/or services for providing strike zone information, including PITCHcast (which is a

component of MLBAM's Statcast system) and Statcast digital properties associated with

PITCHcast such as At Bat and At Bat VR, MLBAM's umpire evaluation app, and MLB.com's

pitch visualizations (collectively "PITCHcast").  PITCHcast directly infringes one or more

claims of the '530 Patent, either literally or under the doctrine of equivalents.

245.    At a minimum, PITCHcast infringes claim 31 of the '530 Patent, which

recites:

A method of providing strike zone information, comprising the
steps of:

determining a location of a strike zone for a first batter by
receiving an indication of one or more positions on said first batter

in an image of said first batter and using said indicated positions to automatically calculate height and a three dimensional volume of said strike zone;

determining a first position in a video, said first position corresponding to said location of said strike zone; and

adding an image for said strike zone to said video at said first position, wherein said step of determining the first position includes:

converting the three dimensional volume of said strike zone to two-dimensional locations within the video using data in video.

246.    PITCHcast determines the strike zone in order to determine whether the pitch is a strike or not.  (*See, e.g.*, Mike Petriello, *Danger zone: Statcast shows not all contact is created equal*, MLB.com, (Feb. 5, 2016), http://m.mlb.com/news/article/163724116/statcast-shows-exit-velo-inside-strike-zone/ (disclosing that MLBAM's Statcast determines if a pitch is a strike); Rob Arthur, *Baseball's New Pitch-Tracking System Is Just A Bit Outside*, FiveThirtyEight (Apr. 28, 2017, 11:39 AM), https://fivethirtyeight.com/features/baseballs-new-pitch-tracking-system-is-just-a-bit-outside/; *MLB Network Free Preview Offered for NLDS Game Telecasts*, MLB.com, http://m.mlb.com/news/article/204829374/mlb-network-free-preview-offered-for-nlds-game-telecasts/ (last visited Mar. 23, 2018); ob Arthur, *MLB's Hit-Tracking Tool Misses A Lot Of Hits*, FiveThirtyEight (Aug. 25, 2016, 6:04 PM), https://fivethirtyeight.com/features/mlbs-hit-tracking-tool-misses-a-lot-of-hits/.))

247.    PITCHcast continues to use the same method as PITCHf/x (and K-Zone) for determining the strike zone even though PITCHcast now purportedly uses TrackMan to track pitches.

248.    PITCHcast continues to use and add to the database of strike zone information collected while PITCHf/x was being used to determine strike zones.  (See, e.g.,

http://gd2.mlb.com/gdcross/components/game/mlb/year_2017/month_06/day_13/gid_2017_06_1

3_milmlb_slnmlb_1/inning/inning_all.xml (last visited June 28, 2017).)

249.    PITCHcast's TrackMan cannot determine a strike zone as it only tracks

the movement of the baseball.  (https://fivethirtyeight.com/features/baseballs-new-pitch-tracking-

system-is-just-a-bit-outside/ (last visited June 28, 2017).)

250.    PITCHcast determines a location of a strike zone for a batter by receiving

an indication of one or more positions on said first batter in an image of said first batter.

251.    The indicated positions are used to automatically calculate height and a

three dimensional volume of the strike zone.  PITCHcast automatically calculates the height of

the strike zone at the height of the batter's belt and reports that value as sz_top.  Because the

strike zone is a three dimensional volume, the volume for the strike zone is also automatically

calculated based on measurements of the plate and the height of the strike zone.

252.    PITCHcast determines the position in the video corresponding to the

location of the strike zone.  (*See, e.g.*, *Statcast in 2016*, MLB.com (Jan. 25, 2017),

http://m.mlb.com/video/topic/73955164/v1221024183/statcast-in-2016-changed-the-way-we-

watch-the-game.)

253.    PITCHcast adds the strike zone image to the video at the position

corresponding to the location of the strike zone.  In order to display the three dimensional

volume of a strike zone in two dimensions on a video, PITCHcast converts the three dimensional

volume of the strike zone to two-dimensional locations within the video using data in the video.

254.    PITCHcast adds the two-dimensional box representing the three-

dimensional strike zone as shown in the following screen captures:









(*Smoltz analyzes Smyly's start*, MLB.com (Mar. 16, 2017),

http://m.mlb.com/video/topic/73955164/v1239641983/smoltz-uses-statcast-to-analyze-smylys-

performances.)

