Goldman Ismail Tomaselli Brennan & Baum llp

WRITER'S DIRECT DIAL
312.881.5969
alittmann@goldmanismail.com

June 19, 2018

**VIA ECF**

Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

      *Re:*    *Sportvision, Inc. et. al v. MLB Advanced Media, L.P., No. 18-cv-03025*

Dear Judge Gardephe:

      We represent the Defendant, MLB Advanced Media, L.P. ("MLBAM") in the above-referenced matter. Pursuant to Rule IV(A) of the *Individual Rules of Practice of Judge Paul G. Gardephe*, Defendant MLBAM respectfully requests leave to file a Partial Motion to Stay and Compel Arbitration and Partial Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 26) (the "Complaint"). Defendant MLBAM intends to base its anticipated Motion on the following:

      **I.**    **Background.**

      On February 7, 2006, Plaintiff Sportvision, Inc. ("Sportvision") and Defendant MLBAM entered into a contract to "work together on an endeavor to capture, collect, market and disseminate pitch data" in Major League Baseball games using the PITCHf/x System (the "Endeavor Contract" or the "Contract"). *See* Endeavor Contract at p. 1 (Compl. Ex. B). This project was called the "Endeavor" and the term "Endeavor" is defined in the Contract as including all aspects of the parties' joint initiative for PITCHf/x, including the "development, assembly, and installation of the PITCHf/x System"; the "capture" and "collection" of data generated by the PITCHf/x System; the "marketing" used in order to sell the resulting data; and the ultimate "dissemination" of the data to clients and sponsors. *Id.* at § 1(d).

      In the Endeavor Contract, Sportvision and MLBAM expressly agreed to arbitrate any disputes "regarding the operation of the Endeavor." Endeavor Contract, at § 13.10, *as amended*, 1/1/09 Amend. (Compl. Exs. B-C). For all other disputes relating to the Agreement, the parties agreed to the exclusive jurisdiction of courts located in New York. *Id.*

564 WEST RANDOLPH STREET · SUITE 400
CHICAGO ILLINOIS 60661
312.681-6000 · 312.881-5191 FAX

3131 TURTLE CREEK · SUITE 1210
DALLAS TEXAS 75219
214.880.9900 · 214.880.9901 FAX

500 SANTA MONICA BOULEVARD · SUITE 217
SANTA MONICA CALIFORNIA 90401
310.576.6900 · 312.629.8107 FAX

w w w . g o l d m a n i s m a i l . c o m

Despite this provision, Plaintiff Sportvision filed with this Court eight counts covered by the parties' express arbitration agreement. Specifically, Counts II-IX of the Complaint rest on allegations that MLBAM failed to comply with the Endeavor Contract's operational obligations and instead hired one of Sportvision's key employees, Ryan Zander, to develop a competing product (together, the "Endeavor Counts"). Six of the Endeavor Counts are pled as breach of contract claims, while the other two are styled as misappropriation of trade secret claims. Plaintiff SMT ("SMT")—the company that acquired Plaintiff Sportvision—also asserts a claim for patent infringement (Count I).

> **II.    Motion to Stay and Compel Arbitration of the Endeavor Counts (Counts II-IX).**

MLBAM seeks to stay and compel arbitration of the Endeavor Counts (Counts II-IX) pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3-4. The Second Circuit has repeatedly and emphatically held that arbitration agreements must be enforced—indeed, "it is difficult to overstate the strong federal policy in favor of arbitration." *China Auto Care, LLC v. China Auto Care (Caymans)*, 859 F. Supp. 2d 582, 585 (S.D.N.Y. 2012). The Second Circuit has set forth the following roadmap for deciding motions to compel arbitration:

> *First*, [a court] must determine whether the parties agreed to arbitrate; *second*, it must determine the scope of that agreement; *third*, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and *fourth*, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169, 171 (2d Cir. 2004) (emphasis added; alterations and citation omitted). Under the four-step test set forth in *JLM Industries*, the Endeavor Counts should be arbitrated.

> A.   Step 1: The Parties Entered Into a Valid Arbitration Agreement.

The Endeavor Contract containing the arbitration clause was executed by both parties and therefore constitutes a valid arbitration agreement. *See Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004). There does not appear to be any dispute with respect to this Step.

> B.   Step 2: The Endeavor Counts Should Be Referred to Arbitration Because They Fall within the Scope of the Arbitration Clause.

