**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| **SPORTVISION, INC. and SPORTSMEDIA TECHNOLOGY CORPORATION,** | : | |
| | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | No. 1:18-cv-03025 (PGG) |
| | : | |
| **MLB ADVANCED MEDIA, LP,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| | : | |

---

<u>**DEFENDANT'S REPLY IN SUPPORT OF**</u>
<u>**PARTIAL MOTION TO COMPEL ARBITRATION AND**</u>
<u>**PARTIAL MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................... ii

I.   THE ENDEAVOR COUNTS SHOULD BE ARBITRATED ................................2

    A.   The Court Should Apply the Test in *JLM Industries* .................................... 2

    B.   The Endeavor Counts Relate to the Operation of the Endeavor (*JLM* Step 2) ............. 3

    C.   The Arbitration Clause Does Not "Swallow Up Everything" ...................................... 5

    D.   Plaintiffs Failed To Oppose Arbitration of the Trade Secret Claims.......................... 6

    E.   Plaintiffs Concede the Remaining Three *JLM* Steps .................................... 7

II.  PATENT CLAIM 31 IS INVALID UNDER 35 U.S.C. § 101 .................................7

    A.   Plaintiffs' Opposition Fails to Identify Any Non-Abstract Idea................................. 7

    B.   Plaintiffs' Opposition Fails to Identify Any Inventive Step ........................................ 9

# TABLE OF AUTHORITIES

*Advanstar Commc'ns Inc. v. Beckley-Cardy, Inc.*,
  1994 WL 176981 (S.D.N.Y. May 6, 1994) ............................................................. 3

*Affinity Labs of Tex., LLC v. DirectTV*,
  838 F.3d 1253 (Fed. Cir. 2016) ............................................................................ 8

*Ariosa Diagn., Inc. v. Sequenom, Inc.*,
  788 F.3d 1371 (Fed. Cir. 2015) .......................................................................... 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................... 10

*Breckenridge Edison Dev., L.C. v. Sheraton Operating Corp.*,
  2014 WL 4802885 (S.D.N.Y. Sept. 18, 2014) ...................................................... 7

*Diamond v. Diehr*,
  450 U.S. 175 (1981) ............................................................................................. 8

*E.S. Originals Inc. v. Totes Isotoner Corp.*,
  734 F. Supp. 2d 523 (S.D.N.Y. 2010) ................................................................... 2

*Felske v. Hirschmann*,
  2012 WL 716632 (S.D.N.Y. Mar. 1, 2012) ........................................................... 7

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017) ............................................................................ 9

*Interval Licensing LLC v. AOL, Inc.*,
  896 F.3d 1335 (Fed. Cir. 2018) ....................................................................... 8, 9

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
  387 F.3d 163 (2d Cir. 2004) ................................................................................. 2

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*,
  252 F.3d 218 (2d Cir. 2001) ................................................................................. 2

*McAllister Bros., Inc. v. A & S Transp. Co.*,
  621 F.2d 519 (2d Cir. 1980) ............................................................................. 1, 5

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016) ....................................................................... 7, 8

*Microsoft Corp. v. Samsung Elecs. Co.*,
  60 F. Supp. 3d 525 (S.D.N.Y. 2014) .................................................................... 6

ii

*Microthin.com, Inc. v. SiliconeZone USA, LLC*,
   2010 WL 2025495 (Fed. Cir. May 20, 2010).......................................................... 9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ............................................................................................... 3

*Morlee Sales Corp. v. Mfrs. Tr. Co.*,
   9 N.Y.2d 16 (1961) ................................................................................................ 3

*Pictet Funds v. Emerging Managers Grp., L.P.*,
   2014 WL 6766011 (S.D.N.Y. Dec. 1, 2014) ........................................................ 6

*Prudential Lines, Inc. v. Exxon Corp.*,
   704 F.2d 59 (2d Cir. 1983) ............................................................................. 3, 6, 7

*Pure Data Sys., LLC v. Ubisoft, Inc.*,
   2018 WL 3417530 (N.D. Cal. July 13, 2018) ..................................................... 10

*R. H. Macy & Co. v. Nat'l Sleep Prods., Inc.*,
   347 N.E.2d 887 (N.Y. 1976) ................................................................................ 5

