**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SPORTVISION, INC. and SPORTSMEDIA TECHNOLOGY CORPORATION,<br><br>      Plaintiff,<br><br>v.<br><br>MLB ADVANCED MEDIA, L.P.<br><br>      Defendant. | Case No. 18-cv-03025 (PGG) |

**DEFENDANT MLB ADVANCED MEDIA, L.P.'S SUPPLEMENTAL REPLY CLAIM CONSTRUCTION BRIEF REGARDING "THREE DIMENSIONAL VOLUME"**

MLBAM predicted in its opening supplemental brief that Plaintiffs would repackage their original proposal of rewriting "three dimensional <u>volume</u>" as "three dimensional <u>zone</u>" under the guise of plain and ordinary meaning. (Dkt. No. 229 at 9–10.) In their response, Plaintiffs admit to doing exactly that. (*See, e.g.*, Dkt. No. 233 at 10 (Plaintiffs explaining their proposed construction "has not substantively changed"; *id.* at 5-6 (Plaintiffs arguing their construction purports that "volume," "box," "zone," and "space" mean the same thing)). Plaintiffs' proposal to equate "volume" to "zone" not only contradicts the Court's guidance that it will be "resistant to using another word in place of [volume]" (Dkt. No. 229, Ex. 1 at 40:19.), but also violates the presumption that different terms have different meanings. *See, e.g.*, *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008); *Amgen Inc. v. Sandoz Inc.*, 923 F.3d 1023, 1031-32 (Fed. Cir. 2019). Plaintiffs also ask the Court to further expand the claim term "three dimensional volume" to include a "box" (akin to an outer perimeter), coordinates of the four corners of a box, and perimeters in order to reverse-engineer an infringement case. Plaintiffs learned more than two years ago after reviewing MLBAM's code that its products do <u>not</u> determine a three-dimensional volume. Plaintiffs' litigation-driven proposal should be rejected.

## I.   PLAINTIFFS' PROPOSAL WOULD ENCOMPASS TERMS THE APPLICANTS REJECTED

Plaintiffs propose that "three dimensional volume" be construed as "space defined in three dimensions." Plaintiffs begin by equating a "volume" to a "box" and a "zone." (Dkt. No. 233 at 3.) But these are each distinct concepts that the patent applicant chose to use or not use in the claims, specification, and prosecution history. (Dkt. No. 229 at 7.) As Plaintiffs recognize, a well-known canon of claim construction is that different words in the claims, specification, and prosecution history are presumed to have different meanings. (Dkt. No. 233 at 4; *see also Helmsderfer*, 527 F.3d at 1382.) For instance, in *SimpleAir*, the Federal Circuit reversed the district

1

court's construction of "data channel" for erroneously equating it to the term "data feeds" in the specification. *SimpleAir, Inc. v. Sony Ericsson Mobile Comm'ns. AB*, 820 F.3d 419, 431 (Fed. Cir. 2016). The Federal Circuit explained that "when the patentee amended the patent in 2004, it chose to use the term 'data channel,' which does not appear in the patent's written description, rather than the term 'data feed,' which does." *Id.* Like in *SimpleAir*, the patent applicant here chose to modify the claims with the word "volume," which does not appear in the '530 Patent's written description, rather than the words "box" or "zone," which do. (Dkt. No. 229 at 7.)

The other cases Plaintiffs cite are inapposite. In *Nichia Corp. v. Everlight Ams., Inc.*, 855 F.3d 1328, 1335-36 (Fed. Cir. 2017), the term "planar" (from the claims) and "in substantially the same plane" (from the specification) were held to be commensurate. But "planar" and "plane" have the same root and the patent applicant had not modified the claims with "planar" specifically to overcome an Examiner's rejection. Likewise in *SAS Inst., Inc. v. ComplementSoft, LLC*, 825 F.3d 1341, 1348 (Fed. Cir. 2016), the term "graphical representation of a data flow" (from the claims) was held to be commensurate in scope with "data flow diagram" (from the specification). But "data flow" is identical in both phrases and it is evident that a "diagram" is a "graphical representation." In contrast, here, "volume" and "box" or "zone" have no common root, and the patent applicant specifically chose to amend the claims to add "three dimensional volume" to overcome the Examiner's rejection. (Dkt. No. 229 at 6-7.) The patent applicant made that selection with the knowledge that "box" and "zone" were already used in the original patent application.

