UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SPORTVISION, INC. *et al*,

                      Plaintiffs,

-against-

MLB ADVANCED MEDIA L.P.,

                      Defendant.

18cv3025 (PGG) (DF)

**ORDER**

**DEBRA FREEMAN, United States Magistrate Judge:**

       In the course of supervising discovery in the above-captioned action, this Court has addressed a number of disputes (involving both party and non-party discovery), which it has generally sought to resolve through case management conferences. To that end, this Court held lengthy conferences with counsel for plaintiffs Sportvision, Inc. and SportsMedia Technology Corporation (together, "Sportvision"), defendant MLB Advanced Media L.P. ("MLBAM"), and certain nonparties on October 1, 2020, November 25, 2020, and June 23, 2021. (*See* Dkts. 140, 178, 239.) It is this Court's understanding, however, that, following those conferences, additional discovery disputes arose, including with regard to the scope and appropriateness of the discovery that Sportvision and MLBAM have sought from each other.[1] More specifically, the following disputes between the parties remain at issue:

---

[1] The Docket reflects that Sportvision also currently has discovery disputes with non-party TrackMan, Inc. ("Trackman") and non-parties ChyronHego Corp. and ChyronHego Parent Corp. (collectively, "ChyronHego"). (*See* Dkts. 244, 248-249, 270.) Those disputes will not be addressed in the within Order. Rather, before issuing any ruling on any discovery motions relating to these non-parties, this Court will hold a conference with all counsel involved, to discuss the issues being raised.

> (1)   Whether MLBAM should be compelled to produce certain documents and information related to its patents and licenses. (*See* Dkts. 226, 227, 260.)
>
> (2)   Whether Sportvision should be compelled to produce documents responsive to MLBAM's Third Set of Requests for Production, relating to prior-art systems that Sportvision developed before the filing of the patent-in-suit, or, in the alternative, whether Sportvision's motion to strike MLBAM's supplemental invalidity contentions should be granted. (*See* Dkt. 261.)
>
> (3)   Whether this Court should grant MLBAM's request to conduct an *in camera* review of an email between Sportvision and a third-party to determine if that email is privileged and thus protected from disclosure. (*See* Dkts. 275, 276.)
>
> (4)   Whether the fact discovery deadline should be extended, in light of the discovery disputes still outstanding among the parties and non-parties. (*See* Dkts. 279, 280.)

These disputes are hereby resolved as follows:

### **Sportvision's Motion To Compel Discovery From MLBAM**
### **(Dkts. 226, 227, 260)**

In May 2021, the parties filed a joint letter (with restricted view at Dkt. 226, and in redacted form, for public view, at Dkt. 227) setting out a number of discovery disputes. This Court resolved all but one of those disputes during the June 23, 2021 conference. (*See generally* Dkt. 239 ("6/23/21 Tr.").) The one remaining dispute concerned Sportvision's request that this Court compel MLBAM to respond to certain document requests and interrogatories related to MLBAM's patent portfolio, licenses, and licensed technology – a dispute that has now been further addressed by the parties at Dkt. 260. In particular, this dispute relates to Sportvision's Interrogatories Nos. 20 and 21, and Requests for Production Nos. 23 and 24. (*See* Dkt. 226, at 8-10.)

As initially argued by Sportvision in the parties' May 2021 submission, the information and documents it sought were relevant to its establishing patent damages and, more specifically, to its ability to address the legal factors used in computing patent damages, as those factors are set forth in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) (setting out 15 factors to consider in determining the amount of a reasonable royalty for patent damages), *mod. and aff'd*, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971) ("*Georgia-Pacific*"). (*See id.*) As relevant here, the second *Georgia-Pacific* factor is: "The rates paid by the licensee for the use of other patents comparable to the patent in suit." *Georgia-Pacific*, 318 F. Supp. at 1120.

MLBAM, in opposing Sportvision's motion to compel this discovery, argued that, pursuant to *Georgia-Pacific*, Sportvision was only entitled to discovery that related to "patents *comparable* to the patent in suit," and MLBAM asserted, in this case, it was "not aware of any such [patent] licenses." (Dkt. 226, at 26 (emphasis in original).) MLBAM further argued that Sportvision's interrogatories and discovery requests, as they had been drafted at that time, were "wildly overbroad" and unduly burdensome. (*Id.*, at 27.)

