UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SPORTVISION, INC. et al.,

                      Plaintiffs,                   **18-CV-03025 (PGG) (VF)**

                -against-                        **ORDER**

MLB ADVANCED MEDIA, L.P.,

                      Defendant.

------------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge**

On January 14, 2022, Plaintiffs Sportvision, Inc. and Sportsmedia Technology Corporation (collectively, "Sportvision") filed a letter motion to compel, requesting that the Court order Defendant MLB Advanced Media, L.P. ("MLBAM") to produce certain documents missing from its production, respond to certain interrogatories and requests for admission ("RFAs"), and make available additional corporate representatives for certain deposition topics. See ECF No. 286. MLBAM opposed the motion on January 31, 2022. See ECF No. 298. The motion was fully briefed on February 11, 2022. See ECF No. 310.

On July 11, 2022, the Court held oral argument on Sportvision's requests to reopen MLBAM's Rule 30(b)(6) witness depositions and compel the production of additional financial documents. See ECF No. 372 (Transcript ("Tr.")).[1] For the reasons discussed below, Sportvision's request for additional financial documents is **GRANTED in part** and its request to reopen Rule 30(b)(6) witness depositions is **DENIED**.

---

[1] As discussed at the July 11th oral argument, although Sportvision's motion to compel raised several other deficiencies in MLBAM's document production, those other purported deficiencies are not addressed here. Those discovery disputes will be addressed in a separate order following oral argument on those issues.

1

### A. Legal Standard

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The party moving to compel the disclosure of information bears the initial burden of demonstrating that the information sought is relevant and proportional. See Johnson v. J. Walter Thompson U.S.A., LLC, No. 16-CV-1805 (JPO) (JCF), 2017 WL 3055098, at *2-3 (S.D.N.Y. July 18, 2017). Once the moving party has shown that the information sought is relevant, the burden shifts to the opposing party to justify curtailing discovery. See id.; see also Rosas v. Alice's Tea Cup, LLC, 127 F. Supp. 3d 4, 8 (S.D.N.Y. 2015); Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York, 284 F.R.D. 132, 135 (S.D.N.Y. 2012). "In order to justify withholding relevant information, the party resisting discovery must show 'good cause,' the standard for issuance of a protective order under Rule 26(c)." Johnson, 2017 WL 3055098, at *3; cf. State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc., 254 F.R.D. 227, 233 n.4 (E.D. Pa. 2008) (treating motion to compel and motion for protective order as "mirror-image[s]").

### B. Sportvision's Request for Additional Financial Information from MLBAM

In its motion to compel, Sportvision seeks: (1) complete financial documents (including revenue, expenses, profits, and forecasts or projections) for the accused products for 2015 to

2

2021;[2] and (2) MLBAM's consolidated income statements for 2015 to 2021.[3] See ECF No. 286 at 18-19. The accused products for which Sportvision seeks the financial documents are: PITCHcast, At Bat and its successor product the MLB App, At Bat VR, MLBAM's umpire evaluation product, and MLB.com's pitch visualizations (identified as the video replay and live video on MLB.com, including in the MLB.tv section of MLB.com).[4] See ECF No. 227 at 6-8; Tr. at 26-27; see also ECF No. 239 ("6/23/21 Tr.") at 8-10, 14-15, 18-21, 27-30.

In a patent-infringement case, such as this one, 35 U.S.C. § 284 provides that a court shall award "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C.A. § 284; see also Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (discussing factors relevant to the calculation of a reasonable royalty). To be entitled to damages beyond a reasonable royalty, a plaintiff "must prove his actual damages, that is, his entitlement to lost profits," by establishing that "but for"

---

[2] At oral argument, Sportvision claimed that MLBAM had "represented," during a June 23, 2021 conference with the Honorable Debra C. Freeman, that MLBAM would produce the requested financial information for the accused products. Tr. at 37. MLBAM disputed that it had ever agreed to produce all the financial information requested by Sportvision. Tr. at 37-38. MLBAM is correct. The Court reviewed the transcript of the June 23 conference and, contrary to Sportvision's representation, was unable to find any statement by MLBAM where it agreed to produce the requested financial information.

[3] Sportvision also sought MLBAM's audited financial statements for 2015 to 2021. See ECF No. 286 at 19. That request is now moot as the parties at oral argument confirmed that MLBAM had produced the audited financial statements. See Tr. at 41-42. Likewise, to the extent that Sportvision in its letter motion sought additional witness testimony and supplemental interrogatory responses on topics related to MLBAM's financials, see ECF No. 286 at 19, Sportvision indicated at oral argument that it would accept the requested financial information in lieu of witness testimony, and Sportvision did not continue to press its request for supplemental interrogatory responses. See Tr. 40-41.

[4] The definition of the accused products used here is that which the parties agreed to during the June 23 conference before Judge Freeman. See ECF No. 239.

