UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SPORTVISION, INC. and SPORTSMEDIA
TECHNOLOGY CORPORATION,

                              Plaintiffs,                    **ORDER**

                    - against -                    18 Civ. 3025 (PGG) (VF)

MLB ADVANCED MEDIA, L.P.,

                              Defendant.

PAUL G. GARDEPHE, U.S.D.J.:

              Defendant MLB Advanced Media, L.P. ("MLBAM"), moved for sanctions

against Plaintiffs Sportvision, Inc. ("Sportvision") and SportsMEDIA Technology Corporation

("SMT"), pursuant to Fed. R. Civ. P. 11.  (Def. Br. (Dkt. No. 320-1))  This Court referred

Defendant's motion to Magistrate Judge Valerie Figueredo for a Report and Recommendation

("R&R").  (See Dkt. No. 343)  On December 5, 2022, Judge Figueredo issued an R&R

recommending that the Defendant's motion be denied.  (See R&R (Dkt. No. 425))

              For the reasons stated below, this Court will adopt the R&R's recommendation

and Defendant's motion for sanctions will be denied without prejudice.

**BACKGROUND**

I.      **THE R&R'S FACTUAL STATEMENT**[1]

              Sportvision creates "innovative graphic enhancements of sports objects and

graphic visualizations of sports elements" and SMT develops "real-time on-screen graphics,

---

[1]  Because the parties have not objected to Judge Figueredo's factual statement, this Court adopts
it in full.  See Silverman v. 3D Total Solutions, Inc. et al., 2020 WL 1285049, at *1 n.1
(S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization
of the background facts[,] . . . the Court adopts the R&R's 'Background' section and takes the

tickers, clock-and-score, virtual insertions[,] and social media integration for live televised sport and entertainment events."  (R&R (Dkt. No. 425) at 1)[2]  SMT acquired Sportvision on October 4, 2016.  (Id.)  MLBAM is a limited partnership of Major League Baseball ("MLB") club owners, which "manages and directs MLB's digital properties, including the website for all thirty MLB teams."  (SAC (Dkt. No. 200) ¶¶ 54-55)

Sportvision developed "PITCHf/x," a "'sophisticated camera-based pitch tracking system that could track detailed information along the entire trajectory of a pitch, i.e., from the pitchers' release point through the catchers' mitt.'"  (R&R (Dkt. No. 425) at 1-2 (quoting SAC (Dkt. No. 200) ¶ 96)  On February 7, 2006, MLBAM and Sportvision entered into a joint venture – known as the "Endeavor" – to install PITCHf/x at MLB stadiums.  The parties' agreement is set forth in a six-year contract (the "Agreement") which provides that the Endeavor has

> four primary objectives:  (1) to design, assemble, install league-wide, and operate the PITCHf/x system to capture data on pitches at MLB games; (2) to provide the PITCHf/x system data to MLB-associated entities at no charge; (3) to generate revenue by selling the PITCHf/x system data rendering services to MLB broadcasters; and (4) to generate revenue by selling the PITCHf/x system data to data subscribers.  The parties' business arrangement required MLBAM to pay all expenses associated with achieving the first objective (i.e., the installation, operation, maintenance, and use of the pitch tracking system in all MLB stadiums), to obtain permission to perform the second objective, and to share in the revenue generated by the third and fourth objectives.  For its part, Sportvision was required to supply the patents, intellectual property, and expertise needed to perform the first objective, in exchange for a share in the revenue generated by the third and fourth objectives.

(Id. at 2-3 (citing SAC (Dkt. No. 200) ¶¶ 9-10, 107-109, 111-112, 121-122))

---

facts characterized therein as true."); Hafford v. Aetna Life Ins. Co., 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts them in full.").

