UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

SPORTVISION, INC. and SPORTSMEDIA
TECHNOLOGY CORPORATION,

          Plaintiffs,

   -against-

MLB ADVANCED MEDIA, LP,

         Defendant.

-------------------------------------------------------------------X

18-CV-03025 (PGG) (VF)

**ORDER**

**VALERIE FIGUEREDO, United States Magistrate Judge**

 In this patent-infringement and breach-of-contract action, Defendant MLB Advanced

Media L.P. ("MLBAM") seeks sanctions against Plaintiffs Sportvision, Inc. ("Sportvision") and

SportsMEDIA Technology Corporation under Federal Rule of Civil Procedure 37. For the

reasons explained below, the motion is **DENIED**.

<div align="center">

**BACKGROUND**

</div>

 On April 7, 2023, MLBAM submitted a letter motion for sanctions under Federal Rule of

Civil Procedure 37(c)(1), due to Sportvision's failure to timely disclose to MLBAM certain

documents Sportvision subpoenaed and obtained from third-party, Trackman, Inc. See ECF No.

437. Trackman is one of the companies that helped develop the MLBAM pitch-tracking

technology that is the subject of Plaintiffs' claims. Id. at 1; see also ECF No. 453 at 2.[1]

According to Sportvision, MLBAM breached its contract with Sportvision when it turned to

Trackman to provide it with a system to replace PITCHf/x, the patented system created by

Sportvision that MLBAM had been using to track the location of pitches and the strike zone. See

---

[1] Citations herein to page numbers for documents filed on ECF are to the original
pagination in those documents.

ECF No. 444 at 4. Sportvision contends that MLBAM gave Trackman Sportvision's confidential and proprietary information so that Trackman could create the tracking system that is an integral part of the infringing functionality of MLBAM's accused products. Id.

In August 2020, Sportvision subpoenaed Trackman to obtain information regarding Trackman's interactions with MLBAM; Trackman opposed the subpoena. See ECF Nos. 97-104. After motion practice, Sportvision ultimately prevailed and Trackman made seven productions of documents to Sportvision, between November 3, 2020, and February 10, 2022, consisting of a total of 52 documents. See ECF No. 444 at 5-6.

At the outset of discovery, Sportvision and MLBAM entered into a Joint Discovery Protocol that required the parties to "serve upon each other all materials received pursuant to any third-party subpoena within five (5) business days of receipt from the third-party." See ECF No. 453 at 2-3 (quoting ECF No. 437-2 at 12). There is no dispute that Sportvision gave MLBAM, prior to the deposition of Trackman's corporate representative, the documents it had received as part of Trackman's first four productions, totaling 26 documents. Id. at 4-5. However, the last three document productions from Trackman (totaling 26 documents), made between June 30, 2021, and February 10, 2022, were not timely turned over by Sportvision to MLBAM.

On March 11, 2022, the Court granted Sportvision's motion to compel, allowing Plaintiff to depose a witness from Trackman for four hours. See ECF No. 323. Sportvision and Trackman agreed to a limited set of deposition topics. See ECF No. 444 at 8. MLBAM served a cross notice for the deposition. Id. Prior to the deposition, Trackman's counsel wrote to MLBAM explaining that Trackman viewed MLBAM's cross motion "as a reservation of rights to ask follow up questions in respond [sic] to Sportvision's questioning." Id. MLBAM agreed to be limited to "no more than 45 minutes to ask its follow up questions." Id.

On April 8, 2022, Trackman's President, Hans Deutmeyer was deposed by Sportvision. See ECF No. 453 at 5. Prior to the deposition, Sportvision sent a box of exhibits it intended to use during the deposition to MLBAM. Id. MLBAM agreed not to open the exhibits until instructed to do so during the deposition. Id. At the deposition, Sportvision introduced two documents as exhibits that it had obtained from Trackman but had failed to previously turn over to MLBAM. See ECF No. 444 at 9. MLBAM's counsel, not realizing that those Trackman documents were not previously disclosed by Sportvision, raised no objections at that time. Id. Pursuant to its agreement with Trackman, MLBAM's counsel questioned Deutmeyer for 34 minutes. See id. During that questioning, MLBAM's counsel asked Deutmeyer questions pertaining to one of the documents (Trackman 1168) that Sportvision had introduced as an exhibit but had failed to turn over to MLBAM prior to the deposition. Id.

By February 2023, fact discovery was completed and the parties had commenced expert discovery. See ECF Nos. 398-399; see also ECF No. 453 at 6. On March 17, 2023, during expert discovery, Sportvision served on MLBAM the expert report of its patent infringement and trade secrets expert. See ECF No. 437 at 1. Upon reviewing the expert report, MLBAM discovered that the expert had cited three Trackman documents (Trackman 1161, Trackman 1168, and Trackman 1192) with Bates numbers that were beyond the Bates range of Sportvision's last production to MLBAM of Trackman documents. See id.; ECF No. 444 at 9. MLBAM alerted Sportvision to this discrepancy on March 23, 2023, and Sportvision, on March 24, turned over to MBLAM the 26 Trackman documents that had previously been undisclosed. See ECF No. 444 at 9-10; ECF No. 437 at 1. Sportvision explained to MLBAM that the failure to previously turn over those documents was an "inadvertent production error." See ECF No. 444 at 10.