255.    The use of PITCHcast by MLBAM to determine a strike zone and place a

graphical representation of the strike zone on the video satisfies each and every limitation of

claim 31 of the '530 Patent.

256.    To the extent that facts learned in discovery show that MLBAM's

infringement of the '530 Patent is or has been willful, SMT reserves the right to request such a

finding at the time of trial.

257.    As a result of MLBAM's infringement of the '530 Patent, SMT has

suffered monetary damages, and seeks recovery in an amount adequate to compensate for

MLBAM's infringement, including without limitation lost profits and not less than a reasonable

royalty for the use made of the invention by MLBAM, together with interest and costs as fixed

by the Court as well as an injunction from further infringement.

258.    MLBAM's infringement is exceptional and entitles SMT to attorneys' fees

and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## SECOND CLAIM FOR RELIEF

### MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT
### (18 U.S.C. § 1836 *et seq.*)
### Sportvision v. MLBAM

259.    Plaintiffs repeat and re-allege paragraphs 1-258 of this Complaint as if fully set forth herein.

260.    Plaintiff owns and possesses certain Testing and Calibration Trade Secrets, Broadcast Display Trade Secrets, Deployment Trade Secrets, and MLB Broadcaster Contract Negotiation Trade Secrets as alleged above.

261.    As a result of his employment and position of trust with Sportvision, Mr. Zander obtained access to Sportvision's trade secret information, including but not limited to, the Testing and Calibration Trade Secrets, the Broadcast Display Trade Secrets, the Deployment Trade Secrets, and the MLB Broadcaster Contract Negotiation Trade Secrets.

262.    The Testing and Calibration Trade Secrets, the Broadcast Display Trade Secrets, the Deployment Trade Secrets, and the MLB Broadcaster Contract Negotiation Trade Secrets relate to products and services such as the PITCHf/x system that is used, sold, shipped, and ordered in, or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce.

263.    Sportvision has taken reasonable measures to protect the secrecy of its trade secret information, as described above.

264.    Sportvision's trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

265.    Upon information and belief, MLBAM has misappropriated Sportvision's trade secrets beginning at least since Mr. Zander's employment with MLBAM in October 2016.

266.    Upon information and belief, MLBAM hired Ryan Zander based on his intimate knowledge of Sportvision's design and architecture of the PITCHf/x System, the PITCHf/x System Data Rendering Services, and his knowledge of contract negotiations with MLB Broadcasters.

267.    Upon information and belief, through its conduct described above, MLBAM disclosed and/or used Sportvision's trade secrets without Sportvision's express or implied consent.

268.    MLBAM's conduct includes hiring Ryan Zander and using Zander's intimate knowledge of Sportvision trade secrets to surgically replace the core Sportvision components within the PITCHf/x System, to conduct side-by-side testing of the replacement components, to develop and refine each replacement component, to ensure that the client interfaces of the PITCHcast system are identical to the PITCHf/x System, to renew the pitch-tracking rendering service contracts with all MLB Broadcasters for the 2017 MLB season, and to market the derivative PITCHcast System to MLB Broadcast clients.

269.    Upon information and belief, at the time of Ryan Zander and MLBAM's disclosure and/or use of Sportvision's trade secrets, MLBAM knew or had reason to know that Mr. Zander's knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain secrecy of the trade secret or limit use of the trade secret – namely, the Endeavor Contract.

270.    Upon information and belief, at the time of MLBAM's disclosure and/or use of Sportvision's trade secrets, MLBAM knew or had reason to know that Mr. Zander owed a duty to Sportvision to maintain the secrecy of the trade secret or limit the use of the trade secret.

271.     Upon information and belief, MLBAM has acquired Sportvision's trade secrets by improper means and/or knew or had reason to know that the trade secrets were acquired through improper and unlawful means and/or knew or had reason to know that the knowledge of the trade secret was derived from or through a person, Ryan Zander, who had used improper means to acquire the trade secret.

272.     As a direct and proximate result of MLBAM's misappropriation of Sportvision's trade secrets, Sportvision has suffered and continues to suffer substantial and irreparable harm including, but not limited to, lost revenue from its agreements with broadcasters for the sale of its graphical renderings for the remainder of the term of the Endeavor Contract – through 2019, harm to its reputation, the diminution in value of its trade secrets and other legitimate business interests.