The Endeavor Counts (Counts II-IX) fall within the scope of the parties' arbitration agreement because they relate to the "operation of the Endeavor." The crux of Sportvision's claims is that MLBAM breached the Endeavor Contract's operational obligations and ceased operating the Endeavor altogether. *See, e.g.*, Compl. ¶¶ 40, 191-210. But whether MLBAM is abiding by its contractual operational obligations or has abandoned its duties necessarily relates to the operation of the Endeavor itself. In order to resolve the factual issues underpinning each of

the Endeavor Counts, a fact-finder will necessarily need to determine the parties' actions throughout the operation of Endeavor, how the PITCHf/x technology was operated, who was responsible for the operation, how the operation's data was collected, marketed, and disseminated, and whether the parties adhered to their operational obligations as described by the Contract.

Sportvision's Complaint concedes again and again that the alleged wrongdoing arises from the operation of the Endeavor. The Complaint repeatedly uses the terms "Operational Obligations" and "Operational Requirements" to describe the various contractual obligations that MLBAM supposedly breached. *Id.* at ¶¶ 39, 111, 208-10, 241, 296. For example, the Complaint alleges that MLBAM failed to pay costs and expenses associated with the "operation" of the PITCHf/x System in MLB stadiums, *id.* at ¶ 112. Sportvision even entitles Count IV as "Breach of Operational Obligations." *Id.* at ¶¶ 291-301. One of the Operational Obligations, Section 4.1, is the basis not only for Count IV, but also for Counts V and IX as well. *Id.* at ¶¶ 295-96, 308, 344-47. Sportvision cannot sue for breach of "operational obligations," but then deny its suit relates to the "operation of the endeavor."

The Complaint also alleges in Counts V-VIII that MLBAM breached four "exclusivity" provisions that were necessary to protect Sportvision's involvement in the "operation of the endeavor." *Id.* at ¶ 113; *see also id.* at ¶¶ 302-41. According to Sportvision, "the operation of the Endeavor's PITCHf/x System fundamentally depends on Sportvision patents and intellectual property," so "Sportvision insisted" on including the "exclusivity" provisions that form the basis of Counts V-VIII in order to "protect Sportvision's involvement in the Endeavor." *Id.* at ¶ 113. And in Count IX, Sportvision alleges that MLBAM failed to negotiate in good faith to reach an agreement to continue operating the Endeavor in 2017. *Id.* at ¶¶ 342-51. Here again, Sportvision cannot allege that MLBAM breached obligations related to the operation of the Endeavor, but then seek to avoid the parties' agreement to arbitrate such disputes.

Sportvision's trade secret allegations (Counts II-III) also should be arbitrated because they are based on the same alleged operational conduct as the breach of contract counts. The fact that they are pleaded in tort "does not make [them] any less arbitrable," particularly where the parties agreed to arbitrate ***any dispute*** regarding the "operation of the Endeavor." *Collins & Aikman Products Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20-23 (2d Cir. 1995).

Sportvision alleges that MLBAM misappropriated trade secrets relating to the PITCHf/x System, including purported trade secrets related to "testing and calibration techniques," "broadcast display," "deployment," and "MLB broadcaster contract negotiations." *See, e.g.*, Compl. ¶¶ 151-58, 259-90. Sportvision also alleges that MLBAM misappropriated trade secrets by hiring its former employee, Mr. Zander, and relying on his "operational know-how." *Id.* at ¶ 154. Yet, to evaluate whether MLBAM misappropriated these alleged trade secrets, it will be necessary to evaluate what type of information MLBAM and Mr. Zander obtained during the operation of the Endeavor, whether that information consisted of trade secrets, what limitations the Endeavor Contract imposes on the information used during the Endeavor, and whether any information acquired from the operation of the Endeavor impermissibly informed the

development of MLBAM's subsequent product. Any attempt to resolve the trade secret allegations will therefore necessitate a factual inquiry into the operations of the Endeavor itself.

To the extent Plaintiffs dispute whether the Endeavor Counts fall within the scope of the arbitration clause, such objections have been contractually delegated to the arbitrator and are not properly before the Court. The Second Circuit permits parties to delegate issues of arbitrability to the arbitrator by incorporating the AAA Commercial Rules into their arbitration agreement, as the Contract does here. *See Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005). This is because AAA Rule 7 explicitly states that "***[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . scope . . . of the arbitration agreement.***" AAA Rule R-7(a) (emphasis added). The parties have incorporated the AAA Commercial Rules into their arbitration agreement, and therefore, any objections concerning arbitrability or the scope of the arbitration clause should be resolved by the arbitrator. *See* Endeavor Contract, at § 13.10, *as amended*, 1/1/09 Amend. (Compl. Exs. B-C).