*T-Jat Sys. 2006 Ltd. v. Expedia, Inc.*,
   2018 WL 1525496 (D. Del. Mar. 28, 2018) ....................................................... 10

Plaintiffs allege throughout the First Amended Complaint ("Complaint") that MLBAM abandoned its "operational obligations" under the Endeavor Contract. Plaintiffs use some form of the word "operation" over twenty times to describe the parties' dispute. Now, however, Plaintiffs insist that there is "no disagreement whatsoever about 'operations.'" Opp. at 1. They take the remarkable position that none of their claims—not even the one entitled "Breach of Operational Obligations"—relates to operations. According to Plaintiffs, while the arbitration provision applies to "any dispute between the Parties regarding the operation of the Endeavor," this Court should apply the clause only to disputes regarding ***ongoing*** operations.

Adopting Plaintiffs' construction would require reading an unduly restrictive, temporal requirement into the arbitration clause. The arbitration clause is not limited to disputes involving ongoing operations. It does not, as Plaintiffs claim, require the system to be "actually operating." Opp. at 11. Nor is there any support for the proposition that a dispute does not relate to operations simply because those operations occurred in the past. Plaintiffs' intent to pursue an abandonment theory is of no matter. As the Second Circuit explained, it "approaches the frivolous" to suggest that an arbitration clause is inapplicable simply because the defendant has stopped providing services and the plaintiff intends to pursue an abandonment theory. *McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519, 523 (2d Cir. 1980).

Plaintiffs' argument that MLBAM's reading of the arbitration clause would "swallow up everything" is nothing but a strawman. The Contract excludes several subjects from arbitration, including disputes about FIELDf/x, Gamelab, and the distribution of data relating to Minor League Baseball. MLBAM has never argued that every possible dispute is arbitrable. Rather, the Contract compels arbitration for disputes regarding the operation of the Endeavor, as that term is expressly defined.

1

With respect to Count I, Plaintiffs try in vain to identify patentable subject matter in Claim 31 of the '530 Patent. Their efforts are unsuccessful. Plaintiffs analogize Claim 31 to patent claims containing highly complex sets of rules and algorithms, or that relate to transforming uncured synthetic rubber into a different physical state. These analogies are unavailing and ignore well-established case law holding that claims, like the one here, that address the abstract concept of collecting, manipulating, and displaying information are unpatentable. Plaintiffs also make no real attempt to identify an inventive step in Step 2 of the *Alice* analysis. Claim 31 contains nothing more technical than references to "video" and "data" and no amount of attorney argument, divorced from any actual, concrete facts, can save Claim 31. Dismissal is therefore proper.

## I.   THE ENDEAVOR COUNTS SHOULD BE ARBITRATED

### A.   The Court Should Apply the Test in *JLM Industries*

As an initial matter, Plaintiffs are mistaken that the test outlined in *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004) "must be disregarded" in favor of that in *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001). Opp. at 8-9. To the contrary, courts apply the *JLM* test regardless of the breadth of an arbitration clause. *See, e.g.*, *E.S. Originals Inc. v. Totes Isotoner Corp*., 734 F. Supp. 2d 523, 529 (S.D.N.Y. 2010) (applying the *JLM* test to a narrow provision). To the extent the *Dreyfus* holding is considered, it is often analyzed as part of the second *JLM* step. *See, e.g., JLM Indus.*, 387 F.3d at 172; *E.S. Originals*, 734 F. Supp. 2d at 529. The Second Circuit has never suggested that the earlier *Dreyfus* opinion somehow supplants the subsequent *JLM* test as Plaintiffs contend.[1]

Regardless, both tests lead to the same fundamental question: do the Endeavor Counts

---

[1] Plaintiffs' argument is also puzzling because they effectively conceded that the *JLM* test applies in their pre-motion opposition letter. *See* 6/22/18 Pls. Opp. Letter at 3-4 (Dkt. 34).

fall within the scope of the arbitration clause? If so, the Court should enforce the Contract and "'[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Advanstar Commc'ns Inc. v. Beckley-Cardy, Inc.*, 1994 WL 176981, at *2 (S.D.N.Y. May 6, 1994) (narrow provision) (*quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). Further, as the party resisting arbitration, Plaintiffs have the burden of proving that the Endeavor Counts are "collateral" to the agreement. *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir. 1983) (narrow provision).