Plaintiffs assert that a "box" or a "zone" is a preferred embodiment of a "three dimensional volume." But the specification <u>never</u> uses the term "three dimensional volume" at all, let alone labels a "box" as its "preferred embodiment." Instead, the specification and file history demonstrate that the patent applicant intended a "three dimensional volume" as different than a

2

"box." The Ellenby publication and the '530 patent both disclose a three-dimensional box for the strike zone. (*Compare* Dkt. No. 185, Ex. 2 at Fig. 19 (Ellenby Patent) *with* '530 Patent 2:3-8; Fig. 1.) The Examiner rejected the application over Ellenby, explaining that it disclosed "adding the 3 dimensional image of the strike zone to a video." (Dkt. No. 185, Ex. 3 at 2–3.) The patent applicant never refuted that characterization. Faced with the rejection, the patent applicant amended the claims to add "three dimensional volume" as a way to distinguish its purported invention from the three-dimensional box in Ellenby. (Dkt. No. 177, Ex. C at 3.) Regardless, even putting aside the fact that the '530 patent never once identifies a "three dimensional box" as a "preferred embodiment," the Federal Circuit instructed that "unambiguous language of the amended claim controls over any contradictory language in the written description," even where "it would exclude the preferred and only embodiment disclosed in the specification." *Elekta Instrument S.A. v. O.U.R. Scientific Int'l Inc.*, 214 F.3d 1302, 1308 (Fed. Cir. 2000) (construction of sources exclusively between 30° and 45° is proper despite preferred and only embodiment having sources between 0° and 30°); *see Helmsderfer*, 527 F.3d at 1383 (declining to "rewrite claim language" to "encompass the preferred embodiment").

Plaintiffs further propose to encompass the coordinates of the four corners of a box or lines outlining a volume in their construction. (Dkt. No. 233 at 8.) These are not volumes, but points or lines on a volume. Plaintiffs even contend that a "perimeter" of a sphere satisfies the claim term "three dimensional volume." (*Id.* at 9.) But as any geometry teacher or person of ordinary skill in the art knows, a perimeter is a boundary line along the outer limits of an area and is not a three-dimensional volume. *See, e.g.*, *Indratech, LLC v. Fibrix, LLC*, No. 5:16-CV-179-DCK, 2018 WL 482062, at *4 (W.D.N.C. Jan. 18, 2018) (construing "perimeter" as "boundary of the area").

**II.     PLAINTIFFS SEEK TO DISASSOCIATE THE SHAPE OF THE STRIKE ZONE FROM A "THREE DIMENSIONAL VOLUME" REPRESENTING IT**

3

Plaintiffs propose the construction "space defined in three dimensions" in order to claim that any space with some length, width, and depth can meet that limitation even if it is a different shape than the strike zone. (Dkt. No. 233 at 9.) But a "space" with some length, width, and depth is not the same as a "volume" unless that length, width, and depth corresponds to a particular object's length, width, and depth. A "space" by itself is merely a freeform, abstract thing.

MLBAM's proposal correctly links the shape of the space to the shape of the strike zone by specifying it is the space "*occupied by a three-dimensional object*." MLBAM previously provided evidence show that "volume" is a space *occupied by an object*: (1) "volume" is "[a] measure of the 3-dimensional space *enclosed by a solid*."[1] (Dkt. No. 177, Ex. E (dictionary)); (2) "volume" is an "amount of space *occupied or enclosed by cubic units*." (*Id.* at Ex. F (dictionary)); (3) "inner volume" is "inside the space defined and bounded *by the pyramid shaped element*." (*FullView, Inc. v. Polycom, Inc.*, No. 18-CV-00510-EMC, 2021 WL 1253653, at *5 (N.D. Cal. Apr. 5, 2021)); (4) "volume" is "the three-dimensional space occupied *by an object*." (*Id.* at *6.)