In its June 23, 2021 conference with counsel, this Court concluded that MLBAM had not provided sufficient information to enable this Court to determine whether the production of its patents and licenses would be disproportionate to the needs of the case. (6/23/21 Tr., at 53.) This Court noted on the record that it would be willing to allow production that went "beyond the particular technology" at issue, but not to allow production that was "far off the mark and very burdensome." (*Id.*, at 54.) Accordingly, this Court instructed MLBAM to investigate the universe of its patents and licenses, to provide the results of that investigation to Sportvision, and then to work with Sportvision, in good faith, to try to reach agreement on the reasonable scope of

3

production. (*See id.*, at 60.) This Court also suggested to MLBAM that, if it actually only had a "very limited" number of patent licenses, then it should consider producing those licenses, while reserving its right to argue that the licenses were either not admissible or not useful in a damages computation. (*Id.*, at 58.)

It is this Court's understanding that, two months after the June 23 conference, MLBAM informed Sportvision that, through its investigation, it had identified 12 patent licenses that MLBAM had taken from others (which it referred to as "incoming" licenses), and no patent licenses that it had granted to others (*i.e.* "outgoing" licenses). (*See* Dkt. 260, at 6; *see also* Letter to Ryan Deck, Esq., from Allyson Julien, Esq., dated Aug. 23, 2021 ("MLBAM 8/23/21 Ltr.") (Dkt. 260-1).) MLBAM maintained, however, that "none" of the identified licenses were for patents that, in its view, were "comparable or remotely relevant" to the patent-in-suit (the '530 Patent) or that was related to any of the technologies at issue in the products that Sportvision had accused of infringing that patent (*i.e.,* products that determine the location of a strike zone for an individual batter and add a graphic representing the strike zone and the location of the pitch to broadcast video or other video images). (*See* MLBAM 8/23/21 Ltr., at 2.) To demonstrate this, MLBAM provided Sportvision with a bullet-point list of descriptions of the technologies that, according to MLBAM, were covered by the 12 patent licenses. (*See id.*, at 1-2.) Taking the position that this list of descriptions should have resolved the matter, MLBAM did not then produce any of those patent licenses, nor did it amend its answers to the interrogatories in question. Although counsel offer differing accounts about their conversations in the months that followed (*see* Dkt. 260), it appears undisputed that, to date, MLBAM has still not produced its 12 license agreements, nor has it provided more specific information about

them – such as identifying the counterparties, the patents to which the licenses applied, or the licenses' royalty structures or amounts. (*See id.*, at 2.)

Rule 26(b)(1) provides that, subject to certain limitations, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevant information," under this Rule, "need not be admissible in evidence to be discoverable." *Id.*; *see Small v. Nobel Biocare USA, LLC*, 808 F. Supp. 2d 584, 591 (S.D.N.Y. 2011) (noting that relevance under Rule 26(b)(1) "is construed more broadly for discovery than for trial" (internal quotation marks and citation omitted)). Nonetheless, even though there are times when discovery may permissibly be broad, the party seeking discovery still has the burden to demonstrate relevance, *see Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 102 (S.D.N.Y. 2013), and, as set out in the Rule, this means that there must be a showing that the discovery sought could somehow support or aid in defeating the claims (including damages claims) or defenses asserted in the action.

In the context presented here, "[w]hile *Georgia-Pacific* does indicate that the patents to which [the court] may look to determine a reasonable royalty rate must be 'comparable,' courts have often interpreted this factor broadly" with respect to parties' productions in discovery. *Trading Techs. Intern., Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2007 WL 704525, at *1-2 (N.D. Ill. Mar. 1, 2007) (relying on *Georgia-Pacific* factors and granting plaintiff's motion to compel defendants to produce patent licenses that "may be of assistance in determining a reasonable royalty rate" even if those licenses would "not carry weight in the final determination" at trial); *see Small*, 808 F. Supp. 2d at 590 (noting that, in eliciting discovery, it is appropriate for a patentee, "who bears the burden of establishing damages," to "consider[] all information