Case 1:18-cv-03025-PGG-VF   Document 376   Filed 07/19/22   Page 4 of 11

the infringement, he would have made greater sales, charged higher prices, or incurred lower expenses. Water Technologies Corp. v. Calco, Ltd., 850 F.2d 660, 671 (Fed. Cir. 1988); see also State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1577 (Fed. Cir. 1989) (discussing proof necessary to establish lost profits).

Accordingly, in a patent infringement case, "documents to assist in proving the amount of a reasonable royalty and/or lost profits are discoverable." Chembio Diagnostic Sys., Inc. v. Saliva Diagnostic Sys., Inc., 236 F.R.D. 129, 139 (E.D.N.Y. 2006) (concluding that party was entitled to discovery showing "sales and costs" of opposing party because such documents were relevant to proving damages). Moreover, the type of financial information Sportvision seeks here, relating to the revenue, expenses, and profits for the accused products, is similar to the type of financial information courts have concluded is discoverable in patent infringement cases. See id.; Infinity Headware & Apparel v. Jay Franco & Sons, No. 15-CV-1259 (JPO) (RLE), 2015 WL 6444655, at *3-4 (S.D.N.Y. Oct. 23, 2015) (requiring defendants to supplement discovery responses and produce, or verify that they do not have, documents showing "unit sales, gross and net revenue, costs, and gross and net profits," as well as "inventory reports, sales forecasts, and budget forecasts"); Elbex Video, Ltd. v. Axis Commc'ns, Inc., No. 5-CV-3345 (CBA), 2009 WL 10663719, at *3 (E.D.N.Y. Mar. 31, 2009) (finding that any profit and loss statements relating to the accused products are relevant).

As to the first category of financial documents sought—showing the revenue, expenses, profits, and forecasts or projections for 2015 to 2021 for the accused products—the information is relevant to Sportvision's calculation of damages in this case. Further, MLBAM has not established good cause for curtailing discovery of this information. MLBAM contends that it has produced license agreements with its broadcasters for the accused products during the relevant

4

time period. Tr. at 19-26. According to MLBAM, those license agreements would allow Sportvision to "determine the revenue that is directly related to the" accused "technology," which MLBAM claims is a "strike zone" graphic. Tr. at 19-21. As an initial matter, the scope of the accused technology—that is, the relevant accused products—was already agreed to by the parties during a prior conference before Judge Freeman. See ECF No. 239. As the transcript from that conference establishes, the accused products, for purposes of discovery, are broader than merely a strike zone graphic. Tr. at 26-27. In any event, even if, as MLBAM contends (see Tr. at 20), the license agreements are sufficient to determine revenue for a damages calculation, that is not the only financial information pertinent to that calculation. And, to the extent MLBAM argues that some of the accused products make little or no use of the accused technology (see Tr. at 34-35), that argument is more appropriately raised to a challenge Sportvision's damages calculation, if Sportvision ultimately succeeds in proving liability. Accordingly, as it relates to the first category of financial information, Sportvision's motion to compel is granted.

Sportvision also seeks MLBAM's consolidated income statements for 2015 to 2021. See ECF No. 286 at 19. As to that category of financial documents, Sportvision has not met its burden of establishing that the consolidated income statements are relevant to its damages calculation and proportional to the needs of the case. Sportvision already has MLBAM's audited financial statements for 2015 to 2021—information that would provide a picture of the financial status of MLBAM's entire business. At oral argument, Sportvision claimed that the consolidated income statements would "show how the various divisions of MLBAM and their products flow into one another and will help to understand the stream of revenue that MLBAM is receiving." Tr. at 42-44. But MLBAM's business, as Sportvision acknowledges (see Tr. at 43), is far broader than the accused products, and the information it seeks relates to the stream of revenue for all of

MLBAM's divisions. Particularly in light of the other financial information it has or will be receiving, Sportvision has not shown that its request for this kind of financial information is proportional to the needs of the case. As such, Sportvision's request to compel the production of MLBAM's consolidated income statements for 2015 to 2021 is denied.

### C. Sportvision's Request for Additional 30(b)(6) Witness Testimony

In its letter motion, Sportvision sought to reopen Rule 30(b)(6) depositions, asking for an additional five hours of testimony on 17 topics. ECF No. 286 at 6. As MLBAM asserts, Sportvision has not adequately explained why it waited until nearly two weeks before the then-close of fact discovery,[5] and after all but one of the Rule 30(b)(6) depositions had been taken, to raise its complaints with MLBAM. See ECF No. 298 at 5. Nor has Sportvision shown that MLBAM failed to adequately prepare its Rule 30(b)(6) witnesses or interfered with its questioning of MLBAM's corporate representatives.