[2]  The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

Sportvision and MLBAM have amended the Agreement multiple times, including a fourth and final amendment signed on January 4, 2016.  (<u>Id.</u> at 3-4)

Section 12.1 of the fourth amendment governs the "Term of the Agreement" and future extensions of the Agreement:

> This Agreement will be effective on the Effective Date and will remain in force until December 31, 2019, unless otherwise terminated as provided herein (the "Term").  Within six (6) months prior to the end of the Term, the Parties shall enter into good faith negotiations regarding the renewal of this Agreement and the terms of such renewal; provided, that whether or not this Agreement is renewed following the end of the Term, (i) MLBAM shall permit Sportvision to render all services to ESPN under Sportvision's current agreement with ESPN through the expiration thereof; and (ii) the Parties agree to negotiate in good faith to continue the commercial exploitation of PITCHf/x Derivative Data beyond the 2016 MLB season, but absent such a continuation Sportvision's obligations with respect to PITCHf/x will cease and MLBAM's obligations with respect to payment for the PITCHf/x System set forth in Section 5.6 will likewise cease.

(<u>Id.</u> at 4 (quoting Dkt. No. 200-6 at 3-4 and citing SAC (Dkt. No. 200) ¶ 138))

SMT – having acquired Sportvision – contacted MLBAM in 2016 to negotiate the financial terms for MLBAM's continued use of PITCHf/x for the 2017 baseball season.  In December 2016, MLBAM informed SMT that it would no longer use PITCHf/x.  (<u>Id.</u>)  MLBAM "did 'not perform any of its PITCHf/x System obligations under the Endeavor [Agreement] for the entirety of the 2017 MLB Season.'"  (<u>Id.</u> (quoting SAC (Dkt. No. 200) ¶¶ 30, 174, 178))

## II.   <u>PROCEDURAL HISTORY</u>

The Complaint was filed on April 5, 2018 (Dkt. No. 1), and the Amended Complaint was filed on April 27, 2018.  (Dkt. No. 26)  MLBAM moved to dismiss the Amended Complaint and to compel arbitration in August 2018.  (Dkt. No. 42)  This Court denied MLBAM's motion on April 23, 2020, concluding that Plaintiffs' breach of contract claims do "not fall within the scope of the [Agreement's] arbitration provision," because they "are

premised on Defendant's alleged abandonment of the contract in toto" rather than the "operation

of the Endeavor."  (Apr. 23, 2020 Order (Dkt. No. 70) at 21-23)

      Plaintiffs filed the SAC on February 19, 2021.  (SAC (Dkt. No. 200))  Count IV

of the SAC concerns MLBAM's alleged breach of its "operational obligations" under the

Agreement.  According to Plaintiffs, MLBAM refused to

> (1) fund the 2017 Capital Equipment Budget; (2) hire the Equipment Operators
> for the 2017 season; (3) provide Sportvision access to all of the MLB stadiums
> and facilities; (4) provide contextual game data and the means to conflate that
> data with the PITCHf/x data (§3.5); (5) host the PITCHf/x Master Database with
> current pitch tracking data (§3.6); (6) provide Sportvision with undisturbed, real-
> time electronic access to the PITCHf/x Master Database (§3.6); (7) pay all Total
> Expenses for the operation of the PITCHf/x System on an annual basis (§5.3); (8)
> work in good faith to exploit all reasonable business opportunities for selling the
> PITCHf/x System Data (§4.1); and (9) perform all obligations under the Endeavor
> Contract in a timely, professional, competent, and workmanlike manner (§9.3).

(Id. ¶ 296)

      On March 4, 2022, Defendant MLBAM moved for an award of sanctions against

Plaintiffs, pursuant to Fed. R. Civ. P. 11.  (Def. Br. (Dkt. No. 320))  On April 27, 2022, this

Court referred Defendant's motion to Judge Figueredo for an R&R.  (Dkt. No. 343)  On May 13,

2022, Plaintiffs filed an opposition to Defendant's motion, and requested that this Court award

Plaintiffs their expenses and attorney's fees related to Defendant's motion.  (Pltf. Opp. (Dkt. No.

355) at 24)

      On December 5, 2022, Judge Figueredo issued a twenty-page R&R

recommending that Defendant's motion for sanctions be denied without prejudice, and that

Plaintiff's request for an award of costs and attorneys' fees be denied.  (R&R (Dkt. No. 425) at

19-20)

## DISCUSSION

### I.   LEGAL STANDARDS

#### A.   Review of a Magistrate Judge's Report and Recommendation

28 U.S.C. § 636(b)(1) provides that, "[w]ithin fourteen days after being served with a copy, any party may serve and file written objections to [a magistrate judge's] proposed findings and recommendations . . . ."  28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.").