Now, MLBAM seeks to bar Sportvision from affirmatively using on a motion, in an expert report, at a hearing, or at trial (1) the deposition of Trackman's witness, and (2) all Trackman documents obtained by Plaintiff through its third-party subpoena. See ECF No. 437 at 3. MLBAM contends that such a sanction pursuant to Rule 37(c)(1) is appropriate because it has been prejudiced by the late disclosure of the 26 Trackman documents. Conversely, Sportvision argues that the delay in disclosure of these documents was harmless because the information contained in the undisclosed documents was information available to MLBAM in other documents in its possession before the Trackman deposition. See ECF No. 444 at 13-16. Sportvision also contends that MLBAM's request to exclude all Trackman documents and the entire Trackman deposition is unreasonably harsh, when a lesser remedy, such as a continuance and a reopening of the Trackman deposition, is feasible. Id. at 19-20. The Court held argument on MLBAM's motion on April 28, 2023. See ECF No. 465.

**DISCUSSION**

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that "[i]f a party fails to provide information . . . as required by [Federal Rule of Civil Procedure] 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Despite the Rule's seemingly mandatory language, "courts in this circuit have recognized that the imposition of sanctions under Rule 37(c)(1) is a matter within the trial court's discretion." Ward v. The Nat'l Geographic Society, No. 99-CV-12385 (LAK), 2002 WL 27777, *2 (S.D.N.Y. Jan. 11, 2002) (internal quotation and citation omitted). Indeed, courts have "broad discretion" to determine the nature of any sanction that should be imposed under Rule 37, "based on all the facts of the case." AAIpharma Inc. v. Kremers Urban Dev. Co., No. 02-CV-9628 (BSJ) (RLE), 2006 WL 3096026, at *5 (S.D.N.Y. Oct. 31, 2006). Thus, "even where a court finds that a discovery failure is not harmless or substantially justified," preclusion is not automatic. Certain Underwriters at Lloyd's v. Amtrak, No. 14-CV-4717 (FB), 2017 WL 1164897, at *2 (E.D.N.Y. Mar. 28, 2017); see also Cates v. Trustees of Columbia University in the City of N.Y., 330 F.R.D. 369, 373 (S.D.N.Y. 2019).

In determining whether preclusion is an appropriate sanction, courts consider: "(1) the reasons for the delay in providing the evidence; (2) the importance of the evidence precluded; (3) the prejudice to the opposing party from having to address the new evidence; and (4) the possibility of a continuance." Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., 769 F. Supp. 2d 269, 278 (S.D.N.Y. 2011) (citing Softel, Inc. v. Dragon Medical and Scientific Communications, Inc., 118 F.3d 955, 961 (2d Cir. 1997)); see also Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006). "Before the extreme sanction of preclusion may be used by the

5

Case 1:18-cv-03025-PGG-VF   Document 472   Filed 10/12/23   Page 6 of 9
Case 1:18-cv-03025-PGG-VF   Document 472   Filed 10/12/23   Page 6 of 9


district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." Cedar Petrochemicals, 769 F. Supp. 2d at 278 (quoting Outley v. City of New York, 837 F.2d 587, 591 (2d Cir. 1988)). Preclusion is "a harsh sanction, to be imposed rarely." U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co., Nos. 12-CV-6811 (CM)(JCF), 13-CV-1580 (CM)(JCF), 2013 WL 5495542, at *2 (S.D.N.Y. Oct. 3, 2013).

Sportvision describes its failure to produce the 26 Trackman documents in a timely manner as an inadvertent error. It has offered no substantial justification for its conduct. Turning to whether the error was harmless, although MLBAM did not receive 26 of the Trackman documents prior to Deutmeyer's deposition, it did receive the documents in the midst of expert discovery. MLBAM will therefore have an opportunity to use those documents, if it chooses, before this case even reaches the dispositive motion phase or trial. For instance, MLBAM can use the documents in its rebuttal expert reports and expert depositions. Further, discovery has not fully closed and the parties have not begun briefing any summary judgment motions. A brief continuance to allow MLBAM an opportunity to reopen Deutmeyer's deposition is therefore feasible. This is thus not a case where a party waited until the eve of trial (or during summary judgment briefing) to turn over documents in their possession. See, e.g., Certain Underwriters at Lloyd's v. Amtrak, No. 14-CV-4717, 2017 WL 1164897, at *3 (E.D.N.Y. Mar. 28, 2017) (distinguishing cases where preclusion was appropriate because the withheld information was not turned over until the eve of trial or in response to a dispositive motion).