273.     Because MLBAM's misappropriation of Sportvision's trade secrets was willful and malicious, Sportvision is entitled to an award of exemplary damages and reasonable attorney's fees.

274.     Sportvision also seeks damages for any unjust enrichment caused by the misappropriation of the trade secrets that may not be addressed in computing damages for actual loss.

275.     Because Sportvision's remedy at law is inadequate, Sportvision seeks, in addition to damages, injunctive relief to recover and protect its trade secret information as well as its legitimate business interests.  Sportvision will continue to suffer irreparable harm absent injunctive relief.

## THIRD CLAIM FOR RELIEF

### COMMON LAW MISAPPROPRIATION OF TRADE SECRETS
### Sportvision v. MLBAM

276.    Plaintiffs repeat and re-allege paragraphs 1-275 of this Complaint as if fully set forth herein.

277.    Sportvision's rights and interest in its trade secrets, described above, constitute trade secrets as defined by the common law of the State of New York.

278.    Plaintiff owns and possesses certain Testing and Calibration Trade Secrets, Broadcast Display Trade Secrets, Deployment Trade Secrets, and MLB Broadcaster Contract Negotiation Trade Secrets alleged above.

279.    The certain Testing and Calibration Trade Secrets, the Broadcast Display Trade Secrets, the Deployment Trade Secrets, and the MLB Broadcaster Contract Negotiation Trade Secrets alleged above are in continuous use in Sportvision's business.

280.    Developing the Testing and Calibration Trade Secrets, the Broadcast Display Trade Secrets, the Deployment Trade Secrets, and the MLB Broadcaster Contract Negotiation Trade Secrets required great expense and difficulty.  Duplicating the Testing and Calibration Trade Secrets, the Broadcast Display Trade Secrets, the Deployment Trade Secrets, and the MLB Broadcaster Contract Negotiation Trade Secrets would require equally as great expense and difficulty.

281.    As a result of his employment and position of trust with Sportvision, Mr. Zander obtained access to Sportvision's trade secret information, including but not limited to, the Testing and Calibration Trade Secrets, the Broadcast Display Trade Secrets, the Deployment Trade Secrets, and the MLB Broadcaster Contract Negotiation Trade Secrets.

282.     Sportvision has taken reasonable measures to protect the secrecy of its trade secret information, as described above.

283.     Sportvision's trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

284.     Upon information and belief, MLBAM has misappropriated Sportvision's trade secrets beginning at least since Mr. Zander's employment with MLBAM in October 2016.

285.     Upon information and belief, through its conduct described above, MLBAM disclosed and/or used Sportvision's trade secrets without Sportvision's express or implied consent.

286.     Upon information and belief, at the time of MLBAM's disclosure and/or use of Sportvision's trade secrets, MLBAM knew or had reason to know that Mr. Zander's knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain secrecy of the trade secret or limit use of the trade secret – namely, the Endeavor Contract.

287.     Upon information and belief, MLBAM used Sportvision's trade secrets in breach of the parties' Endeavor Contract, the parties' confidential relationship, and/or Mr. Zander and MLBAM's duties to preserve the secrecy of Sportvision's trade secrets.

288.     Upon information and belief, MLBAM has acquired Sportvision's trade secrets by improper means and/or knew or had reason to know that the trade secrets were acquired through improper and unlawful means and/or knew or had reason to know that the knowledge of the trade secret was derived from or through a person who had used improper means to acquire the trade secret.

289.     As a direct and proximate result of MLBAM's misappropriation of Sportvision's trade secrets, Sportvision has suffered and continues to suffer substantial and irreparable harm including, but not limited to, lost revenue from its agreements with broadcasters for the sale of its graphical renderings for the remainder of the term of the Endeavor Contract – through 2019, harm to its reputation, the diminution in value of its trade secrets and other legitimate business interests.

290.     Because Sportvision's remedy at law is inadequate, Sportvision seeks, in addition to damages, injunctive relief to recover and protect its trade secret information as well as its legitimate business interests.  Sportvision will continue to suffer irreparable harm absent injunctive relief.