      C.   <u>Step 3: Claims Under the Defend Trade Secrets Act Are Arbitrable</u>.

The third consideration is whether Congress intended any of the causes of action set forth in the Endeavor Counts to be nonarbitrable. The only Endeavor Count brought under a federal statute is Count II, which alleges misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* Nothing in the text of the statute or its legislative history indicates congressional intent to make claims under the Act non-arbitrable. *Id.*

      D.   <u>Step 4: Any Endeavor Counts Not Referred to Arbitration Should Be Stayed Pending the Outcome of the Arbitration</u>.

To the extent it is determined that some of the Endeavor Counts are not subject to arbitration, the Court should stay such counts pending the outcome of arbitration. As described above, all of the Endeavor Counts relate to the same underlying set of facts surrounding the parties' Endeavor Contract and the operation of the PITCHf/x system. To avoid potentially conflicting rulings from multiple fora as well as duplicative and wasteful litigation, any Endeavor Counts remaining before this Court should be stayed pending the outcome of the arbitration.

Consistent with the parties' agreement, the strong federal policy in favor of arbitration, and the *JLM Industries* test, the Endeavor Counts should be stayed and referred to arbitration.

    **III.**   **Motion to Dismiss SMT's Patent Infringement Claim (Count I).**

In Count I, Plaintiff SMT alleges that MLBAM is infringing Claim 31 of U.S. Patent No. 7,341,530 ("the '530 Patent"). The '530 Patent purports to address the problem that "[w]hen watching a baseball game on television, it is not clear to the viewer where the exact boundaries of the strike zone are." Patent at 1:14-16 (Compl. Ex. A). The alleged invention, therefore describes a method for "determin[ing] [the] location of the strike zone" and depicting it in video. *Id.* at 1:23-25.

Claim 31, however, is invalid for attempting to claim ineligible subject matter because it is directed to the abstract idea of collecting, manipulating, and displaying data of a baseball strike zone. *See Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). Claim 31 merely instructs to identify the volume of a baseball strike zone and display it in video as a two-dimensional box. It is purely functional, describing the "what" but not the "how." Courts repeatedly hold that patents with these types of functional claims drawn to nothing more than collecting, manipulating, and displaying information are invalid. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). Nor is Claim 31 any less abstract simply because it references a baseball strike zone. "An abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment. . . ." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

As an abstract idea, to be valid Claim 31 must add an inventive step that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) (quotations omitted). But there is no such inventive step to be found in the '530 Patent. Instead, the limitations state only generic instructions to perform the abstract idea. Claim 31 does not provide a particular method for determining a three-dimensional volume, does not require a particular technique for converting a three-dimensional object to two-dimensions, and never instructs on how to add the image to video. It is untethered to any kind of technology or technological improvement and does not purport to invent a new camera, a new method for video insertion, a new method of defining three-dimensional volume, or a new method of manipulating data. Accordingly, the '530 Patent is invalid, and Count I should be dismissed.

\* \* \*

In light of the foregoing, MLBAM respectfully requests a pre-motion conference and permission to file a Partial Motion to Stay and Compel Arbitration and a Partial Motion to Dismiss. MLBAM has conferred with Plaintiffs, and Plaintiffs do not consent to this motion. We thank the Court in advance for its consideration of this request.

Respectfully submitted,

*s/ Alan Littmann*
Alan E. Littmann
Brian P. O'Donoghue
Laura Sexton
GOLDMAN ISMAIL TOMASELLI
BRENNAN & BAUM LLP
564 W. Randolph St., Suite 400
Chicago, IL 60661
Telephone: (312) 881-5969

June 19, 2018 *Sportvision, Inc. v. MLB Advanced Media, LP*
Page 6 *No. 18-cv-03025*

        Facsimile: (312) 881-5189
        Email: alittmann@goldmanismail.com
        Email: bodonoghue@goldmanismail.com
        Email: lsexton@goldmanismail.com

        J. Christopher Jensen
        Joelle A. Milov
        COWAN, LIEBOWITZ & LATMAN, P.C.
        114 West 47th Street
        New York, NY 10036-1525
        Telephone: (212) 790-9204
        Facsimile: (212) 575-0671
        Email: jcj@cll.com
        Email: jam@cll.com

        *Attorneys for Defendant MLB Advanced Media, L.P.*

Cc: All Counsel registered via ECF (via email)