### B.    The Endeavor Counts Relate to the Operation of the Endeavor (*JLM* Step 2)

Under *JLM* Step 2, a court decides if a claim falls within the scope of arbitration. Plaintiffs argue that none of the Endeavor Counts—not even the Count entitled "Breach of **Operational Obligations**"—fall within the scope of arbitration because MLBAM abandoned its obligations and the arbitration clause covers only "claims when the system is actually operating." Opp. at 5-13. There are at least three fatal flaws in Plaintiffs' argument.

**First**, Plaintiffs' narrow interpretation would require improperly rewriting the arbitration clause to include language that was omitted. There is nothing in the clause limiting arbitration to disputes involving "current" or "ongoing" operations. Rather, the arbitration clause covers "any dispute" regarding the "operation of the Endeavor." The omission of "ongoing," or similar language which the parties surely could have used if intended, is fatal to Plaintiffs' narrow construction. *See Morlee Sales Corp. v. Mfrs. Tr. Co.*, 9 N.Y.2d 16, 19 (1961) ("courts may not by construction add or excise terms, nor distort the meaning of those used and thereby 'make a new contract for the parties under the guise of interpreting the writing.'"). Any attempt to limit arbitration to disputes about the "manner" of MLBAM's performance should similarly be rejected. *Cf.* Opp. at 6. Adding this vague restriction would be contrary to the express language requiring that "any dispute" regarding the operation of the Endeavor be arbitrated.

Plaintiffs' extratextual limitations cannot be correct because the parties expressly agreed that the arbitration clause would survive "any expiration or termination" of the Contract. Contract, § 12.3 (Compl. Ex. B). The parties clearly intended to arbitrate claims even after the Contract ended. Had the parties intended to forego arbitration after operations ceased or in the case of abandonment, they would have indicated that in the survival clause by exempting arbitration from Section 12.3. Plaintiffs' overly restrictive interpretation also would lead to the nonsensical result that the right to arbitrate depends on the lawsuit's timing. A plaintiff could either file a lawsuit right away (if arbitration was preferred) or wait until operations ended and then sue (if litigation was preferred). This cannot possibly be what the parties intended.

**Second**, Plaintiffs' argument that this case "will not be about the particulars of various operations" is belied by their own Complaint. Opp. at 11-12. It is true, as Plaintiffs contend, that one key issue in this case is whether MLBAM has ongoing obligations. *Id.* However, Plaintiffs also repeatedly claim that MLBAM breached its "operational obligations." They detail eight particular operational obligations, as well as four exclusivity clauses that they allege were crucial to the operation of the Endeavor, that were supposedly breached. *See* Compl. ¶¶ 39, 113, 292-96. To evaluate Plaintiffs' claims, a fact-finder must first determine what MLBAM's operational obligations were—which will inevitably require resolving disputes about how the Endeavor was supposed to operate and what exactly MLBAM was required to do as part of operations. Plaintiffs also claim that Sportvision lost contracts with third-party broadcasters because "MLBAM's actions [] rendered impossible Sportvision's performance of its own contractual obligations." *See id.* at ¶¶ 42, 142-49. To resolve this claim, a fact-finder must delve into the specifics of operations—including what obligations MLBAM owed with respect to specific broadcasters, what obligations it allegedly failed to fulfill, and whether Sportvision's

performance was rendered impossible. These and other "particulars" will be crucial in this case.