Plaintiffs' inclusion of the phrase "defined in three dimensions" does not transform the space into a volume. It instead erroneously suggests that a space having any three dimensions would meet this claim term. The parties' discussion of voxels is instructive. Plaintiffs mistakenly argue that the sphere on the left from MLBAM's supplemental brief[2] supports their construction. According to Plaintiffs, the "rough edges" mean "the voxels do not occupy the same space as the sphere they represent," but are instead a "space defined in three dimensions." (Dkt. No. 233 at 9.) Plaintiffs

---

[1] All emphases added unless otherwise noted.
[2] Source: https://gamedev.stackexchange.com/questions/120014/smooth-mesh-from-voxel-grid.

4

overlook two points: (1) MLBAM chose the rough example because it was easier to illustrate the concept of a "voxel," and (2) voxel modeling is sophisticated and can be refined to match the full expanse of the sphere as shown in the sphere on the right from the same webpage.  Further, Plaintiffs' own expert testified that volume refers to the "entire space."  He explained that calculating the volume may be done by "break[ing] *the entire space up* into voxels, little – think of square regions of space[.]"  (Dkt. No. 177, Ex. B, Stevenson Dep., 49:15-50:1.)

By untethering a "three dimensional volume" from the shape of the strike zone, Plaintiffs stray far from the term's "plain meaning" to advance their litigation interests. This leads Plaintiffs to argue that a "perimeter," "box," "coordinates of the four corners of a box," or "lines"—things that are not a volume—would satisfy "three dimensional volume" under their proposal.

### III.    MLBAM'S PROPOSAL DOES NOT EQUATE THE "THREE DIMENSIONAL VOLUME" TO THE STRIKE ZONE

MLBAM systematically analyzed the relevant intrinsic and extrinsic evidence to demonstrate that the plain meaning of "three dimensional volume" is a "space occupied by a three-dimensional object." (Dkt. No. 229.) Unable to address MLBAM's analysis head on, Plaintiffs instead misread MLBAM's proposal as equating the "three dimensional volume" to the strike zone. (*See* Dkt. No. 233 at 6.) MLBAM explained in its supplemental brief that the volume of the object *represents* the strike zone, not that the volume of the object *is* the strike zone. (*See, e.g.*, Dkt. No. 229 at 2.) The "object" may be something in the physical world (like the real space of the strike zone near the batter) or something virtual (like computer data identifying a strike zone). (*Id*.) But either way, the "three dimensional volume" is the space occupied by that virtual or real object.

### IV.    CONCLUSION

For the foregoing reasons, MLBAM respectfully requests that the Court adopt its proposed definition as the plain and ordinary meaning of the disputed term "three dimensional volume."

Date: June 18, 2021	Respectfully submitted,

	 /s/ Alan E. Littmann
	Alan E. Littmann
	Brian O'Donoghue
	Laura Sexton
	Allyson Julien
	Shaun Zhang
	Samuel E. Schoenburg
	Lesley Hamming
	GOLDMAN ISMAIL TOMASELLI
	  BRENNAN & BAUM LLP
	200 South Wacker Dr., 22nd Floor
	Chicago, IL 60606
	Tel: (312) 881-5969
	Fax: (312) 380-7019
	alittmann@goldmanismail.com
	bodonoghue@goldmanismail.com
	lsexton@goldmanismail.com
	ajulien@goldmanismail.com
	szhang@goldmanismail.com
	sschoenburg@goldmanismail.com
	lhamming@goldmanismail.com

	*Counsel for Defendant MLB Advanced Media, L.P.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was filed electronically on June 18, 2021, pursuant to the Court's CM/ECF system, which will provide notice to all registered counsel of record by operation of the CM/ECF system.

*/s/ Alan E. Littmann*