5

concerning royalty rates for the patent in suit to establish a factual basis for a reasonable royalty"); *see also, e.g., Barnes & Noble, Inc. v. LSI Corp.*, No. C 11-02709 EMC (LB), 2012 WL 1564734 at *5-6 (N.D. Cal. May 2, 2012) (relying on *Georgia-Pacific* factors and finding that "possibly-comparable license agreements" were discoverable "under Rule 26's broad mandate," even though they might not be admissible at trial); *High Point SARL v. Sprint Nextel Corp.*, No. 2:09-cv-02269-CM-DJW, 2012 WL 1533213, at *7-8 (D. Kan. Apr. 30, 2012) (recognizing "that a different standard exists for discoverability of other comparable patent licenses and the ultimate admissibility and weight to be given to the licenses at trial"); *but see Probert v. The Clorox Co.*, 258 F.R.D. 491, 500 (D. Utah 2009) *aff'd sub nom. Probert v. Clorox Co., Inc.,* 404 F. App'x 486 (Fed. Cir. 2010) (limiting discovery of licensing information after an *in camera* review revealed that certain licensed technologies were not comparable to the patents at issue).

Under these standards, if there is any reasonable possibility that the technology underlying certain of MLBAM's 12 patent licenses could be considered "comparable" to the technology at issue here, then MLBAM should produce, in discovery, information relating to those particular licenses. At this point, having reviewed MLBAM's bullet-point descriptions of the technologies underlying its 12 licenses, this Court cannot conclude that any of the described technologies are even potentially comparable to the technology that is the subject of this suit. Still, this Court notes that the descriptions that were provided by MLBAM in its letter to Sportvision are extremely brief, and that there may be components of those technologies (for "broadcast streaming," for example), that may bear some relation to the Sportvision technologies at issue. For this reason, MLBAM is directed to identify to Sportvision, no later than January 17, 2022, each of the *patents* that are the subject of MLBAM's 12 licenses, by providing Sportvision

with information sufficient to enable Sportvision to locate copies of those patents in the U.S. Patent and Trademark Office's publicly accessible online database.  MLBAM, however, need not produce its patent license agreements or other information relating to its licenses, at this time.  If, after reviewing the patents, Sportvision believes that any aspect of the technologies covered by those patents is, in fact, comparable to the technologies that are at issue here, then Sportvision may renew its motion to compel, explaining, with specificity, its arguments regarding comparability, so as to demonstrate the relevance of the corresponding license documents.

This Court notes that MLBAM has contended that its patent licenses contain "highly sensitive" information (6/23/21 Tr., at 61), but it is not clear to this Court that simply producing the patents underlying those licenses could place MLBAM at a competitive disadvantage.  If MLBAM believes, in good faith, that the very identity of the patents for which it has taken licenses constitutes sensitive business information, then it may, subject to later review, designate its identification of patents as Confidential, under the Protective Order that has been entered in this case.  (*See* Dkt. 222.)

**MLBAM's Motion To Compel Discovery
From Sportvision, and Sportvision's Countermotion
<u>To Strike MLBAM's Supplemental Invalidity Contentions</u>
(Dkt. 261)**

On August 6, 2020, this Court endorsed the parties' "Joint Stipulation and Order Regarding Extension of Deadlines," which set a deadline of September 3, 2020 for MLBAM to serve invalidity contentions pursuant to Local Patent Rule 7.  (*See* Dkt. 92.)  MLBAM met that deadline, but its invalidity contentions consisted of little more than a list of prior art.  (*See* Dkt. 106-1.)  Upon Sportvision's motion (*see* Dkt. 106), this Court, during a conference held with counsel on October 1, 2020 (*see* Dkt. 140 ("10/1/20 Tr.")), ruled that MLBAM's invalidity

contentions were inadequate under Local Patent Rule 7 and directed MLBAM to "supplement its invalidity contentions by specifying which claims of the patent-in-suit [were] allegedly rendered invalid by the identified prior art (singly or in combination with other prior art) and which claims [were] allegedly invalid for the additionally stated reasons" (Dkt. 110 (10/2/20 text order)).  This Court stated that it was not requiring any other supplementation at that time, but encouraged the parties to agree to a time frame for providing additional (element-by-element) specificity in both their Patent Rule 6 and Rule 7 disclosures.  (*See id.*)  According to the parties, pursuant to this Court's rulings, MLBAM served its amended invalidity contentions on October 13, 2020.  (*See* Dkt. 261, at 4.)