As to two Rule 30(b)(6) deposition topics, Sportvision claims that it "received no corporate testimony from MLBAM." ECF No. 286 at 5. Topic 19 concerns the "use of the PITCHf/x System and/or Sportvision Information and Property" by MLBAM, and it identifies 18 subtopics relating to issues such as "the timing of when the pitch data is tracked," "tools that evaluate the accuracy and consistency of the data generated by [the] tracking systems," and "the design, algorithms, user interface, instructions, and explanations of the umpire evaluation system." ECF No. 286-31 at 14-15. Topic 20 covers the use of the "PITCHf/x System and/or Sportvision Information and Property . . . for any purpose related to pitch graphics that display or illustrate data captured by the Accused Products." Id. at 15-16. MLBAM raised objections to

---

[5] Fact discovery was to close on December 17, 2021. See ECF Nos. 257, 279. On January 10, 2022, Judge Freeman extended the deadline for the close of fact discovery until February 11, 2022. ECF No. 282 at 17-18.

both topics (see ECF No. 298 at 8) and the parties, as indicated at oral argument (see Tr. at 52), agreed to significantly narrow Topics 19 and 20. See ECF No. 286-8 at 6. As narrowed, Topics 19 and 20 cover MLBAM's "use of the graphical aspects of the PITCHf/x System in the development or operation of the Accused Products . . . ." Id. Those deposition topics appear to be encompassed by other deposition topics for which MLBAM provided corporate representatives—namely, Topics 6, 12, 13, 22, 23, and 24. For instance, Topic 6 covers "the use of any Pitchf/x system and/or Sportvision Information and Property by MLBAM . . ." Id. at 4. Topic 22 covers the "use of the PITCHf/x System and/or Sportvision IP" in "designing, setting up, and operating the audio and feeds" of the accused products. Id. at 6. Topics 23 and 24 address "the use of PITCHf/x System and/or Sportvision IP" in the "development, design, and/or operation of the Button Box," and in the "deployment of the Accused Products." Id. at 7. At bottom, it appears that all of these topics relate to the use or operation of the accused products. It is thus not apparent why Sportvision could not have obtained the information it sought under Topics 19 and 20, related to the graphical aspects of the accused products, from the witnesses designated for these other related topics. See Tr. at 55.

At oral argument, Sportvision indicated that if it received certain emails of MLBAM employees that "show specifically the use of the graphical aspects" for the "pitch effect system," those emails could effectively substitute for Rule 30(b)(6) witness testimony for Topics 19 and 20. See Tr. at 54-55; see also ECF No. 286 at 23 (Item no. 3). Specifically, Sportvision points to two email threads produced by MLBAM that appear to reference other emails, not included in the thread, that contain attachments. See ECF Nos. 286-23 (Exhibit 14), 286-24 (Exhibit 15). Those other emails and attachments were not part of MLBAM's document production. See Tr. at 59-60.

7

In the email thread designated as Exhibit 15, the second-to-last email in the thread—sent by Cory Schwartz to Kevin Prince on June 17, 2016, at 11:14 a.m.—states "I'll find everything else I have on this and send you as many specifics as possible." See ECF No. 286-24 at 2. The last email in the thread is a response from Prince to Schwartz that same day at "10:19 a.m. CDT," stating "I'll share a doc I've been working on with you as well." See ECF No. 286-24 at 2. The subsequent email from Prince was not a part of MLBAM's production. MLBAM has represented that it has searched its production for the subsequent email referenced in the email thread in Exhibit 15 and it does not have in its collection "later email[s]" that follow Prince's June 17th email. See, e.g., Tr. at 68-71. Thus, if Prince sent a subsequent email where he shared attachments or documents, that subsequent email was not sent as a part of the email thread in Exhibit 15.

In the email thread designated as Exhibit 14, Sandy Zinn sent an email to Kevin Prince and Cory Schwartz on November 23, 2015, at 10:43 a.m. See ECF No. 286-23 at 4. In that email, Zinn says, "Let me know if you have any questions about the attachments, or otherwise." Id. Prince responded to Zinn that same day at 11:48 a.m., stating "I have just shared a document I am creating that [sic] get the conversation going." Id. at 3-4. The attachment referenced in Zinn's email was not part of the Exhibit 14 email thread produced by MLBAM. Nor was the Zinn email, standing alone, in MLBAM's document collection or production; the Zinn email was collected and produced by MLBAM only as a part of the email thread in Exhibit 14. Tr. at 59-64, 67-68. Likewise, the subsequent email from Prince where he purportedly "shared a document" that he was creating was not part of the email thread in Exhibit 14. MLBAM has represented that it searched for the subsequent Prince email in its production but was unable to identify it. See Tr. at 64, 67-68.