In her R&R, Judge Figueredo informs the parties that they

> have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. . . . A party may respond to any objections within 14 days after being served.  Any objections and responses shall be filed with the Clerk of the Court.  Any request for an extension of time to file objections or responses must be directed to the Honorable Paul G. Gardephe. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.

(R&R (Dkt No. 425) at 20 (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), and 72; Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010)))

No party has objected to Judge Figueredo's R&R.

In reviewing an R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1). Where a timely objection has been made to a magistrate judge's R&R, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  Id.

Where, as here, no party filed objections to the R&R – despite clear warning that a failure to file objections would result in a waiver of judicial review (see R&R (Dkt. No. 108) at 14) – judicial review has been waived.  See DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) ("[A] party generally waives judicial review of an issue when he or she fails to make timely objection to a magistrate judge's report, as long as all parties receive clear notice of the consequences of their failure to object.") (citing Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)); see also McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983) ("When a party fails to object timely to a magistrate's recommended decision, it waives any right to further judicial review of that decision.").

This rule is non-jurisdictional, however, and because "its violation may be excused in the interests of justice," DeLeon, 234 F.3d at 86 (citing Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993)), this Court has considered whether there is any "'clear error on the face of the record'" that precludes acceptance of the magistrate judge's recommendation.  Wingate v. Bloomberg, 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee note) (citing Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) ("To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record.")).

B.   **Rule 11 Sanctions**

"Rule 11 permits a court to impose sanctions upon attorneys, law firms, or parties for making or causing to be made certain improper representations to the court."  Salovaara v. Eckert, 222 F.3d 19, 32 (2d Cir. 2000).  "[I]n assessing a claim for Rule 11 sanctions, courts apply a standard of '"objective unreasonableness."'"  Pentagen Techs. Int'l Ltd. v. United States,

172 F. Supp. 2d 464, 471 (S.D.N.Y. 2001) (quoting Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96 (2d Cir. 1997); United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 948 F.2d 1338, 1345-46 (2d Cir. 1991)), aff'd, 63 F. App'x. 548 (2d Cir. 2003).  Where Rule 11 sanctions are sought based on an argument that a claim in a complaint is unfounded, "[s]anctions should be imposed only 'where it is patently clear that a claim has absolutely no chance of success.'"  See Abdelhamid v. Altria Grp., Inc., 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007) (quoting Caisse Nationale de Credit Agricole-CNCA, New York Branch v. Valcorp, Inc., 28 F.3d 259, 264 (2d Cir. 1994)).

"The district court has broad discretion in determining whether to grant Rule 11 sanctions."  Pentagen Techs., 172 F. Supp. 2d at 470.  In the Second Circuit,

> "[a] pleading, motion or other paper violates Rule 11 either when it 'has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification[,] or reversal of existing law."

Kropelnicki v. Siegel, 290 F.3d 118, 131 (2d Cir. 2002) (emphasis omitted) (quoting W.K. Webster & Co. v. Am. President Lines, Ltd., 32 F.3d 665, 670 (2d Cir. 1994)).

"[A]t the very least, [counsel must] . . .  have a basis for a good faith belief that the papers on their face appear to be warranted by the facts asserted and the legal arguments made, and are not interposed for any improper purpose."  Long v. Quantex Res., Inc., 108 F.R.D. 416, 417 (S.D.N.Y. 1985), aff'd, 888 F.2d 1376 (2d Cir. 1989).  A court may also impose sanctions on a represented party where "the party had actual knowledge that filing the paper constituted wrongful conduct, e.g., the paper made false statements or was filed for an improper purpose."  Calloway v. Marvel Ent. Grp., 854 F.2d 1452, 1474 (2d Cir. 1988), rev'd on other grounds sub nom. Pavelic & LeFlore v. Marvel Ent. Grp., 493 U.S. 120 (1989).