Moreover, the information contained in the inadvertently withheld Trackman documents is information that MLBAM mostly had in other forms prior to Deutmeyer's deposition. In support of its prejudice argument, MLBAM points to three documents that it did not have before the deposition (Trackman 1303, Trackman 1336, and Trackman 1363). Those documents pertain

to a key issue in this case of camera calibration. <u>See</u> ECF No. 453 at 14-16. According to

MLBAM, these three documents address whether Trackman's calibration process relied on

Sportvision's confidential information or copied Sportvision's PITCHf/x set up procedures. <u>Id.</u> at

15. Prior to Deutmeyer's deposition, however, MLBAM had other documents in its possession

that contained similarly detailed information about Trackman's calibration process. <u>See</u> ECF No.

460, Ex. A; <u>see also</u> ECF No. 444 at 16. The inadvertently withheld documents may have

allowed for more in depth questioning of Deutmeyer, if MLBAM had been interested in

obtaining information about the calibration process. But, MLBAM did not ask Deutmeyer a

single question about that topic, despite the information it had before the deposition about the

calibration process. The fact that MLBAM chose not to ask any questions on the topic

undermines its argument now that it was prejudiced by its inability to question Deutmeyer about

the three withheld documents.

Further, two of the previously withheld documents (Trackman 1220 and Trackman 1168)

were provided to MLBAM before the Trackman deposition. To be sure, Sportvision had not yet

identified Trackman 1220 and Trackman 1168 as documents obtained through its third-party

subpoena of Trackman. But MLBAM had access to Trackman 1168 and Trackman 1220 as of

July 19, 2021, because both documents were filed on that date on the docket in this case, as

exhibits to a motion by Sportvision to compel Trackman to produce responses to certain

subpoena requests. <u>See</u> ECF Nos. 249, 249-14, 249-53. In short, given the information MLBAM

had prior to Deutmeyer's deposition, it was not prejudiced by Sportvision's inadvertent failure to

disclose the additional Trackman documents before the deposition.

Nevertheless, even if MLBAM was prejudiced by the late disclosure of the Trackman

documents, the sanction it seeks—preclusion of the entire Trackman deposition and all of the

Trackman documents—is simply too harsh a remedy and a disproportionate penalty for

Sportvision's conduct. Nothing in the record suggests that Sportvision's failure was willful or in

bad faith. To the contrary, Sportvision publicly acknowledged receipt of documents from

Trackman, in various filings on the docket, even if it later inadvertently failed to turn those

documents over to MLBAM, belying any suggestion that its withholding was in bad faith. See,

e.g., ECF No. 300-1 at 4; ECF No. 311 at 3.

What's more, Trackman is a key player in Plaintiffs' claims. Trackman provided

MLBAM with the pitch tracking functionality that is part of the system that Sportvision claims

infringes its patent. Sportvision also claims that MLBAM, in implementing the system that

replaced Sportvision's PITCHf/x, gave Sportvision's confidential and proprietary information to

Trackman. In short, Trackman's documents are significant to Sportvision's claims in this case, as

is evident, in part, by Sportvision's extensive efforts to obtain the Trackman documents and

deposition. See ECF No. 444 at 7-8. Sportvision's expert, Dr. Stevenson, also relied on the

information obtained from Trackman in his expert report. See id. at 19. The significance of the

Trackman evidence to Sportvision's case weighs against preclusion. See New World Sols., Inc.

v. NameMedia, Inc., 150 F. Supp. 3d 287, 311 (S.D.N.Y. 2015) (explaining that the relevance of

the evidence to the claim weighed against preclusion).

Lastly, before resorting to the drastic remedy of preclusion, a court must consider the

feasibility of a lesser remedy. Outley, 837 F.2d at 591. Here, a continuance is feasible. Although

this case is in its fifth year of litigation, discovery has not closed. No trial date has been set.

Given the stage of this litigation, a continuance to permit MLBAM an opportunity to depose a

Trackman witness about the 26 Trackman documents, if MLBAM elects to do so, is possible.

In sum, all of the factors weigh in favor of a lesser sanction than preclusion of the Trackman deposition and all the Trackman documents. Sportvision's conduct was inadvertent and the Trackman documents are significant to its claims. Further, a continuance is feasible and would permit MLBAM an opportunity to use the previously undisclosed documents, if it wishes, in this litigation.

## CONCLUSION

For all of the foregoing reasons, MLBAM's motion for sanctions under Federal Rule of Civil Procedure 37 is **DENIED**. The Clerk of Court is respectfully directed to terminate the letter motion at ECF No. 437.

**SO ORDERED.**

DATED:      New York, New York
            October 12, 2023

_____
VALERIE FIGUEREDO
United States Magistrate Judge