## FOURTH CLAIM FOR RELIEF

**BREACH OF CONTRACT**
**(Breach of Operational Obligations)**
**Sportvision v. MLBAM**

291.     Plaintiffs repeat and re-allege paragraphs 1-290 of this Complaint as if fully set forth herein.

292.     The Endeavor Contract requires that MLBAM:  (1) fund the Capital Equipment Budget (§3.2); (2) hire the Equipment Operators (§3.3); (3) provide Sportvision access to stadiums and facilities (§3.4); (4) provide contextual game data and the means to conflate that data with the PITCHf/x data (§3.5); (5) host the PITCHf/x Master Database with current pitch tracking data (§3.6); (6) provide Sportvision with undisturbed, real-time electronic access to the PITCHf/x Master Database (§3.6); (7) pay all Total Expenses for the operation of the PITCHf/x System on an annual basis (§5.3); (8) work in good faith to exploit all reasonable business opportunities for selling the PITCHf/x System Data (§4.1); and (9) perform all

obligations under the Endeavor Contract in a timely, professional, competent, and workmanlike manner (§9.3) (collectively the "Operational Obligations").  Exs. A & B.

293.    These Operational Obligations exist in the Endeavor Contract to enable Sportvision to sell the PITCHf/x System Data Rendering Services to MLB Broadcasters.

294.    MLBAM has refused to honor its Operational Obligations that run through the end of 2019.

295.    Since the start of the start of the 2017 baseball season, MLBAM has failed to perform any of the Operational Obligations set forth in Sections 3.2, 3.3, 3.4, 3.5, 3.6, 4.1, 5.3, and 9.3 of the Endeavor Contract.

296.    Consequently, MLBAM has breached its operational obligations under the Endeavor Contract by refusing to (1) fund the 2017 Capital Equipment Budget; (2) hire the Equipment Operators for the 2017 season; (3) provide Sportvision access to all of the MLB stadiums and facilities; (4) provide contextual game data and the means to conflate that data with the PITCHf/x data (§3.5); (5) host the PITCHf/x Master Database with current pitch tracking data (§3.6); (6) provide Sportvision with undisturbed, real-time electronic access to the PITCHf/x Master Database (§3.6); (7) pay all Total Expenses for the operation of the PITCHf/x System on an annual basis (§5.3); (8) work in good faith to exploit all reasonable business opportunities for selling the PITCHf/x System Data (§4.1); and (9) perform all obligations under the Endeavor Contract in a timely, professional, competent, and workmanlike manner (§9.3).

297.    MLBAM's breach of its Operational Obligations as set forth above, destroyed Sportvision's ability to perform its contractual obligations to MLB Broadcasters and prevented Sportvision from entering into new contracts with MLB Broadcasters, which is a directly foreseeable injury from a breach of the Endeavor Contract.

298.    Consequently, in order to avoid being in breach of its contractual obligations to its broadcast customers, Sportvision had no alternative but to mitigate its damages and negotiate termination of those agreements with its broadcast customers.

299.    MLBAM's breaches are a result of MLBAM's "willful abandonment of its obligations."  Consequently, under Section 11 of the Endeavor Contract, MLBAM is not entitled to any limitation on its liability for any damages arising from those breaches.

300.    MLBAM's breach will cause Sportvision to continue to suffer significant harm as a result of the fact that it will not receive revenue from its agreements with broadcasters for the sale of its graphical renderings for the remainder of the term of the Endeavor Contract, through 2019.

301.    As a result of MLBAM's breach of its numerous obligations under the Endeavor Contract described above, Sportvision is entitled to recover damages from MLBAM in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### BREACH OF CONTRACT
### (Breach of Section 4.1 Exclusivity)
### Sportvision v. MLBAM

302.    Plaintiffs repeat and re-allege paragraphs 1-301 of this Complaint as if fully set forth herein.

303.    Section 4.1 of the Endeavor Contract provides that, "[d]uring the Term, MLBAM agrees that it shall not enter into any arrangement with any third party other than Sportvision for purposes of providing the same data as that provided by the PITCHf/x System . . ." Ex. B at § 4.1.

304.     MLBAM has contracted with third parties including Trackman and ChyronHego (*see* ¶¶ 176 and 242, *supra*) to provide the same data and/or services as previously provided by the PITCHf/x System.

305.     MLBAM replaced Sportvision's PITCHf/x Tracking System with a Trackman Radar Tracking System.

306.     MLBAM replaced Sportvision's Video-Based Strike-Zone Sizing System with an Auditor System.

307.     MLBAM replaced Sportvision's Rendering Systems with ChyronHego Rendering Systems.

308.     By virtue of its agreements with third parties, MLBAM has breached its obligations under Section 4.1 of the Endeavor Contract.