**Third**, Plaintiffs' argument is contrary to governing federal and state law, such as the Second Circuit's holding in *McAllister Bros*. In that case, Plaintiff McAllister Brothers provided tugboat services to the defendants. *McAllister Bros.*, 621 F.2d at 520-21. The parties had contracted to arbitrate "any disagreement" about whether "the service rendered by McAllister does not meet the standards of the industry." *Id.* at 521. When a dispute subsequently arose about the cancellation of McAllister's tugboat services, McAllister sought to compel arbitration. Defendants objected on the grounds that "McAllister abandoned the contract" and implemented a "complete cessation of service." *Id.* at 521-23. The Second Circuit flatly rejected this argument, holding that it "approaches the frivolous." *Id.* The court held that an arbitration clause covering "any disagreement" about standards of industry would cover a dispute about the complete cessation of service. *Id.* Further, because abandonment was "wholly derivative of" and "inextricably tied up with" arbitrable issues, arbitration was appropriate. *Id.*

The New York Court of Appeals has also recognized that a dispute about abandonment is really a dispute about ongoing performance. *R. H. Macy & Co. v. Nat'l Sleep Prods., Inc.*, 347 N.E.2d 887 (N.Y. 1976). In *R.H. Macy*, the arbitration clause applied to "any dispute as to the performance of any provision" of the contract. *Id.* at 270. As here, the plaintiff argued that the arbitration clause was inapplicable because the defendant had abandoned the contract. *Id.* The court rejected this contention, finding that a claim of abandonment "is a question intimately related to performance because, *a fortiori*, it is premised on the nonfulfillment of contractual obligations and the failure to accomplish the terms of the agreement." *Id.* at 271.

### C.    The Arbitration Clause Does Not "Swallow Up Everything"

MLBAM's interpretation of the arbitration clause would not "swallow up everything." Opp. at 1. The parties had multiple joint projects, but the term "Endeavor" only includes the

5

parties' obligations concerning the PITCHf/x System. Contract, at § 1(d) (Compl. Ex. B). Thus, the arbitration provision does not apply to disputes about the FIELDf/x System (a separate system for tracking "players and hit balls on a baseball field") or the Gamelab system (a "high-speed video system" that generates a "biomechanical model of batters and pitchers"). 12/15/14 Amend. at § A (Compl. Ex. E). Nor does the arbitration provision apply to disputes about the data collected during minor league ("MiLB") games. 1/1/09 Amend. at § C (Comp. Ex. C) (excluding MiLB data from the definition of "PITCHf/x System Data"). Given these exclusions, MLBAM's interpretation accurately reflects the language of the clause.

Plaintiffs' citation to *Microsoft Corp. v. Samsung Elecs. Co.*, 60 F. Supp. 3d 525 (S.D.N.Y. 2014), does not save their argument. Opp. at 10. In *Microsoft*, the parties agreed to arbitrate certain "discrete accounting and invoicing issues." *Microsoft,* 60 F. Supp. 3d at 531. But Plaintiffs fail to mention that the actual accounting documents in that case were "undisputed." *Id.* Here, on the other hand, the core issues in the arbitration provision—namely, the parties' obligations relating to the operation of the Endeavor—will be sharply disputed. And, unlike in *Microsoft*, the resolution of these issues will be crucial to the outcome of the case.[2]

### D.    Plaintiffs Failed To Oppose Arbitration of the Trade Secret Claims

Plaintiffs do not even attempt to overcome their burden of proving that the trade secret claims are "collateral" to the agreement, instead offering only conclusory statements. *Prudential*, 704 F.2d at 64. The only substance in the Opposition's trade secret section is the argument that the *Collins* and *Genesco* cases cited in MLBAM's motion involve broad arbitration clauses. Opp. at 12-13. But the black-letter law set forth in *Collins* and *Genesco* applies equally to narrow clauses. Even for narrow clauses, arbitration is appropriate where the factual allegations raise

---

[2] *Pictet Funds* is also distinguishable. 2014 WL 6766011 (S.D.N.Y. Dec. 1, 2014). The clause there was limited to disputes "***solely***" about fees payable—a restriction not found here. *Id.* at *7.

disputes that fall within the arbitration clause or are "wholly derivative of" or "inextricably tied up with" issues that fall within the arbitration clause. *Prudential*, 704 F.2d at 64-65 (compelling arbitration under narrow clause where "[r]esolution of this dispute necessarily implicates resolution of several sub-issues" that are "inextricably tied up with" and "wholly derivative of issues that fall within the scope of the arbitration clause"); *see also, e.g.*, *Breckenridge Edison Dev., L.C. v. Sheraton Operating Corp.*, 2014 WL 4802885, at *5-6 (S.D.N.Y. Sept. 18, 2014) (compelling arbitration of tort claims where resolution of those claims was intertwined with arbitrable issues). Because Plaintiffs' trade secret claims raise issues that are inextricably tied up with the operation of the Endeavor, they should be arbitrated no matter how they are labeled.