Approximately five months later, on February 17, 2021, this Court granted Sportvision's unopposed motion for leave to file a Second Amended Complaint (*see* Dkt. 199), which then became Sportvision's operative pleading in this case (Dkt. 200).  One month later, on March 19, 2021, MLBAM served Sportvision with its Third Set of Requests for Production, seeking documents related to four of Sportvision's products – the "FoxTrax hockey system," "1st & Ten first-down line," "NASCAR Pointers," and "MLB Virtual Ads" – all of which were apparently in existence prior to the filing date of the '530 Patent. (Dkt. 261-9 (Third Set of Requests for Production Nos. 142-147).)  In fact, according to Sportvision, these four products were "conceived, designed, developed, commercially deployed[,] and patented" between 1996 and 2000.[2]  (Dkt. 200 ¶ 63; *see also* First Amended Complaint (Dkt. 26) ¶ 63.)

In March and April 2021, Sportvision objected to MLBAM's document requests on relevance grounds, and, in May 2021, MLBAM responded by stating that it was its view that

---

[2] This Court notes that these four Sportvision products were also identified in the First Amended Complaint, which was filed in this action on April 27, 2018. (*See* Dkt. 26 ¶ 63.)

8

these products might qualify as prior art under 35 U.S.C. § 102 and, therefore, might substantively relate to the validity of the '530 Patent.  (*See generally* Letter to Griffin Mesmer, Esq., from Samuel Schoenburg, Esq., dated May 10, 2021 ("MLBAM 5/10/21 Ltr.") (Dkt. 261-1); Letter to Griffin Mesmer, Esq., from Samuel Schoenburg, Esq., dated May 21, 2021 ("MLBAM 5/21/21 Ltr.") (Dkt. 261-2).)  Notably, while MLBAM had identified the "FoxTrax hockey system" in its prior invalidity contentions, MLBAM had not specifically identified the other three Sportvision products ("1st & Ten first-down line," "NASCAR Pointers," and "MLB Virtual Ads") as prior art in either its original or amended invalidity contentions.  (*See* Dkt. 261, at 2.)  In May 2021, Sportvision agreed to produce responsive documents for the "FoxTrax hockey system," but refused to produce documents relating to the other three products.  (*See* Letter to Samuel Shoenburg, Esq., from Griffin Mesmer, Esq., dated May 28, 2021 (Dkt. 261-3), at 2.)

The Honorable Paul G, Gardephe, U.S.D.J., then held a *Markman* hearing in this action on May 27, 2021 and July 15, 2021.  (*See* Dkt. 228.)  According to the parties, soon after, on July 22, 2021, MLBAM supplemented its invalidity contentions to include all four of the Sportvision products noted above.  (*See* Dkt. 261, at 2.)  More particularly, MLBAM's supplemental invalidity contentions disclosed these prior-art systems and "identified the asserted claims" of the patent-in-suit that MLBAM believed to have been "anticipated or rendered obvious" by that prior art.  (*Id.*)  According to MLBAM, although it had not received any responsive documents from Sportvision concerning three of the four products (*i.e.*, "1st & Ten first-down line," "NASCAR Pointers," and "MLB Virtual Ads"), MLBAM nonetheless proceeded with serving its supplemental invalidity contentions in the hope that Sportvision would then "produce responsive documents" regarding those products.  (*Id.*)  Sportvision,

9

however, continued to resist such disclosure, and, as a result, MLBAM moved to compel Sportvision to produce documents responsive to its Requests Nos. 142 to 147, in its Third Set of Requests for Production. (*See id.*, at 1-3.) Sportvision, in turn, moved to strike MLBAM's supplemental invalidity contentions as untimely. (*See id.*, at 4-9.)