8

MLBAM argues that Sportvision waited until just before the close of fact discovery to ask MLBAM to "conduct an ancillary investigation" in an attempt to collect the emails with attachments referenced in the email threads at Exhibits 14 and 15, even though the email threads were produced by MLBAM "six months prior." Tr. at 57-58. According to MLBAM, Sportvision deposed Kevin Prince, Sandy Zinn, and Corey Schwartz—the senders and/or recipients of the pertinent emails in the email threads—and Sportvision asked only one of those individuals, Prince, about the emails; Sportvision did not question the two other witnesses about the missing emails.[6] Tr. at 58-60, 78. Lastly, MLBAM contends that it "produced all iterations of these emails that were collected based on the parties' agreed search terms," and thus the missing emails referencing attachments were not collected by MLBAM because those emails, standing alone, did not hit upon the parties agreed-upon search terms. Tr. at 58; see also id. at 62-68, 80-81. As such, Sportvision's request would require MLBAM to conduct, at this late stage, an entirely new search for documents in an attempt to find the missing emails and attachments. Tr. at 68-69, 77, 82.

As it relates to the missing email referenced in Exhibit 15, to locate the Prince email that Sportvision seeks where Prince "share[d] a doc," MLBAM would have to conduct an entirely new document collection with different search terms in the hopes of locating the subsequent Prince email with attachment. Moreover, because there is no indication in the current email thread in Exhibit 15 as to when Prince sent the separate email or with what subject line, MLBAM could not limit its new search of documents by time, date, or subject line. As MLBAM points out, it would require MLBAM to "try to guess" which later email between Prince and

---

[6] Prince was asked about the email but could not recall it. See Tr. at 64, 71.

9

Schwartz, who communicated frequently on a daily basis, could be the one referenced in Exhibit 15. See Tr. at 71, 73.

The same is true of the Prince email referenced in Exhibit 14, where Prince tells Zinn that he "just shared a document." See ECF No. 286-23 at 3. Here, too, because the email is not a part of the produced email thread and there is no indication of when Prince sent the separate email or with what subject line, MLBAM would have to conduct an entirely new search and engage in conjecture in an attempt to locate the separate Prince email that was referenced in Exhibit 14. See Tr. at 71, 73. Given that Sportvision unreasonably delayed in raising this request for the missing emails with MLBAM and also delayed in raising its concerns with MLBAM's Rule 30(b)(6) depositions, MLBAM should not be forced to incur the burden or cost, at this late stage, of conducting an entirely new document collection and production for these two emails. See Wright v. New Moda, L.L.C., No. 17-CV-9737 (JGK) (SN), 2019 WL 2071158, at *4 (S.D.N.Y. May 10, 2019) (denying motion to compel defendant to produce additional documents where defendant had produced the documents in its possession and "assert[ed] that it does not possess any other responsive documents"); Telecom Asset Mgmt., LLC v. Cellco P'ship, No. 15-CV-2786 (SHS) (RLE), 2016 WL 796858, at *3 (S.D.N.Y. Feb. 24, 2016) (denying request to compel defendant to "conduct searches pursuant to new search terms" because plaintiff has not "provided a sufficient basis to compel" and "discovery was set to close").

However, the missing Zinn email with attachment referenced in Exhibit 14 ("Let me know if you have questions about the attachments, or otherwise") has been identified by date, subject line, and the name of the sender and recipients. See ECF No. 286-23 at 4. Indeed, the email thread in Exhibit 14 makes clear that the particular email Sportvision is seeking was sent by Sandy Zinn to Cory Schwartz and Kevin Prince on November 23, 2015, at 10:43 a.m. with

the subject line, "RE: Another question – Pitch-f/x for broadcast." <u>See</u> ECF No. 286-23 at 4. Unlike the two other Prince emails already discussed, locating this one email from Zinn would not require MLBAM to engage in a fishing expedition or any guesswork. Tr. at 71, 73-74, 81-82. MLBAM has the date and time of the specific email, the sender and recipients' names, and the subject line of the email. Although MLBAM contends that finding this email would require it to conduct a new search for documents (<u>see, e.g.</u>, Tr. at 82), the search is discrete and does not appear to the Court to be particularly onerous given that MLBAM can limit the search to a specific date, time, subject line, and has the names of the three potential custodians. MLBAM is thus directed to look for, collect, and produce the specific Zinn email referenced in Exhibit 14.

## CONCLUSION

Sportvision's request for additional financial information is **GRANTED in part** and its request to reopen Rule 30(b)(6) witness depositions is **DENIED**. MLBAM is directed to produce complete financial documents (including revenue, expenses, profits, and forecasts or projections) related to the accused products from 2015 until the present. Additionally, MLBAM is directed to search for the one missing Zinn email with attachment from November 23, 2015, referenced in Exhibit 14.

**SO ORDERED.**

DATED:   New York, New York
         July 19, 2022

_____
VALERIE FIGUEREDO
United States Magistrate Judge