"Rule 11 and principles of due process require that 'the subject of a sanctions motion be informed of:  (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense.'"  Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 175 (2d Cir. 2012) (quoting Schlaifer Nance & Co., Inv. v. Estate of Warhol, 194 F.3d 323, 334 (2d Cir. 1999)).  Under Rule 11's "safe harbor provision," the subject of the sanctions motion must be served with the motion at least twenty-one days in advance of the filing of the motion, see Fed. R. Civ. P. 11(c)(2); Star Mark Mgmt., 682 F.3d at 175-76, such that the subject of the motion can consider whether to withdraw the offending filing before the sanctions motion is filed.  See Star Mark Mgmt., 682 F.3d at 177 ("The purpose of the provision is . . . to give the opponent notice and an opportunity to consider withdrawing the filing without the court's involvement.").

## II.    ANALYSIS

In moving for sanctions, Defendant MLBAM contends that Plaintiffs did not have a basis for pleading Count IV of the SAC.  (Def. Br. (Dkt. No. 320-1) at 9)  As discussed above, in Count IV, Plaintiffs claim that MLBAM breached "operational obligations" it owes Plaintiffs under the Agreement with respect to the PITCHf/x system.  (SAC (Dkt. No. 200) ¶¶ 291-301)  In particular, Plaintiffs contend in Count IV that MLBAM owed certain duties to Plaintiffs under the Agreement through the end of 2019.  (Id. ¶ 294)  In moving for sanctions, MLBAM contends that discovery has revealed that Plaintiffs understood in 2018 – before the instant lawsuit was filed – that MLBAM's operational obligations regarding the PITCHf/x system ended in 2016. (Def. Br. (Dkt. No. 320-1) at 10)

In this regard, MLBAM points to (1) January 2018 correspondence between the Plaintiffs related to a 2018 indemnity dispute in connection with SMT's acquisition of Sportvision in 2016; and (2) the deposition testimony of Sportvision's former President and CEO, Mike Jakob, and SMT's CEO, Gerald Hall.  (Def. Mot. (Dkt. No. 320) at 10-19)

In a January 2, 2018 letter to Sportvision, SMT asserts that (1) "Sportvision knew that 2016 would likely be the last year for the PITCHf/x agreement"; (2) "Sportvision learned [during its negotiations with MLBAM] that MLBAM intended to move away from Sportvision"; (3) "Sportvision took a season-by-season approach from the period of the Third Amendment forward"; and (4) "[Sportvision] knew that it was very unlikely that Sportvision would continue to receive revenue from the PITCHf/x Agreement beyond the 2016 Season."  (Id. at 10-12 (quoting SMT Jan. 2, 2018 Ltr. (Dkt. No. 320-3) at 6 (quotation marks and emphasis omitted)) In the January 2, 2018 letter, SMT goes on to complain that Sportvision failed to disclose this information to SMT and that its representations to SMT were "fraudulent," thus entitling SMT to indemnification for associated losses in revenue.  (See SMT Jan. 2, 2018 Ltr. (Dkt. No. 320-3) at 9)

In a January 29, 2018 letter to SMT, Sportvision denies that it has any indemnification obligation, and asserts that (1) "[SMT] knew from the operative agreements that the PITCHf/x agreement would last until December 31, 2019 only if Sportvision . . . and MLBAM were able to negotiate year-to-year amendments beyond 2016"; (2) "there was no assurance MLBAM would continue with Sportvision past December 31, 2016"; and (3) "[SMT] was well aware that the MLBAM PITCHf/x revenues were not booked through 2019."  (Def. Mot. (Dkt. No. 320) at 14-15 (quoting Sportvision Jan. 29, 2018 Ltr. (Dkt. No. 320-4) at 3-4) (emphasis omitted))

9

MLBAM also cites the following testimony from Jakob's deposition:

Q …Did you understand that MLB was only extending the operation of the PITCHf/x platform for 2016?

A. My understanding was that this amendment would only cover the 2016 season and not beyond.

Q. Would you agree that with respect to the PITCHf/x, the operation of PITCHf/x specifically, that the Fourth Amendment extended the operation of PITCHf/x for only the 2016 Major League Baseball season?