309.     MLBAM's breach is the result of MLBAM's "willful abandonment of its obligations."  Consequently, under Section 11 of the Endeavor Contract, MLBAM is not entitled to any limitation on its liability for any damages arising from that breach.

310.     MLBAM's breach will cause Sportvision to suffer significant harm since Sportvision will not receive revenue from its agreements with broadcasters for the sale of its graphical renderings for the remainder of the term of the Endeavor Contract, through 2019.

311.     As a result of MLBAM's breach of Section 4.1 of the Endeavor Contract, Sportvision is entitled to recover damages from MLBAM in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF

**BREACH OF CONTRACT**
**(Breach of Section 7.5)**
**Sportvision v. MLBAM**

312.     Plaintiffs repeat and re-allege paragraphs 1-311 of this Complaint as if fully set forth herein.

313.     Under Section 7.5 of the Endeavor Contract, MLBAM agreed that it would not "copy, modify, create any derivative work of, or include in any other products any of the [Sportvision IP]" or "reverse assemble, decompile, reverse engineer, or otherwise attempt to derive source code (or the underlying ideas, algorithms, structure or organization) from [Sportvision IP]."  Ex. B at ¶ 7.5.

314.     MLBAM hired Mr. Zander – who has intimate knowledge of every aspect of PITCHf/x and the Sportvision IP inherent in the PITCHf/x system – to oversee the final phase of the implementation, reverse engineering, unit testing and regression testing, and deployment of the PITCHcast System (i.e., the PITCHf/x System with some core Sportvision components replaced with third-party components) which is a derivative system of the PITCHf/x System.  In addition, MLBAM hired Ryan Zander, the 11-year "face of pitch tracking", to give PITCHcast market credibility vis-à-vis PITCHf/x when negotiating data PITCHcast rendering services with MLB broadcasters.

315.     MLBAM used the fully-designed, fully-installed and fully functioning Sportvision PITCHf/x System that had been running for nine consecutive MLB Seasons (which contained Sportvision Intellectual Property and Trade Secrets) as a blueprint and a framework within which MLBAM could merely surgically swap out and replace some of the core Sportvision components with third-party components and call the resultant derivative system the PITCHcast system.

316.     Rather than building a new system, MLBAM began and conducted a controlled process of surgically swapping out and replacing some core  Sportvision components from within the existing PITCHf/x System with third party-provided components.

317.     MLBAM used the PITCHf/x System to assess, refine, and drive the PITCHcast System development, testing, and deployment.

-85-

318.    MLBAM relied on Mr. Zander's intimate knowledge of Sportvision technology in the PITCHf/x system to oversee, direct and complete MLBAM's process of conducting side-by-side testing of each new third party replacement and iteratively developing and refining each third party component.

319.    MLBAM relied on Mr. Zander's intimate knowledge of Sportvision technology in the PITCHf/x system to ensure that the client interfaces in the new PITCHcast system are identical to that in the PITCHf/x System.

320.    MLBAM relied on Mr. Zander's intimate knowledge of the PITCHf/x system to renew all pitch-tracking rendering service contracts with all MLB broadcasters for the 2017 MLB season.

321.    By virtue of its unilateral decision to create a derivative version of the PITCHf/x system as well as its hiring of Mr. Zander to oversee the replacement of Sportvision components within the PITCHf/x system, MLBAM has breached Section 7.5 of the Endeavor Contract.

322.    MLBAM's breach is the result of MLBAM's "willful abandonment of its obligations." Consequently, under Section 11 of the Endeavor Contract, MLBAM is not entitled to any limitation on its liability for any damages arising from that breach.

323.    MLBAM's breach will cause Sportvision to suffer significant harm as a result of the fact that it will not receive revenue from its agreements with broadcasters for the sale of its graphical renderings for the remainder of the term of the Endeavor Contract, through 2019.

324.    Indeed, MLBAM relied on Mr. Zander's intimate knowledge of Sportvision technology in the PITCHf/x system to oversee, direct, and complete MLBAM's

process of renewing all pitch-tracking rendering service contracts with all MLB broadcasters for

the 2017 MLB Season.

325.     As a result of MLBAM's breach of Section 7.5 of the Endeavor Contract,

Sportvision is entitled to recover damages from MLBAM in an amount to be determined at trial,

including any profits that MLBAM has made as a result of breaching the obligations imposed by

Section 7.5 of the Endeavor Contract.