### E.    Plaintiffs Concede the Remaining Three *JLM* Steps

Plaintiffs fail to address *JLM* Step 4, and have therefore conceded that the Court should stay any remaining counts pending the outcome of arbitration. *See, e.g.*, *Felske v. Hirschmann*, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012). Plaintiffs also fail to address *JLM* Steps 1 and 3, and have conceded those steps as well.

## II.    PATENT CLAIM 31 IS INVALID UNDER 35 U.S.C. § 101

### A.    Plaintiffs' Opposition Fails to Identify Any Non-Abstract Idea

Plaintiffs attempt to analogize Claim 31—a claim that contains no more technical detail than passing references to "video" and "data"—to patent claims with highly-specific algorithms and "unconventional rules that relate subsequences of phonemes, timings, and morph weight sets." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1302-03 (Fed. Cir. 2016). Plaintiffs' efforts are to no avail; Claim 31 is directed to nothing more than the abstract idea of collecting, manipulating, and displaying strike zone information.

Plaintiffs argue that the '530 Patent is non-abstract because it identifies a particular method of determining the strike zone. Opp. at 18. But the measurement and location of the

strike zone is determined by MLB's rules. Claim 31 only instructs to "receiv[e] an indication of one or more positions" on a batter and calculate a height and volume. Patent at 11:55 (Compl. Ex. A). Claim 31 never describes "a particular way" of receiving or calculating anything. Any specificity comes from conclusory statements in the Opposition and Complaint, not facts, and each element of Claim 31 describes merely a result, not a specific means of achieving it. There is no improvement to technology described and repeated references to results-based language are insufficient. *See Affinity Labs of Tex., LLC v. DirectTV*, 838 F.3d 1253, 1257 (Fed. Cir. 2016).

Plaintiffs also rely on *McRO* for the proposition that "automatically" calculating height and volume renders Claim 31 non-abstract. Opp. at 16-21. But *McRO* involved highly specific rules for automating the process of animating facial expressions. The *McRo* process was not abstract because it "uses a combined order of specific rules that renders information into a specific format that is then used and applied to create desired results: a sequence of synchronized, animated characters." *McRO*, 837 F.3d at 1315. Unlike the generic limitations here, *McRo* contained "many exemplary rule sets that go beyond simply matching single phonemes from the timed transcript with the appropriate morph target." *Id*. at 1307. Plaintiffs' reliance on *Diamond v. Diehr*, 450 U.S. 175 (1981), is similarly unhelpful. There, the Supreme Court held the claims were patentable because they "involve the transformation of an article, in this case raw, uncured synthetic rubber, into a different state…" and "describe in detail a step-by-step method for accomplishing such…" *Id.* at 184. There are no such specific rules, details, or physical transformation here, but rather just a recitation of the sought-after result.

This case is instead analogous to the opinions holding as abstract claims that are directed to the process of collecting, manipulating, and displaying content. *See* Mtn. at 21-22. Issued just days after MLBAM's opening brief, *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335 (Fed.

Cir. 2018), is especially analogous. There, the Federal Circuit invalidated claims that were directed to an "attention manager," which is described as a system for displaying information for a user on a screen. The claims were held unpatentable because they included limitations "for accessing, scheduling, and then displaying" information and used only "conventional functions stated in general terms . . ." *Id.* at 1338. The court further explained that the claims were invalid because "the instructions limitations are generic and cover established ways to access information, organize information, and then display information." *Id.* at 1345.