In support of its motion to compel, MLBAM argues that, as an initial matter, Sportvision "lack[s] authority for resisting [MLBAM's] discovery requests for relevant material – on [Sportvision's] own products – when MLBAM has explained their relevance to invalidity." (*Id.*, at 2.) MBLAM then states that its supplemental invalidity contentions were timely filed because (1) they were served two months before any depositions were scheduled and five months before the end of fact discovery; and (2) MLBAM had repeatedly explained to Sportvision, for months, why the four products in question were relevant to its invalidity case and why MLBAM needed to assess those products' "technical features to ascertain the extent to which they disclosed the subject matter of the asserted claims" in this case. (*See id.*) On this latter point, MLBAM emphasizes that, without having had access to non-public technical information that was solely within Sportvision's possession, MLBAM could not have known the technical details of those four products to determine, for certain, whether they would have invalidated any of the patent claims that Sportvision has asserted. (*See id.*) Lastly, MLBAM contends that Sportvision cannot demonstrate that it has been, or will be, prejudiced by responding to MLBAM's requests for production, where those requests center on Sportvision's own products, which Sportvision itself identified in its Second Amended Complaint. (*See id.*, at 3.)

In opposition to MLBAM's motion to compel and in support of its own motion to strike, Sportvision contends that MLBAM had no basis to delay serving supplemental invalidity contentions and that MLBAM has not provided "any explanation of the relevance or need for its

untimely allegations." (*Id.*, at 4.) Sportvision emphasizes that, although fact discovery was still open when MLBAM filed its supplemental invalidity contentions, that fact "does not give [MLBAM] permission to withhold disclosures and then spring them on [Sportvision] late in the case." (*Id.*, at 5.) Further, Sportvision argues that MLBAM has not "provided any good cause to add these well-known system[s] now" (Dkt. 261-4, at 2), and that "[a]llowing MLBAM to greatly expand discovery this late in the discovery process, without good cause, [would be] both prejudicial and unduly burdensome" (Dkt. 261, at 5).

Local Patent Rule 7 provides that "each party opposing a claim of patent infringement must serve," at a time set by the Court, any invalidity contentions. Those contentions "must identify each item of prior art that the party contends allegedly anticipates or renders obvious each asserted claim, and any other grounds of invalidity, including any under . . . 35 U.S.C. § 112." Further, Local Patent Rule 9 clarifies that "[t]he duty to supplement in Fed. R. Civ. P. 26(e) shall apply" to invalidity contentions. Rule 26(e)(1)(A) requires a party to "supplement or correct its disclosure" "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect."

Contrary to Sportvision's description of MLBAM's burden on these issues, the Local Patent Rules do not impose a "good cause" standard for the supplementation of invalidity contentions. *See Simo Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 354 F. Supp. 3d 508, 510 (S.D.N.Y. 2019). Nonetheless, "while [a party] need not show good cause to justify supplementation, [it] must still show that the supplementation was *timely*." *Id.* (emphasis in original). With respect to timeliness, "'[t]he duty to supplement arises when [a party] subsequently learns of information that was previously unknown or unavailable, and the new information renders the earlier [disclosure] incomplete or inaccurate.'" *Id.* (quoting *Lewis v.*

11

*FMC Corp.*, 786 F. Supp. 2d 690, 705 (W.D.N.Y. 2011)).  As explained in *Simo*, whether a party's supplemental invalidity contentions are "timely, then, depends on when [the party] learned the information that rendered the previously-filed invalidity contentions incomplete."  *Id.*

Here, while it is plain that MLBAM's March 2021 requests for production were made well before the fact discovery deadline in this case (then set for December 17, 2021), the timeliness of MLBAM's supplemental invalidity contentions presents a closer question.  As Sportvision rightly notes, just because fact discovery had not yet closed when MLBAM's supplemental invalidity contentions were served does not mean that the supplementation was "timely" under the Local Patent Rules.  Indeed, as the *Simo* court explained, "[a] supplemental disclosure is not timely simply because discovery remains open."  354 F. Supp. at 510.  Rather, the fact that discovery remained open at the time of the supplemental disclosure "speaks to prejudice, a separate question."  *Id.*  Considering the relevant chronology here, MLBAM has admitted that Sportvision's Second Amended Complaint, filed in February 2021, identified the four Sportvision products at issue (*see* Dkt. 200 ¶ 63), and, in fact, Sportvision's First Amended Complaint, filed in April 2018, identified those same products (*see* Dkt. 26 ¶ 63).  Yet, MLBAM did not serve its supplemental invalidity contentions listing the four Sportvision products as prior art until July 2021.  As Sportvision contends, this timing of events could lead to the inference that MLBAM unduly delayed in serving those supplemental contentions.