A. Yes, Section 2.11, System Data Rendering Services, covers only 2016.

Q. So did you understand the Fourth Amendment to extend the operation of PITCHf/x for only the 2016 MLB season?

A. That was my understanding.

Q. Is it your understanding that the parties agreed in the Fourth Amendment only to continue rendering PITCHf/x system data for the 2016 MLB season?

A. Again, my – my understanding is this document only covered the operation and ren – and rendering services for the 2016 season.

(Id. at 17-18 (quoting Jakob Dep. (Dkt. No. 320-6) at 66, 69, 70, 181-182))

MLBAM cites the following testimony from Hall's deposition:

Q. Okay. So it was SMT's position that Sportvision knew that PITCHf/x would not continue after 2016; correct?

A. We're making that claim.

Q. And SMT is also making the claim that Sportvision took a season-by-season approach from the period of the third amendment forward; correct?

A. Correct.

(Id. at 18-19 (quoting Hall Dep. (Dkt. No. 320-5) at 193))

MLBAM argues that this evidence demonstrates that "both SMT and Sportvision knew, prior to filing their Complaint, that MLBAM's obligations to operate the PITCHf/x Agreement did not run through 2019." (Id. at 16)  MLBAM further argues that – given this

evidence – "Plaintiffs knew that allegations throughout the Complaint were premised on a false

representation."  (Id. at 20)  MLBAM also contends that Plaintiffs had no good faith basis to

argue – in opposing MLBAM's motion to compel arbitration – that MLBAM had abandoned the

Agreement and that therefore "the arbitration clause in the PITCHf/x Agreement was

inapplicable to their breach of contract claims."  (Id. at 19)

   In recommending that MLBAM's motion for sanctions be denied without

prejudice, Judge Figueredo first notes that courts should not "judge the merits of an action in

ruling on a Rule 11 motion" (R&R (Dkt. No. 425) at 9 (citing E. Gluck Corp. v. Rothenhaus, 252

F.R.D. 175, 179 (S.D.N.Y. 2008))), and that "'a Rule 11 motion for sanctions is not a proper

substitute for a motion for summary judgment.'"  (Id. (quoting Safe-Strap Co. v. Koala Corp.,

270 F. Supp. 2d 407, 417 (S.D.N.Y. 2003))

   As to the correspondence between Plaintiffs, Judge Figueredo notes that the

letters are works of advocacy and that "it is hardly surprising in the context of the indemnity

dispute between Sportvision and SMT, [that the parties took] . . . 'more aggressive position[s].'"

(R&R (Dkt. no. 425) at 16 (quoting Oral Arg. Tr. (Dkt. No. 431) at 62, 76))  Judge Figueredo

finds, however, that Plaintiffs' correspondence does not conclusively demonstrate that Plaintiffs

"knew" their breach of contract claims against MLBAM had no good faith basis, because the

letters "could fairly be interpreted in one of two ways:  it could mean that Sportvision knew that

MLBAM would not continue performing its obligations, or it could mean that Sportvision knew

that MLBAM had no contractual obligations beyond 2016."  (R&R (Dkt. no. 425) at 14-15)  And

while Sportvision asserts in its January 29, 2018 letter that SMT knew "that revenues from the

commercial exploitation of the PITCHf/x system were not guaranteed beyond the end of the

2016 MLB season," asserting that MLBAM did not have an obligation to make payment through

11

the 2019 season "is not the same as" saying that "MLBAM had no operational obligations after

the 2016 season."  (Id.)

        While certain statements in Plaintiffs' correspondence cast doubt on their

assertions that MLBAM's operational obligations extended through 2019 – including

Sportvision's statement that SMT knew that there was "'no assurance MLBAM would continue

working with Sportvision past December 31, 2016,'" and that "'the PITCHf/x Agreement would

last until December 31, 2019 only if Sportvision (later [SMT]) and MLBAM were able to

negotiate year-to-year amendments beyond 2016'" – this Court agrees with Judge Figueredo that

– when considered as a whole – Plaintiffs' letters do not demonstrate that the factual allegations

underlying Count IV are "'utterly lacking in support' and 'objectively unreasonable.'"  (Id. at 17

(quoting Zeta Global Corp. v. Maropost Marketing Cloud, Inc., 2022 WL 2533182, at *5

(S.D.N.Y. July 7, 2022)))  "In short, the representations by Sportvision and SMT in their

respective January 2018 letters are not fundamentally irreconcilable with Plaintiffs'

representations in their Second Amended Complaint or in their opposition to MLBAM's motion

to compel arbitration."  (Id.)