## SEVENTH CLAIM FOR RELIEF

**BREACH OF CONTRACT**
**(Breach of Section 2.4 Data Sets)**
**Sportvision v. MLBAM**

326.     Plaintiffs repeat and re-allege paragraphs 1-325 of this Complaint as if

fully set forth herein.

327.     Under Section 2.4 of the Endeavor Contract, "MLBAM will notify

Sportvision in writing of additional data sets which it desires to implement and/or develop . . .

Upon MLBAM's request, Sportvision may elect to use its commercially reasonable efforts to

develop and implement such additional data sets" and "[i]n the instance that Sportvision is

unable or unwilling to provide additional data sets and a third party provider exists that has the

ability to provide the Endeavor with such specified data, Sportvision agrees to work with

MLBAM to accommodate new technology and/or integrate it into the PITCHf/x System and the

consideration to such third party provider shall be mutually agreed in writing by MLBAM,

Sportvision, and such third party."  Ex. B at § 2.4.

328.     Upon information and belief, without either notifying Sportvision or

providing Sportvision its first right to bid, MLBAM contracted with Trackman for a Radar

Tracking System to measure pitch rotations.

329.   Upon information and belief, without either notifying Sportvision or providing Sportvision its first right to bid, MLBAM contracted with ChyronHego to track player movements vis-à-vis pitches thrown.

330.   MLBAM's failure to notify Sportvision of these additional data sets and failure to provide Sportvision its first right to bid constitutes a breach of Section 2.4 of the Endeavor Contract.

331.   MLBAM's breach is the result of MLBAM's "willful abandonment of its obligations."  Consequently, under Section 11 of the Endeavor Contract, MLBAM is not entitled to any limitation on its liability for any damages arising from that breach.

332.   MLBAM's breach will cause Sportvision to suffer significant harm as a result of the fact that it will not receive revenue from its agreements with broadcasters for the sale of its graphical renderings for the remainder of the term of the Endeavor Contract, through 2019.

333.   As a result of MLBAM's breach of Section 2.4 of the Endeavor Contract, Sportvision is entitled to recover damages from MLBAM in an amount to be determined at trial.

### EIGHTH CLAIM FOR RELIEF

**BREACH OF CONTRACT**
**(Breach of Section 8 Confidentiality)**
**Sportvision v. MLBAM**

334.   Plaintiffs repeat and re-allege paragraphs 1-333 of this Complaint as if fully set forth herein.

335.   Section 8.2 of the Endeavor Contract provides that "either Party (the "Receiving Party") that receives Confidential Information from the disclosing Party (the "Disclosing Party") will not use or disclose to any third party the Confidential Information. . . ."

336.     Upon information and belief, in working with certain third parties to replace key Sportvision components of PITCHf/x System with third party-provided components, MLBAM has engaged in processes that reveal to those third parties Sportvision Confidential Information, as that term is defined in the Endeavor Contract.

337.     Upon information and belief, such processes include testing of the third-party components against the Sportvision components and/or reverse-engineering from the Sportvision components.

338.     MLBAM's disclosure of Sportvision's Confidential Information to third parties constitutes a breach of Section 8.2 of the Endeavor Contract.

339.     MLBAM's breach is the result of MLBAM's "willful abandonment of its obligations."  Consequently, under Section 11 of the Endeavor Contract, MLBAM is not entitled to any limitation on its liability for any damages arising from that breach.

340.     MLBAM's breach will cause Sportvision to suffer significant harm as a result of the fact that it will not receive revenue from its agreements with broadcasters for the sale of its graphical renderings for the remainder of the term of the Endeavor Contract, through 2019.

341.     As a result of MLBAM's breach of Section 8.2 of the Endeavor Contract, Sportvision is entitled to recover damages from MLBAM in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF

### BREACH OF CONTRACT
### (Breach of Contract Good Faith Negotiation)
### Sportvision v. MLBAM

342.     Plaintiffs repeat and re-allege paragraphs 1-341 of this Complaint as if fully set forth herein.

343.    Section C, 12.1 of the Fourth Amendment to the Endeavor Contract requires MLBAM to negotiate in good faith with Sportvision for the 2017 MLB season.  Ex. F.

344.    Section 4.1 of the Endeavor Contract requires that "During the Term of this Agreement, the Parties will work together in good faith to explore and exploit all reasonable business opportunities for the marketing, sale and licensing of the PITCHf/x System Data to maximize revenues for the Endeavor."