Plaintiffs also suggest that separate, dependent claims somehow "confirm that Claim 31 is not directed to an abstract idea." Opp. at 20. But no dependent claims have been asserted in this case. Plaintiffs allege infringement of Claim 31 only and the references to "at least Claim 31," without more, are not sufficient to satisfy their pleading requirements. *Microthin.com, Inc. v. SiliconeZone USA, LLC*, 2010 WL 2025495, at *13 (Fed. Cir. May 20, 2010) ("The addition of the language 'at least' did not constitute the assertion of additional claims."). Plaintiffs also fail to cite any support for the idea that alleged specificity in the dependent claims renders an independent claim non-abstract. To the contrary, the dependent claims are merely field-of-use limitations on the abstract concept and are therefore no less abstract themselves. *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (holding limits of an invention "to a technological environment for which to apply the underlying abstract concept . . . do not make an abstract concept any less abstract under step one").

### B.   Plaintiffs' Opposition Fails to Identify Any Inventive Step

Plaintiffs must identify an inventive step for Claim 31 to be valid under Step 2 of *Alice*. The Opposition, however, consists only of conclusory statements that claim elements such as "receiving an indication" of batter positions, "using data," and "adding an image" into video were "not well-understood, routine, or conventional." Opp. at 24. At the pleading stage, a court

must construe facts in favor of the plaintiffs. However, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Plaintiffs' entirely generic statements, with barely any reference to technology at all, are insufficient to identify an inventive step.

Plaintiffs' citation to *Aatrix* cannot save the patent claim from dismissal. "In *Aatrix Software*, the court held that the plaintiff's **concrete allegations** . . . were sufficient to preclude dismissal at the Rule 12(b)(6) stage." *Pure Data Sys., LLC v. Ubisoft, Inc.*, 2018 WL 3417530, at *11 (N.D. Cal. July 13, 2018). Here, Plaintiffs make no such concrete allegations but instead argue in a conclusory fashion and rely upon statements in the specification that are unrelated to Claim 31, such as those dealing with the actual determination of a ball or strike. *See, e.g.*, *T-Jat Sys. 2006 Ltd. v. Expedia, Inc.*, 2018 WL 1525496, at *6 (D. Del. Mar. 28, 2018) ("Plaintiff seeks to invent a factual dispute where none exists."). Plaintiffs even make a half-hearted attempt to suggest that claim construction is necessary, but do not identify a single term for which construction would affect the outcome of the patentability analysis. Opp. at 16 n.6.

Plaintiffs' final argument regarding preemption simply misstates the law. The well-settled law is that the preemption determination is conducted through the *Alice/Mayo* two-step process. "Where a patent's claims are deemed only to disclose patent ineligible subject matter under the *Mayo* framework, as they are in this case, preemption concerns are fully addressed and made moot." *Ariosa Diagn., Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015). Nor is it sufficient for Plaintiffs to identify some hypothetical method that is not preempted. "While preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility." *Id.*

Dated: August 31, 2018                    Respectfully submitted,


                                          /s/ Alan Littmann
                                          Alan E. Littmann
                                          Brian P. O'Donoghue
                                          Laura Sexton
                                          GOLDMAN ISMAIL TOMASELLI
                                          BRENNAN & BAUM LLP
                                          564 W. Randolph St., Suite 400
                                          Chicago, IL 60661
                                          Telephone: (312) 881-5969
                                          Facsimile: (312) 881-5189
                                          Email: alittmann@goldmanismail.com
                                          Email: bodonoghue@goldmanismail.com
                                          Email: lsexton@goldmanismail.com

                                          J. Christopher Jensen
                                          Joelle A. Milov
                                          COWAN, LIEBOWITZ & LATMAN, P.C.
                                          114 West 47th Street
                                          New York, NY 10036-1525
                                          Telephone: (212) 790-9204
                                          Facsimile: (212) 575-0671
                                          Email: jcj@cll.com
                                          Email: jam@cll.com

                                          *Attorneys for Defendant*
                                          *MLB Advanced Media, L.P.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing has been served on August 31, 2018 via email and/or U.S. mail to all counsel of record at the addresses set forth below.

Matt Adler
Benjamin Eichel
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
adlerm@pepperlaw.com
eichelb@pepperlaw.com

H. Peter Haveles, Jr.
PEPPER HAMILTON LLP
The New York Times Building
620 Eighth Avenue, 37th Floor
New York, NY 10018-1405
havelesp@pepperlaw.com

*/s/ Alan E. Littmann*
Alan E. Littmann