At the same time, however, MLBAM has given a reasonable explanation as to why it waited as long as it did to supplement its invalidity contentions.  MLBAM states that, although Sportvision identified, in one paragraph in its pleadings, the four Sportvision products that predated the patent-in-suit, MLBAM's mere knowledge "of the existence of these systems [did] not mean that MLBAM knew, or could have known, the technical details of those products to

12

ascertain whether they invalidate any of the 48 patent claims [Sportvision] ha[d] asserted."

(Dkt. 261, at 3.)  MLBAM further explains:

> that is why MLBAM sought information on [Sportvision's] other products in the first place.  That non-public, technical information is within [Sportvision's] sole control.  Because of [Sportvision's] continued refusal to produce relevant information, MLBAM could only supplement its contentions based on documents that derivatively refer to the technical aspects of the products[.] . . . MLBAM's belief that other Sportvision products may invalidate the asserted claims can only be confirmed or dispelled by information in [Sportvision's] possession.

(*Id.*)  Thus, it appears to be MLBAM's position that, even at the time when it supplemented its invalidity contentions to rely on the additional three Sportvision systems, it still could not confirm that those three systems, in fact, impacted the validity of the patent-in-suit.  This Court therefore understands that MLBAM supplemented its contentions despite this, with the supplementation meant to serve, at least, as a placeholder, and to preserve MLBAM's rights.

This is not the only case in which a defendant has argued that, despite diligent efforts, it was unable to obtain non-public documents bearing on the validity of a plaintiff's asserted patent, thus impacting its ability to challenge the patent's validity in a timely fashion.  In other such cases, courts have been willing to allow late amendments to the defendant's invalidity contentions, even after the close of fact discovery.  *See, e.g., Symantec Corp. v. Veeam Corp.*, No. 12-05443, 2013 WL 3490392, at *3 (N.D. Cal. July 11, 2013) (upon granting defendant's motion to amend its invalidity contentions shortly after the close of fact discovery, finding that defendant had been "sufficiently diligent in its search for material," especially where much of the delay had been caused by the plaintiff's refusal to produce the relevant documents); *see also, e.g., Uniloc 2017 LLC v. Google LLC,* No. 2:18-cv-00493-JRG-RSP, 2019 WL 6465318, *2-3 (E.D. Tex. Dec. 2, 2019) (granting leave to supplement invalidity contentions based on non-

public materials that were not produced to the accused infringer until after the deadline to file invalidity contentions had passed).

Although, in this case, in contrast with the defendants in *Symantec* and *Uniloc*, MLBAM ultimately chose to go ahead and serve its supplemental invalidity contentions without having received the documents that it *still* claims to need to assess its position, the reasoning of those decisions is nonetheless persuasive here. In this case, MLBAM put Sportvision on notice, in as early as March 2021 (when the Third Set of Requests for Production were served and long before the close of fact discovery), of MLBAM's need for Sportvision to produce non-public, technical documentation related to all four of the earlier Sportvision products, so that MLBAM could then determine whether to assert invalidity defenses based on those products' systems. (*See* Dkt. 261-9.) In fact, in a letter dated May 10, 2021, in which MLBAM's counsel summarized the results of the parties' meet-and-confer from five days earlier (which had apparently focused on the Third Set of Requests for Production), MLBAM's counsel reiterated that "[d]iscovery on these products, as issued in the[] RFPs, would allow MLBAM to confirm whether these systems indeed qualify as prior art under the statute and whether they will be used as part of MLBAM's invalidity defenses." (MLBAM 5/10/21 Ltr., at 4; *see also* MLBAM 5/21/21 Ltr., at 3 (MLBAM stating to Sportvision that "[d]iscovery on these systems is crucial to MLBAM's ability to develop invalidity defenses").)