        As to the deposition testimony cited by MLBAM, Judge Figueredo makes the

following findings:

> Hall[] was asked in his deposition whether "it was SMT's position that
> Sportvision knew that PITCHf/x would not continue after 2016," and Hall
> responded, "[w]e're making that claim."  Def.'s Br. at 12. . . . [T]here is a
> difference between claiming that Sportvision knew, at the time of its sale to SMT,
> that MLBAM would not continue using the PITCHf/x system after 2016, and an
> acknowledgment by SMT or Sportvision that MLBAM was permitted under the
> Agreement to cease performing its operational obligations after 2016.  Moreover,
> to the extent Hall agreed with the statement that "Sportvision took a season-by-
> season approach from the period of the third amendment forward," that statement
> is equivocal.  It is equally consistent with a view that revenue sharing obligations
> were season-by-season, as it is with a view that operation of the PITCHf/x system

was on a season-by-season basis.  In any case, Hall's testimony is not irrefutable evidence that Plaintiffs' factual allegations were false.

MLBAM also relies on the deposition testimony of Mike Jakob.  In response to the question of whether he understood that "MLB was only extending the operation of the PITCHf/x platform for 2016," Jakob testified that his "understanding was that [the fourth] amendment would only cover the 2016 season and not beyond."  Def.'s Br. at 11.  Seizing on this and similar testimony from Jakob, MLBAM argues that Jakob "confirmed repeatedly" in his deposition that the Fourth Amendment to the Agreement "was a one-year deal to operate PITCHf/x for the 2016 season only – not an agreement to operate the system through 2019."  Id. (emphasis in original).  On a claim concerning the proper interpretation of a contract provision, however, Jakob's testimony is extrinsic evidence and would be relevant only if MLBAM were able to demonstrate that the contract provision is ambiguous.  See United States Trust Co. v. Jenner, 168 F.3d 630, 632 (2d Cir. 1999) (noting that where a contract is unambiguous, "courts are required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning") (citations and internal quotations omitted).  His testimony thus does not demonstrate that Plaintiffs' interpretation of the contract, based on the plain text of [the term provision], was objectively unreasonable. . . . Standing alone, Jakob's testimony cannot support a finding that Plaintiffs' conduct in asserting its claim in Count IV was objectively unreasonable or that its factual allegations in support of that claim were false.

(Id. at 18-19)

Judge Figueredo finds that the evidence put forth by MLBAM does "not conclusively show that Plaintiffs were effectively in agreement with MLBAM [that MLBAM's operational obligations under the Agreement ended in 2016]," and does not meet Rule 11's "high" standard for awarding sanctions.  (Id. at 19 (collecting cases))  She notes, however, that it is possible that – as this case proceeds – MLBAM might be able to "conclusively establish[] that Plaintiffs did in fact understand in 2018 that MLBAM's operational obligations ceased in 2016." Accordingly, she recommends that MLBAM's motion for sanctions be denied without prejudice. (Id.)

Finally, Judge Figueredo recommends that this Court deny Plaintiffs' request for costs and attorneys' fees associated with opposing MLBAM's motion for sanctions, because "Plaintiffs have not demonstrated that MLBAM's motion was frivolous."  (Id.)

This Court finds no clear error in Judge Figueredo's recommendation that Defendant's motion for sanctions be denied without prejudice and that Plaintiffs' request for an award of costs and attorneys' fees be denied.

## **CONCLUSION**

Judge Figueredo's R&R (Dkt. No. 425) is adopted in its entirety; Defendant's motion for sanctions (Dkt. Nos. 320, 333) is denied without prejudice; and Plaintiffs' request for an award of costs and attorneys' fees (Dkt. No. 355) is denied.

The Clerk of Court is directed to terminate the motions (Dkt. Nos. 320, 333, 355).

Dated:  New York, New York
          March 30, 2023

SO ORDERED.

Paul G. Gardephe
United States District Judge