345.    In December of 2016, MLBAM told Plaintiffs that it was not going to be using PITCHf/x for the 2017 season.  This was a final statement of position and not an offer or attempt to negotiate.  At no time prior to the 2017 season did MLBAM even attempt to negotiate in good faith.

346.    At no time prior to Opening Day 2017 or during the 2017 MLB Season did MLBAM negotiate with Sportvision/SMT for the 2017 MLB Season in any respect regarding the revenue sharing for PITCHf/x.

347.    By refusing to negotiate for the 2017 season, MLBAM breached its obligation under Section 4.1 of the Endeavor Contract and Section 12.1 of the Endeavor Contract "to negotiate in good faith to continue the commercial exploitation of the PITCHf/x Derivative Data beyond the 2016 MLB season. . . ."

348.    MLBAM's breach is a result of MLBAM's "willful abandonment of its obligations."  Consequently, under Section 11 of the Endeavor Contract, MLBAM is not entitled to any limitation on its liability for any damages arising from those breaches.

349.    MLBAM's breach will cause Sportvision to continue to suffer significant harm because as a result of MLBAM's willful breach of its obligations, Sportvision will not be able to receive revenue for providing PITCHf/x System Data Rendering Services to MLB broadcasters for the remainder of the term of the Endeavor Contract, through 2019.

-90-

350.     These same breaches and damage will repeat themselves for the 2018 season.

351.     As a result of MLBAM's breach of its numerous obligations under the Endeavor Contract described above, Sportvision is entitled to recover damages from MLBAM in an amount to be determined at trial.

## JURY DEMAND

352.     Pursuant to Fed. R. Civ. P. 38(b) Plaintiffs demand a trial by jury.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Sportvision, Inc. and SportsMEDIA Technology Corporation respectfully request that the Court enter judgment against defendant MLB Advanced Media LP:

(i)      awarding damages for the first cause of action, in an amount to be determined at trial;

(ii)     awarding damages for the second cause of action, in an amount to be determined at trial;

(iii)    awarding damages for the third cause of action, in an amount to be determined at trial;

(iv)     awarding damages for the fourth cause of action, in an amount to be determined at trial;

(v)      awarding damages for the fifth cause of action, in an amount to be determined at trial;

(vi)     awarding damages for the sixth cause of action, in an amount to be determined at trial;

(vii)    awarding damages for the seventh cause of action, in an amount to be determined at trial;

(viii)    awarding damages for the eighth cause of action, in an amount to be determined at trial;

(ix)    granting permanent injunctive relief and enjoining MLBAM, its officers, agents, employees, and successors from violating their legal and contractual duties to Sportvision, from accessing, using, or disclosing Plaintiff's trade secrets;

(x)    awarding damages for the ninth cause of action, in an amount to be determined at trial;

(xi)    a permanent injunction against MLBAM from further infringement of the '530 Patent;

(xii)    awarding the damages, costs, expenses, and pre-judgment and post-judgment interest for MLBAM's infringement of the '530 Patent, as provided under 35 U.S.C. § 284;

(xiii)    a declaration that this is an exceptional case and that SMT be awarded its costs and reasonable attorneys' fees incurred in this action, as provided by 35 U.S.C. § 285 or as otherwise permitted by law; and

(xiv)    Such other and further relief as the Court deems just and proper.

Dated: New York, New York
      April 27, 2018

PEPPER HAMILTON LLP

By:                            

H. Peter Haveles, Jr.
Attorneys for Plaintiff
Office and Post Office Address:
620 Eighth Avenue, 37th Floor
New York, New York 10018
Telephone: (212) 808-2700
havelesp@pepperlaw.com

Matthew H. Adler
Benjamin J. Eichel
PEPPER HAMILTON LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4000
adlerm@pepperlaw.com
eichelb@pepperlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2018, I caused the foregoing **FIRST AMENDED COMPLAINT** to be served on all parties in this action, as identified below, via ECF.

Alan E. Littmann
Brian P. O'Donoghue
Laura Sexton
GOLDMAN ISMAIL TOMASELLI
BRENNAN & BAUM LLP
564 W. Randolph St., Suite 400
Chicago, IL 60661
alittmann@goldmanismail.com
bodonoghue@goldmanismail.com
lsexton@goldmanismail.com

_____
Benjamin J. Eichel