Thus, there was no secret here that MLBAM was seeking information about the three Sportvision products, so as to confirm that those products should be referenced as part of MLBAM's invalidity contentions. There is also no question here that Sportvision refused to produce the documentation that MLBAM had duly requested in discovery, placing MLBAM in a bind, as the case moved forward. Having repeatedly tried to obtain the production that it

believed was necessary to flesh out its invalidity contentions and having been unable to obtain that production from Sportvision, MLBAM had a choice. It could either do what the defendants in *Symantec* and *Uniloc* did and wait to obtain the requested information before supplementing its invalidity contentions (taking the chance that its supplementation would then be considered so late as to be prejudicial), or, in an excess of caution and in an attempt to preserve its rights before the discovery period closed, it could do what it did – supplement its invalidity contentions even without having the underlying information in hand. Although MLBAM's decision to supplement when it did may raise a question as to whether, at the time of its supplementation, it had a good-faith basis for asserting the three Sportvision products as support for its invalidity contentions, its conduct certainly does not demonstrate a lack of diligence or a lack of notice to Sportvision, and, if anything, its supplementation was more "timely" than the amendments that were permitted in the cases cited above.

      Turning to the remaining issue of prejudice, this Court acknowledges that, if it were to grant MLBAM's motion to compel and deny Sportvision's countermotion to strike, those rulings would undoubtedly lead to the need for an extension of the discovery deadlines. Though the prolonging of discovery could, in certain circumstances, warrant a finding of prejudice, Sportvision has already filed a separate request for an extension of the fact discovery deadline in this case (discussed *infra*), to allow time for the resolution of several outstanding discovery disputes, not only with MLBAM, but also with non-parties. Moreover, because Sportvision owns the three products that are the subject of MLBAM's supplemental prior-art designations, any delay in the completion of discovery need not be great, as MLBAM need not rely on obtaining the information it seeks from non-parties. Finally, the fact that Sportvision was on notice in as early as March 2021 that MLBAM had an interest in potentially supplementing its

invalidity contentions to include those four products (as that is when MLBAM served its Third Set of Requests for Production and began to discuss with Sportvision the relevance of those requests in the context of MLBAM's invalidity defenses) militates against a finding of prejudice. *See generally Rovi Guides, Inc. v. Comcast Corp.*, No. 16cv9278 (JPO), 2017 WL 4876305, at *2 (S.D.N.Y. Oct. 27, 2017) (declining to strike as untimely invalidity contentions served one day before close of fact discovery where, *inter alia*, plaintiff was put on notice earlier in the case that defendant was asserting that the patents were invalid and plaintiff had not suffered prejudice from the timing of the supplemental disclosure). Ultimately, Sportvision has not come forward with a specific argument concerning prejudice that warrants the conclusion that MLBAM's supplemental invalidity contentions should be stricken or its document requests should be prohibited. Sportvision has also failed to make any specific showing as to why the discovery that MLBAM seeks would be unduly burdensome or disproportionate to the needs of the case.

For these reasons, MLBAM's motion to compel Sportvision to produce documents responsive to Requests Nos. 142 to 147 of MLBAM's Third Set of Requests for Production is granted, and Sportvision's motion to strike MLBAM's supplemental invalidity contentions is denied. The parties are directed to confer in good faith and to submit a joint proposal for the document production required by this ruling.

**The Parties' Joint Letter Motion Regarding**
**<u>*In Camera* Review of Clawed Back Document</u>**
**(Dkts. 275, 276)**

On November 29, 2021, the parties filed a joint letter motion regarding a particular document (an email between Sportvision and third-party ESPN) that Sportvision had reportedly produced in discovery inadvertently, and that it sought to "claw back" as protected by the attorney-client and common-interest privilege. (Dkt. 275.) Rather than return the document as

requested and destroy any copies, MLBAM moved for this Court to conduct an *in camera* review of the document to determine the propriety of Sportvision's privilege claim. MLBAM further requested that this Court compel Sportvision to reconvene the deposition of Rick Cavallaro, Sportvision's former Chief Scientist, to allow questioning related to that document, and that the Court award MLBAM both the attorneys' fees and costs that it incurred in connection with its motion and those fees and costs that would be incurred in connection with the reconvened deposition. (*See id.*, at 1.) Sportvision, for its part, opposed MLBAM's request for *in camera* review, and requested that MLBAM be ordered to retrieve and destroy all copies of the document and the information contained therein, and to cease any further use of that information. (*See id.*, at 8.)

This Court having considered the parties' respective positions on this matter, Sportvision is directed to submit a copy of the document to this Court for *in camera* review, and, pending a ruling as to privilege, MLBAM is directed to make no further use (and to make no further disclosure) of the document. After it reviews the document, this Court will determine whether the deposition of Mr. Cavallaro should be reopened, and whether any fees or costs should be awarded in connection with this dispute. Sportvision's counsel is directed to contact the Chambers of the undersigned for instructions as to how to submit the document for *in camera* review.

### Sportvision's Request To Extend the Fact Discovery Deadline
### (Dkt. 279)

On December 16, 2021, Sportvision filed a letter motion, requesting that the deadline for the completion of fact discovery (which was then set for December 17, 2021 (*see* Dkt. 257, at 6)), as well as the deadline for the parties' disclosure of expert reports (which was then set for January 18, 2022) be extended until all outstanding discovery disputes – involving both the

parties and certain non-parties – were resolved. (*See* Dkt. 279, at 4 (requesting, *inter alia*, that the Court "permit a limited fact discovery period that would focus on these document and deposition discovery issues (per the Court's resolution of such issues), and [] reset expert deadlines for 30 days after the close of the limited fact discovery period).) The next day, MLBAM filed a letter in response, asking this Court to maintain the original fact-discovery deadline of December 17, 2021. (*See* Dkt. 280, at 1 (stating that "fact discovery should close today, December 17, . . . and the parties should move on to expert discovery").)

In light of its rulings herein, this Court finds that a modification of the discovery schedule is warranted, as follows:

(1) All fact discovery shall be completed no later than February 11, 2022.

(2) Expert discovery shall be completed on the following schedule:

    (a) Each party bearing the affirmative burden of proof on a claim or defense shall serve its expert report(s) with respect to that claim or defense no later than March 14, 2022.

    (b) Rebuttal expert reports shall be served no later than April 13, 2022.

    (c) All expert discovery shall be completed no later than May 16, 2022.

If any party believes that a further extension of these deadlines is needed, it may raise that issue during the conference that this Court will schedule to address the outstanding discovery disputes involving non-parties (as raised in Dkts. 248, 249, and 270). Counsel for Sportvision is directed to contact counsel for MLBAM and counsel for the relevant non-parties to identify dates when all counsel can be available for a telephone conference, and to call the Chambers of the undersigned for the purpose of scheduling that conference.

## Conclusion

For the reasons stated above, it is hereby ORDERED that:

(1) Sportvision's letter motion to compel (Dkt. 260) is granted only to the extent that, no later than January 17, 2022, MLBAM shall identify to Sportvision the patents that are the subject of the 12 patent licenses MLBAM identified in its August 31, 2021 letter to Sportvision; Sportvision's motion is otherwise denied without prejudice. This resolves not only Dkt. 260, but also Dkts. 226 and 227.

(2) MLBAM's letter motion to compel (Dkt. 261) is granted and Sportvision's countermotion to strike (*id.*) is denied. The parties are directed to propose a schedule for the document production required by this ruling.

(3) MLBAM's letter motion seeking *in camera* review of an email between Sportvision and ESPN (Dkts. 275, 276) is granted, to the extent that this Court will conduct the requested review. Sportvision's counsel is directed to contact the Chambers of the undersigned for instructions as to how to submit the document for *in camera* review. Pending a ruling by this Court on the issue of privilege, MLBAM is directed to make no further use or disclosure of the document in question.

(4) Plaintiff's letter motion to modify the discovery schedule (Dkt. 279) is granted to the extent set out herein. If any party believes that a further extension of discovery deadlines is warranted, it may raise that issue during the conference that this Court will schedule to address the outstanding discovery disputes involving non-parties (*see* below).

(5) This Court reserves decision on Dkts. 248, 249, and 270, pending a conference with counsel for the parties and non-parties involved. Counsel for Sportvision is directed to confer with other counsel regarding their availability and to contact the Chambers of the undersigned to schedule that conference.

In light of the rulings herein, the Clerk of Court is directed to close Dkts. 226, 227, 260, 261, 275, 276, and 279 on the Docket of this action.

Dated: New York, New York
January 10, 2022

SO ORDERED

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

All counsel (via ECF)