UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SPORTVISION, INC. and SPORTSMEDIA
TECHNOLOGY CORPORATION,

                    Plaintiffs,

          - against -

MLB ADVANCED MEDIA, LP,

                    Defendant.

**ORDER**

18 Civ. 3025 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          In this action, Plaintiffs Sportvision, Inc. and SportsMEDIA Technology Corp.

("SMT") assert claims for patent infringement, misappropriation of trade secrets, breach of

contract, and unfair competition against Defendant MLB Advanced Media, LP ("MLBAM").

(SAC (Dkt. No. 200))  On April 27, 2022, this Court referred the instant action to Magistrate

Judge Valerie Figueredo for general pretrial supervision, including non-dispositive pretrial

motions.  (Dkt. No. 343)  On April 14, 2023, Plaintiffs moved to strike portions of the opening

expert report of defense expert Dr. Ravin Balakrishnan concerning indefiniteness.  (Pltfs. Mot.

(Dkt. No. 439))

          On November 21, 2023, Judge Figueredo denied Plaintiffs' motion to strike.

(Nov. 21, 2023 Order (Dkt. No. 475))  Judge Figueredo ruled, however, that "Plaintiffs may

depose Dr. Balakrishnan and submit a rebuttal expert report addressing the issues of

indefiniteness addressed by Dr. Balakrishnan" and awarded Plaintiffs "reasonable attorneys' fees

incurred in (1) preparing the instant motion, (2) deposing Dr. Balakrishnan, and (3) preparing a

rebuttal expert report." (Id. at 10)[1]  Judge Figueredo also precluded the parties "from offering

any further supplemental invalidity contentions or expert opinions without prior permission [of

the Court]."  (Id.)

Defendant filed objections to Judge Figueredo's order (Def. Obj. (Dkt. No. 476)),

and Plaintiffs have filed a response to Defendant's objections (Pltfs. Resp. (Dkt. No. 477)).

For the reasons stated below, Defendant's objections will be overruled in part and

sustained in part, and Judge Figueredo's order will be affirmed in part and vacated in part.

## BACKGROUND

### I.    PARTIES

As alleged in the Second Amended Complaint ("SAC"), Sportvision creates

"innovative graphic enhancements of sports objects and graphic visualizations of sports

elements" (SAC (Dkt. No. 200) ¶ 3), and SMT develops "real-time on-screen graphics, tickers,

clock-and-score, virtual insertions[,] and social media integration for live televised sport and

entertainment events."  (Id. ¶ 50)  On October 4, 2016, SMT acquired all of Sportvision's

outstanding stock.  (Id. ¶ 53)

Defendant MLBAM is a limited partnership of Major League Baseball ("MLB")

club owners, which manages and directs MLB's digital properties.  (Id. ¶¶ 54-55)

### II.    THE PITCHf/x SYSTEM AND THE ENDEAVOR CONTRACT

In 1999, the sports network ESPN and Sportvision engineers collaborated on an

idea to create a new on-air system capable of (1) generating and inserting a virtual strike zone

graphic, custom-sized for each batter, during broadcasts of MLB games; and (2) generating and

---

[1]  The page numbers of documents referenced in this Order correspond to the page numbers
designated by this District's Electronic Case Files ("ECF") system.

inserting a virtual pitch location graphic showing where each pitch crossed home plate relative to the virtual strike zone.  (Id. ¶ 64)  ESPN referred to this proposed on-air enhancement as the "K-Zone."  (Id. ¶ 66)

Sportvision completed development of K-Zone in about eighteen months, and ESPN began using it on July 1, 2001.  (Id. ¶¶ 68, 71)  For the next five years, ESPN was the only MLB broadcaster with the right to use K-Zone.  (Id. ¶ 75)  During that time, there was a positive fan response to use of the K-Zone on ESPN, but the system had inherent limitations.  (Id. ¶ 77)  In particular, K-Zone tracked the flight of a pitch only over home plate.  Moreover, because the pitch-tracking technology had a one-second delay before the system reported the location of the pitch, K-Zone's Virtual Pitch Location Reveals were available only on replays.  (Id.)

Sportvision engineers resolved to "develop and then patent a new and sophisticated camera-based pitch tracking system that could track detailed information along the entire trajectory of a pitch, i.e., from the pitchers' release point through to the catchers' mitt."  (Id. ¶ 96)  On March 11, 2008, Patent No. 7,341,530 ("the '530 Patent") – entitled "Virtual Strike Zone" – was issued.  (Id. ¶¶ 78-79, Ex. A)  ESPN and Sportvision each held an undivided joint ownership interest in the '530 Patent until October 4, 2016, when SMT acquired Sportvision, and Sportvision assigned its interest to SMT.  (Id. ¶¶ 80-81)  SMT became the sole owner of the '530 Patent on February 1, 2017, when ESPN assigned its interest in the '530 Patent to SMT.  (Id. ¶¶ 82-83)  "The claims of the '530 Patent are directed to systems and methods that determine the location of the strike zone and add a graphical image of the strike zone to a video or other image of a baseball game."  (Id. ¶ 84)  Sportvision alleges that the "graphical renderings of strike zones and pitches through Sportvision's K-Zone system practice at least claim 31" of the '530 Patent.  (Id. ¶ 90)

3

Sportvision called its new, full-pitch path-tracking system "PITCHf/x." PITCHf/x is capable of deriving a pitch's location, angle, amount of break, speed at release, and speed crossing home plate. (Id. ¶¶ 97-98) PITCHf/x can also predict the location of where a pitch will cross home plate to within one-inch accuracy, which allowed Sportvision to build a system that could insert pitch location graphics into live video. (Id. ¶¶ 99-100) Sportvision engineers also designed and developed a database system to store all of PITCHf/x's pitch-path data, and designed a distribution interface system to make the pitch data available in a variety of formats to serve different data consumption uses. (Id. ¶ 101)

While PITCHf/x was being developed, ESPN's use of K-Zone increased market demand for all forms of MLB pitch data, and for an alternative to K-Zone that could be used by other MLB broadcasters. (Id. ¶ 95) To maximize revenue from its new technology, in 2005 Sportvision proposed to MLBAM that Sportvision (1) permanently install a PITCHf/x system in every MLB Stadium; (2) operate the PITCHf/x system for every MLB game; (3) record the pitch path trajectory for every pitch thrown in every MLB game; and (4) make the pitch data available in a variety of formats for a variety of uses, including in live pitch data graphic renderings, in replay pitch data graphic renderings, and in post-game digital summaries and reports. (Id. ¶ 102) Sportvision and MLBAM then negotiated the structure and terms of an agreement that contemplated installing the PITCHf/x system and Sportvision rendering systems in every MLB stadium. (Id. ¶ 104)

On February 7, 2006, Sportvision and MLBAM entered into a contract to "work together on an endeavor to capture, collect, market and disseminate pitch data" in MLB games using the PITCHf/x system (the "Contract"). (Id. ¶¶ 105, 107) (internal quotations and citations omitted) The Contract lists four primary objectives: (1) to design, assemble, install league-wide,

and operate the PITCHf/x system to capture data on pitches at MLB games; (2) to provide PITCHf/x system data to MLB-associated entities at no charge; (3) to generate revenue by selling PITCHf/x system data rendering services to MLB broadcasters; and (4) to generate revenue by selling PITCHf/x system data to data subscribers.  (Id. ¶ 107)

The SAC describes the parties' business arrangement as follows:  MLBAM agreed to (1) pay all expenses associated with the first objective, in exchange for permission to perform the second objective and to share in the revenue generated by the third and fourth objectives.  (Id. ¶ 109)  Plaintiffs agreed to supply the patents, intellectual property, and expertise needed to perform the first objective, in exchange for sharing in the revenue generated by the third and fourth objectives.  (Id.)

The SAC further alleges that the Contract ran through 2019, but that MLBAM abandoned the parties' joint venture after the 2016 baseball season, hiring Ryan Zander, Sportvision's former Vice President and General Manager of Baseball Products, to develop a competing system – the PITCHcast system – using Sportvision's trade secrets.  (Id. ¶¶ 30, 38, 173-77)  Plaintiffs further allege that – since the beginning of the 2017 baseball season – MLBAM has used the PITCHcast system, and not the PITCHf/x system provided by Sportvision pursuant to the Contract, to collect and market MLB pitch data.  (Id. ¶¶ 178, 181)

## II.    **PROCEDURAL HISTORY**

The Complaint was filed on April 5, 2018 (Cmplt. (Dkt. No. 1)), the Amended Complaint was filed on April 27, 2018 (Am. Cmplt. (Dkt. No. 26)), and the Second Amended Complaint was filed on February 19, 2021.  (SAC (Dkt. No. 200))

On January 31, 2020, this Court referred the case to Magistrate Judge Debra Freeman for general pretrial supervision.  (Dkt. No. 64)

On May 14, 2020, Judge Freeman entered a scheduling order (Dkt. No. 74), and on August 6, 2020, Judge Freeman entered a joint stipulation and order extending certain deadlines set forth in the May 14, 2020 scheduling order. (Dkt. No. 92) As relevant here, the August 6, 2020 order set a deadline of September 3, 2020, for Defendant MLBAM to serve – pursuant to Local Patent Rule 7 – "any Invalidity Contentions which identify each item of prior art that the party contends allegedly anticipates or renders obvious each asserted claim, and any other grounds of invalidity, including under 35 U.S.C. § 101 or § 112, or unenforceability of any of the asserted claims. Defendants shall provide core technical documents including source code, specifications, user manuals, schematics, flow charts, [and] other documentation sufficient to show the structure, function and operation of each Accused Product, and to provide copies of any prior art upon which it will rely." (Dkt. No. 74 at 2; Dkt. No. 92 at 2)

The August 6, 2020 order also set a deadline of October 6, 2020, for the parties to "jointly exchange proposed constructions of each disputed term, together with an identification of all references from the intrinsic evidence that support that construction, and an identification of any extrinsic evidence known to the party on which it intends to rely either to support its proposed construction or to oppose any other party's proposed construction, including, but not limited to, dictionary definitions, citations to learned treatises and prior art, and testimony of all witnesses including experts." (Dkt. No. 74 at 3; Dkt. No. 92 at 2)

Finally, the August 6, 2020 order set a deadline of October 27, 2020, for the parties to "file a Joint Disputed Claim Terms Chart including: 1. The construction of those terms on which the parties agree; 2. Each party's proposed construction of each disputed term, together with an identification of all references from the intrinsic evidence that support that construction, and an identification of any extrinsic evidence known to the party on which it intends to rely

either to support its proposed construction or to oppose any other party's proposed construction, including, but not limited to, dictionary definitions, citations to learned treatises and prior art, and testimony of all witnesses including experts." (Dkt. No. 74 at 3; Dkt. No. 92 at 2)

On October 27, 2020, the parties submitted their joint disputed claim terms chart. (Dkt. No. 131)

On November 10, 2020, Plaintiffs submitted an opening claim construction brief in which they address each claim term that Defendant had alleged was indefinite in the joint disputed claim terms chart. (Dkt. No. 142) Plaintiffs also submitted a declaration from Dr. Robert Louis Stevenson, who offered opinions concerning each claim term that Defendant alleged was indefinite. (Dkt. No. 142-1) On November 23, 2020, Defendant deposed Dr. Stevenson and questioned him about his indefiniteness opinions. (See Pltfs. Br. (Dkt. No. 440) at 8)

In a November 30, 2020 order, Judge Freeman directed the parties to "address the issue of indefiniteness in [their claim construction] briefing," while noting that "Judge Gardephe will ultimately make the determination as to whether to consider the issue at the [claim construction] stage." (Dkt. No. 160)

On December 17, 2020, Defendant submitted its responsive claim construction brief. (Dkt. No. 177) While Defendant addressed indefiniteness in connection with the terms and phrases it had identified as indefinite, Defendant did not submit any expert declarations. (Id.) On January 7, 2021, Plaintiffs submitted a reply claim construction brief, in which they again addressed the terms and phrases that Defendant had argued are indefinite. (Dkt. No. 184)

On May 27, 2021, and July 15, 2021, this Court conducted a Markman hearing. (See Markman Tr. (Dkt. No. 235); Markman Tr. (Dkt. No. 255)) In a May 27, 2021 order, this

Court directed the parties to make submissions addressing whether this Court should decide

Defendant's indefiniteness arguments in connection with claim construction or at summary

judgment. (Dkt. No. 228)

      In a July 6, 2021 letter, Defendant argued that "'[i]ndefiniteness is a matter of

claim construction,' and as such, it is the regular and established practice in this judicial district

to rule on indefiniteness at claim construction." (July 6, 2021 Def. Ltr. (Dkt. No. 242) at 1

(quoting Kewazinga Corp. v. Microsoft Corp., No. 1:18-CV-4500-GHW, 2019 WL 3423352, at

*24 (S.D.N.Y. July 29, 2019)) In arguing that the Court should address indefiniteness as part of

claim construction, Defendant asserted that "[a]ll briefing and evidence pertaining to the

identified indefinite terms is already before the Court. Both parties had ample notice of the

terms in dispute, including the indefinite terms, and ample time to develop support for the

parties' arguments." (Id.) Defendant MLBAM further stated that it "does not plan – and does

not need – to present additional expert testimony or any other evidence that the terms as written

in the '530 Patent are indefinite." (Id. at 4-5) "It is [therefore] proper for the Court to determine

all disputed claim construction issues on this complete record." (Id. at 5)

      In a July 6, 2021 letter, Plaintiffs wrote that they had

> advocated that the better course would have been to wait until the summary judgment
> stage. Based on MLBAM's representations to the Magistrate Judge, however, the parties
> have now fully briefed the indefiniteness terms and the evidentiary record is complete.
> Plaintiffs are therefore prepared to address Defendant's indefiniteness arguments at the
> claim construction hearing on July 15, 2021 at which point the indefiniteness issues will
> be fully joined. Plaintiffs object, however, to allowing MLBAM to raise the
> indefiniteness issues during claim construction and later in summary judgment.

(July 6, 2021 Pltfs. Ltr. (Dkt. No. 243) at 1)

      At the July 15, 2021 Markman hearing, this Court informed the parties that it

"intend[ed]" to decide "the indefinite[ness] issues in connection with claim construction"

8

because "[t]he defendant contends that [this Court] should address indefiniteness in connection with claim construction," and "Plaintiffs [have said] that they do not object to the Court" doing so. (Markman Tr. (Dkt. No. 255) at 2:11 – 2:15)

On April 27, 2022, the instant action was reassigned to Magistrate Judge Valerie Figueredo. (See Dkt. Sheet at Apr. 27, 2022) That same day, this Court filed an amended order of reference referring the instant action to Judge Figueredo for, inter alia, general pretrial supervision, including non-dispositive pretrial motions. (Dkt. No. 343)

On March 17, 2023, Defendant served the opening expert report of Dr. Ravin Balakrishnan regarding the alleged invalidity of the '530 Patent. (See Def. Opp. (Dkt. No. 464) at 8)

On April 14, 2023, Plaintiffs filed the instant motion to strike those portions of Dr. Balakrishnan's report related to indefiniteness. (Pltfs. Mot. (Dkt. No. 439))

On April 28, 2023, Judge Figueredo stayed all expert discovery deadlines pending the outcome of, inter alia, Plaintiffs' motion to strike. (Dkt. No. 462)

On April 28, 2023, Defendant filed its opposition to Plaintiffs' motion to strike (Def. Opp. (Dkt. No. 464)), and on May 5, 2023, Plaintiffs filed a reply in support of their motion to strike. (Pltfs. Reply (Dkt. No. 467))

In a November 21, 2023 order, Judge Figueredo denied Plaintiffs' motion to strike. (Nov. 21, 2023 Order (Dkt. No. 475)) Judge Figueredo ruled, however, that "Plaintiffs may depose Dr. Balakrishnan and submit a rebuttal expert report addressing the issues of indefiniteness addressed by Dr. Balakrishnan." She also awarded Plaintiffs "reasonable attorneys' fees incurred in (1) preparing the instant motion, (2) deposing Dr. Balakrishnan, and (3) preparing a rebuttal expert report." (Id. at 10) Judge Figueredo also precluded both sides

"from offering any further supplemental invalidity contentions or expert opinions without prior permission from" this Court. (Id.)

On December 5, 2023, Defendant filed objections to Judge Figueredo's order (Def. Obj. (Dkt. No. 476)), and on December 12, 2023, Plaintiffs filed a response to Defendant's objections. (Pltfs. Resp. (Dkt. No. 477))

On December 2, 2024, Plaintiffs requested that the stay on expert discovery imposed on April 28, 2023, be lifted for the purpose of permitting damages expert discovery to continue. (Dkt. No. 490) Defendant opposed the request. (Dkt. No. 492) On December 10, 2024, Judge Figueredo granted Plaintiffs' request to lift the stay as it pertained to damages expert discovery. (Dkt. No. 494)

On December 24, 2024, Defendant filed objections to Judge Figueredo's order partially lifting the expert discovery stay. (Dkt. No. 500) On January 7, 2025, Plaintiffs responded to Defendant's objections. (Dkt. No. 503)

On January 14, 2025, Plaintiffs moved to compel Defendant to comply with the order partially lifting the expert discovery stay. (Dkt. No. 504) On January 17, 2025, Defendant moved for a stay pending resolution of its objections to the order partially lifting the expert discovery stay. (Dkt. No. 505) Defendant also filed its opposition to Plaintiffs' motion to compel. (Id.)

## DISCUSSION

## I.    LEGAL STANDARDS

### A.    Review of a Magistrate Judge's Order Concerning a Non-Dispositive Matter

As discussed above, Plaintiffs moved to strike those portions of the opening expert report of Dr. Balakrishnan that address indefiniteness, arguing that Dr. Balakrishnan's indefiniteness opinions are untimely and that they are prejudiced by the late submission, because,

inter alia, they "filed their reply claim construction brief, and argued indefiniteness issues at the Markman hearing, without knowing Dr. Balakrish[n]an's positions." (Pltfs. Br. (Dkt. No. 440) at 11) Judge Figueredo denied Plaintiffs' motion, but granted Plaintiffs certain relief, including a deposition of Dr. Balakrishnan, the right to "submit a rebuttal expert report addressing the issues of indefiniteness addressed by Dr. Balakrishnan," and an award of attorneys' fees for costs associated with the motion to strike, Dr. Balakrishnan's deposition, and the preparation of a rebuttal expert report. (Nov. 21, 2023 Order (Dkt. No. 475) at 10)

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, "[w]hen a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide," the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Pursuant to Rule 72(b)(3), when a dispositive motion has been referred to a magistrate judge, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."

"To determine whether a magistrate judge's ruling regarding discovery sanctions is 'dispositive,' the Court must look to the effect of the sanction – if imposed." Khatabi v. Bonura, No. 10 Civ. 1168 (ER), 2017 WL 10621191, at *3 (S.D.N.Y. Apr. 21, 2017); see also Kiobel v. Millson, 592 F.3d 78, 97 (2d Cir. 2010) (Leval, J., concurring) ("Analyzing the effects of the particular sanction imposed by a magistrate judge, to determine whether it is dispositive or nondispositive of a claim, is the approach that best implements Congress's intent."). "Thus, in determining between dispositive and non-dispositive discovery sanctions, the critical factor is what sanction the magistrate judge actually imposes, rather than the one requested by the party seeking sanctions." Khatabi, 2017 WL 10621191, at *3 (emphasis in original); see also UBS Int'l Inc. v. Itete Brasil Instalacoes Telefonicas Ltd., No. 09 Civ. 10004 (LAK) (JCF), 2011 WL

1453797, at *1 n.2 (S.D.N.Y. Apr. 11, 2011) ("A magistrate judge . . . has the authority to issue

less severe sanctions, including preclusion orders, in the course of overseeing discovery.").

Here, as discussed above, Judge Figueredo denied Plaintiffs' motion to strike, but

granted Plaintiffs' certain relief associated with the disputed portions of Dr. Balakrishnan's

expert report. (Nov. 21, 2023 Order (Dkt. No. 475) at 10)

Because Judge Figueredo "did not impose any [case-]terminating sanctions," "the

Court treats [her] ruling as non-dispositive." Khatabi, 2017 WL 10621191, at *3; see also City

of Almaty, Kazakhstan v. Ablyazov, No. 15CV5345JGKKHP, 2022 WL 1406248, at *6

(S.D.N.Y. May 4, 2022) ("It is well established that Magistrate Judges have authority to issue

attorneys' fees awards for violations of discovery rules, as such motions are non-dispositive.")

(citing Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522 (2d Cir. 1990) and Errant Gene

Therapeutics, LLC v. Sloan-Kettering Inst. For Cancer Research, 768 F. App'x 141 (2d Cir.

2019)); Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co., No. 15-cv-2926, 2020 WL 1242616,

at *4 (E.D.N.Y. Mar. 16, 2020) ("Generally, orders relating to discovery sanctions are

considered nondispositive. For example, a magistrate judge has authority to issue [an] award of

attorney's fees as a Rule 37 sanction or issue a preclusion order as such orders are non-

dispositive."). Because Judge Figueredo's ruling is non-dispositive, this Court will review the

portions of her order to which Defendant has objected under the "clearly erroneous" standard.

See Fed. R. Civ. P. 72(a).

A ruling is "'clearly erroneous'" where, "'although there is evidence to support it,

the reviewing court . . . is left with the definite and firm conviction that a mistake has been

committed.'" United States v. Chowdhury, 639 F.3d 583, 585 (2d Cir. 2011) (quoting Anderson

v. Bessemer City, 470 U.S. 564, 573 (1985)); see also Ritchie Risk-Linked Strategies Trading

(Ireland), Ltd. v. Coventry First LLC, 282 F.R.D. 76, 78 (S.D.N.Y. 2012) ("'The reviewing court must be left with the definite and firm conviction that a mistake has been committed to overturn the magistrate judge's resolution of a nondispositive matter.'") (quoting AMBAC Fin. Servs., LLC v. Bay Area Toll Auth., No. 09 Civ. 7062(RJH), 2010 WL 4892678, at *2 (S.D.N.Y. Nov. 30, 2010)). "An order is 'contrary to law' when it 'fails to apply or misapplies relevant statutes, case law or rules of procedure.'" WestLB AG v. BAC Fla.D Bank, No. 11 Civ. 5398(LTS)(AJP), 2012 WL 3135773, at *3 (S.D.N.Y. Aug. 2, 2012) (quoting Collens v. City of N.Y., 222 F.R.D. 249, 251 (S.D.N.Y. 2004)).

**B.      Rule 26(a)(2)(D) and Rule 37(c)(1) Standards**

Fed. R. Civ. P. 26(a)(2)(D) governs the "[t]ime to [d]isclose [e]xpert [t]estimony," and provides that "[a] party must make these disclosures at the times and in the sequence that the court orders." "A party that fails either to obey a court order concerning discovery or to comply with its Rule 26(a) disclosure obligations may be sanctioned under Rule 37." Columbia Cas. Co. v. Neighborhood Risk Mgmt. Corp., No. 14-CV-48 (AJN) (HBP), 2016 WL 184407, at *2 (S.D.N.Y. Jan. 15, 2016).

Fed. R. Civ. P. 37(c)(1) provides that, "[i]f a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Because preclusion is a "'harsh remedy,'" however, it "'should be imposed only in rare situations.'" Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 156 (S.D.N.Y. 2012) (quoting Izzo v. ING Life Ins. & Annuity Co., 235 F.R.D. 177, 186 (E.D.N.Y. 2005)). "In determining whether preclusion or another sanction would be appropriate, courts should consider: '(1) the party's explanation for the failure to comply with the discovery [requirement]; (2) the importance of . . . the precluded [evidence]; (3) the prejudice

suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.'" <u>Ritchie Risk-Linked Strategies</u>, 280 F.R.D. at 157 (quoting <u>Softel, Inc. v. Dragon Med. & Sci. Commc'ns., Inc.</u>, 118 F.3d 955, 961 (2d Cir. 1997)).

"In addition to or instead of [the] sanction [of preclusion], the court, on motion and after affording an opportunity to be heard . . . [,] may impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(C). These sanctions may include requiring "payment of . . . reasonable expenses, including attorney's fees." Fed. R. Civ. P. 37(c)(1)(A).

### C.    Local Patent Rules

In this District, Local Patent Rule 7 provides that, "[u]nless otherwise specified by the court, not later than 45 days after service of the 'Disclosure of Asserted Claims and Infringement Contentions,' each party opposing a claim of patent infringement must serve on all parties its 'Invalidity Contentions,' if any. Invalidity Contentions must identify each item of prior art that the party contends allegedly anticipates or renders obvious each asserted claim, and any other grounds of invalidity, including any under 35 U.S.C. § 101 or § 112, or unenforceability of any of the asserted claims." Loc. Pat. R. 7.

Local Patent Rule 11 provides that, "[b]y a date specified by the court, the parties must cooperate and jointly file a Joint Disputed Claim Terms Chart listing the disputed claim terms and phrases, including each party's proposed construction, and cross-reference to each party's identification of the related paragraph(s) of the invalidity and/or infringement contention(s) disclosures under" other local rules. Loc. Pat. R. 11.

## II.    THE MAGISTRATE JUDGE'S ORDER

In moving to strike the portion of Dr. Balakrishnan's expert report addressing indefiniteness, Plaintiffs contend that Dr. Balakrishnan's indefiniteness opinions are untimely and that they are prejudiced by the late submission, because, <u>inter alia</u>, they "filed their reply

claim construction brief, and argued indefiniteness issues at the <u>Markman</u> hearing, without

knowing Dr. Balakrish[n]an's positions," and "were unable to take Dr. Balakrish[n]an's

deposition prior to [submitting their] reply claim construction brief and the <u>Markman</u> hearing."

(Pltfs. Br. (Dkt. No. 440) at 11)  Judge Figueredo agrees that Dr. Balakrishnan's opinions

regarding indefiniteness are "plainly untimely," but nonetheless denies Plaintiffs' motion to

strike.  (Nov. 21, 2023 Order (Dkt. No. 475) at 8, 11)  Judge Figueredo instead rules that

"Plaintiffs may depose Dr. Balakrishnan and submit a rebuttal expert report addressing the issues

of indefiniteness addressed by Dr. Balakrishnan."  She also awards Plaintiffs "reasonable

attorneys' fees incurred in (1) preparing the instant motion, (2) deposing Dr. Balakrishnan, and

(3) preparing a rebuttal expert report."  (<u>Id.</u> at 10)  Judge Figueredo also precludes both sides

"from offering any further supplemental invalidity contentions or expert opinions without prior

permission from [this Court]."  (<u>Id.</u>)

     **A.**      <u>**Timeliness of Defense Expert's Indefiniteness Opinions**</u>

        Plaintiffs contend that Dr. Balakrishnan's indefiniteness opinions are "untimely

because the parties agreed (ironically, on MLBAM's insistence) and the Court ordered that all

indefiniteness issues would be decided during the <u>Markman</u> hearing process."  (Pltfs. Br. (Dkt.

No. 440) at 4)  Plaintiffs further argue that this District's

> Local [Patent] Rules required the parties to identify any claim terms for construction
> <u>Markman</u> process and submit any expert testimony upon which they would rely.  This
> included claim terms that MLBAM asserted were invalid for indefiniteness.  In
> accordance with those rules, Plaintiffs' expert provided his opinion and MLBAM took
> his deposition.  MLBAM, however, chose not to submit an expert declaration.

(<u>Id.</u>)

        MLBAM counters that "[a]t no point during the [<u>Markman</u>] hearing did the

parties or the Court discuss the possibility that MLBAM would be limited to the indefiniteness

issues already raised.  Thus, [this Court] did not rule that MLBAM would be precluded from

raising indefiniteness issues later that had not been briefed during <u>Markman</u>." (Def. Opp. (Dkt. No. 464) at 7) MLBAM further argues that it has not violated Local Patent Rule 7, because Dr. Balakrishnan's indefiniteness opinions address

> (1) issues not raised at <u>Markman</u> (ECF No. 440-1 at ¶¶ 1219-1237 and 1243-47) and (2) issues that were argued but not yet decided (<u>id.</u> at ¶¶ 1238-1242 and 1248-1283). The first category of issues was disclosed as part of MLBAM's Rule 7 disclosures, and Dr. Balakrishnan opined on them consistent with those prior disclosures. The second category of issues [was] raised during claim construction, and Dr. Balakrishnan opined on them given that no <u>Markman</u> order had yet issued. Thus, it was uncertain if, when, or how that order would resolve the indefiniteness issues raised during <u>Markman</u>.

(<u>Id.</u> at 8)

In her November 21, 2023 order, Judge Figueredo notes that Rule 26(a)(2)(D) of the Federal Rules of Civil Procedure "requires a party to make its expert disclosures 'at the times and in the sequence that the court orders.'" (Nov. 21, 2023 Order (Dkt. No. 475) at 4) Judge Figueredo further notes that "[u]nder Local Patent Rule 7, '"each party opposing a claim of patent infringement must serve," at a time set by the Court, any invalidity contentions.'" (<u>Id.</u> at 5 (quoting <u>Simo Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.</u>, 354 F. Supp. 3d 508, 510 (S.D.N.Y. 2019) (quoting Loc. Pat. R. 7))) "The invalidity contentions '"must identify each item of prior art that the party contends allegedly anticipates or renders obvious each asserted claim, and any other grounds of invalidity."'" (<u>Id.</u> (quoting <u>Simo Holdings</u>, 354 F. Supp. 3d at 510 (quoting Loc. Pat. R. 7)))

Judge Figueredo further notes that in a May 14, 2020 scheduling order, Judge Freeman "directed Defendant to serve on Plaintiffs by August 6, 2020, any grounds of invalidity or enforceability of any of the asserted claims"; "to exchange by September 8, 2020, proposed constructions of each disputed term, together with 'an identification of any extrinsic evidence known to the party on which it intends to rely[,] . . . including . . . testimony of <u>all witnesses</u>

including experts'"; and "required that each party [] identify in the chart of Joint Disputed Claim

Terms its 'proposed construction of each disputed term, together with . . . an identification of any

extrinsic evidence . . . including the testimony of <u>all</u> <u>witnesses</u> <u>including</u> <u>experts</u>.'"[2]  (Nov. 21,

2023 Order (Dkt. No. 475) at 5-6 (quoting Dkt. No. 74 at 2)) (emphasis added in Nov. 21, 2023

Order)

      "On October 27, 2020, the parties submitted their chart of Joint Disputed Claim

Terms, where Defendant identified the terms it claimed are indefinite." (<u>Id.</u> at 6 (citing Dkt. No.

131-2))  But despite Judge Freeman's order,

> Defendant did not identify any expert opinions that it would rely on as extrinsic evidence
> in support of its contentions of indefiniteness.  Further, some of the claim terms now
> identified by Dr. Balakrishnan as indefinite were not previously identified as indefinite
> by Defendant in the chart of Disputed Claim Terms, as required by [Judge Freeman's]
> order.

(<u>Id.</u>) (internal citations omitted)  Given these circumstances, Judge Figueredo concludes that Dr.

Balakrishnan's indefiniteness opinions are "undoubtedly untimely under the Court's scheduling

order." (<u>Id.</u>)

      Judge Figueredo also finds that Dr. Balakrishnan's indefiniteness opinions are

"untimely because the issue of indefiniteness was fully briefed and argued by the parties during

the claim construction process, at the <u>Markman</u> hearing, and is now under submission before

[this Court]." (<u>Id.</u>)  Judge Figueredo summarizes the relevant chronology as follows:

> In its responsive claim constructive brief submitted on December 17, 2020, Defendant
> did not rely on Dr. Balakrishnan, or any other expert, to support its contentions on the
> issue of indefiniteness.  Then, ahead of the claim construction hearing on July 15, 2021,
> Defendant told the Court that it should address the issues of indefiniteness as part of the
> claim construction order.  Indeed, Defendant represented to the Court that the record on
> indefiniteness was "complete," that it did not "plan" or "need" to "present additional
> expert testimony or any other evidence" on the issue of indefiniteness, and that the Court

---

[2]  This Court notes that the deadlines referenced by Judge Figueredo here were extended by
Judge Freeman's August 6, 2020 joint stipulation and order.  (<u>See</u> Dkt. No. 92)

had "everything it needs right now to settle indefiniteness issues."  Based on these representations, Judge Gardephe indicated that he intended to decide the indefiniteness issues as part of the Court's claim construction order.

(Id. at 6-7) (internal citations omitted)

Although Judge Figueredo acknowledges that "questions of indefiniteness may be resolved at summary judgment" (id. at 7 (citing Roche Diagnostics GMBH v. Enzo Biochem, Inc., No. 04-CV-4046 (RJS), 2017 WL 6988709, at *4 (S.D.N.Y. Oct. 2, 2017) and Indus. Tech. Research Inst. v. LG Electronics Inc., No. 13-CV-02016 (GPC), 2014 WL 6907449, at *3 (S.D. Cal. Dec. 8, 2014))), she concludes that "the parties here elected to resolve the issue earlier and not to leave the issue for resolution at summary judgment."  (Id.)  Indeed, "Defendant asked the Court to decide indefiniteness at claim construction" (id. (citing July 6, 2021 Def. Ltr. (Dkt. No. 242)), "[a]nd the parties jointly represented that the evidentiary record on the issue of indefiniteness [was complete] ahead of arguing indefiniteness at the Markman hearing on July 15, 2021."  (Id. (citing July 6, 2021 Def. Ltr. (Dkt. No. 242) and July 6, 2021 Pltfs. Ltr. (Dkt. No. 243))

Given these circumstances, Judge Figueredo finds that Defendant's disclosure of Dr. Balakrishnan's indefiniteness opinions "nearly two years after Defendant told the Court that the record on this issue was complete [to be] patently untimely."  (Id.)

**B.    Remedy**

Having determined that Defendant's disclosure of Dr. Balakrishnan's indefiniteness opinions was untimely, Judge Figueredo next considers an appropriate remedy, acknowledging that possible sanctions might include preclusion of Dr. Balakrishnan's indefiniteness opinions and/or "payment of reasonable expenses, including attorneys' fees,

caused by the disclosure failure." (Id. at 5 (citing Fed. R. Civ. P. 37(c)(1)(A))  In this regard,

Judge Figueredo considers "the so-called Outley factors"[3] set forth below:

> (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

(Id. at 5 (quoting Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 961 (2d Cir. 1997)))

As to the first factor – the party's explanation for the failure to comply with the discovery order – Judge Figueredo finds that MLBAM "has not adequately explained the late disclosure of Dr. Balakrishnan's report," given that "the report was disclosed after the time set by the Court in its scheduling order and after the parties represented to the Court that the evidentiary record on the issue was complete and ready for the Court's decision." (Id. at 8) Judge Figueredo concludes that this factor favors Plaintiffs.

As to the second factor – the importance of Dr. Balakrishnan's indefiniteness opinions – Judge Figueredo notes that "'[w]hether a claim is indefinite is [a] question of law,'" and thus Dr. Balakrishnan's opinions may aid the Court "in ruling on the pending indefiniteness issues." And given that "Dr. Balakrishnan is Defendant's only expert to opine on indefiniteness," precluding his opinions "would exclude from the record information that may be

---

[3]  In Outley v. City of New York, 837 F.2d 587, 590 (2d Cir. 1988), the Second Circuit stated that "[t]he district court has wide discretion in punishing failure to conform to the rules of discovery," and cited with approval Murphy v. Magnolia Electric Power Association, 639 F.2d 232 (5th Cir.1981), in which the Fifth Circuit "identified four factors which the district court should consider, including "'the explanation, if any, for the failure to name the witness [or to otherwise supplement the answer], the importance of the testimony of the witness, the need for time to prepare to meet the testimony, and the possibility of a continuance.'"" Outley, 837 F.2d at 590 (quoting Murphy, 639 F.2d at 235) (citation omitted).

helpful to the Court's resolution of the disputed issue."  (Id.) (citations omitted)  Judge Figueredo

concludes that this factor favors Defendant.

As to the third factor – the prejudice suffered by the opposing party – Plaintiffs

contend that the late disclosure of Dr. Balakrishnan's indefiniteness opinions harmed them in a

variety of ways:

(1) "Plaintiffs filed their reply claim construction brief, and argued indefiniteness issues at the Markman hearing, without knowing Dr. Balakrish[n]an's positions";

(2) "Plaintiffs were unable to take Dr. Balakrish[n]an's deposition prior to [submitting their] reply claim construction brief and the Markman hearing";

(3) "MLBAM had the benefit of knowing [Plaintiffs' expert] Dr. Stevenson's positions and of taking his deposition before filing its claim construction brief and the Markman hearing";

(4) "MLBAM has the benefit of having hidden its expert's opinions while the Court decides the indefiniteness issues, while MLBAM apparently has an undisclosed plan to take a second bite at the apple – this time with the benefit of 25 pages of expert testimony that it previously withheld" and has arguably "improperly bolster[ed] the record for appeal";

(5) "Plaintiffs must now scramble to respond in a matter of weeks to 25 pages of previously undisclosed expert opinions that MLBAM spent two years secretly preparing," and concerning "an issue for which MLBAM previously represented that the record was complete"; and

(6) "Plaintiffs will have to continue to spend time and money responding to Dr. Balakrishnan's untimely disclosures, even though the record is closed and the indefiniteness issue is under submission."

(Pltfs. Br. (Dkt. No. 440) at 11)  According to Plaintiffs, the prejudice they have suffered and

will suffer "can only be stopped by striking those belated indefiniteness opinions."  (Id.)

Judge Figueredo finds that "Plaintiffs have been prejudiced by the untimely

disclosure of Dr. Balakrishnan's report because they made their claim construction arguments

based on what they thought to be a complete record on the indefiniteness issues" (Nov. 21, 2023

Order (Dkt. No. 475) at 9 (citing Fleming v. Verizon N.Y., Inc., No. 03-CV-5639 (WHP), 2006

WL 2709766, at *8 (S.D.N.Y. Sept. 22, 2006))), and are now "'forced, at a very late date in the discovery process, to accommodate potentially significant shifts in the theories being offered against [them].'" (Id. (quoting Softel, Inc., 118 F.3d at 962))  Accordingly, Judge Figueredo concludes that this factor favors Plaintiffs.

As to the fourth factor – the possibility of a continuance or some other remedy short of preclusion that will address the prejudice to Plaintiffs – Judge Figueredo finds that while "Plaintiffs have been prejudiced by Defendant's untimely disclosure, the prejudice can be adequately addressed with a remedy short of preclusion." (Id.)  Noting that "[e]xpert discovery remains open," that "the parties have not yet briefed a summary judgment motion," that this Court has not issued a Markman ruling "and therefore the indefiniteness issues previously raised during claim construction remain unresolved," and that "no trial date has been set," Judge Figueredo concludes that "it is feasible to provide Plaintiffs with a continuance to depose Dr. Balakrishnan and [to allow Plaintiffs to] submit a rebuttal [expert] report."  (Id.)

Accordingly, Judge Figueredo denies Plaintiffs' request to strike Dr. Balakrishnan's indefiniteness opinions, but rules that "Plaintiffs may depose Dr. Balakrishnan and submit a rebuttal expert report addressing the issues of indefiniteness addressed by Dr. Balakrishnan."  She also awards Plaintiffs "reasonable attorneys' fees incurred in (1) preparing the instant motion [to strike], (2) deposing Dr. Balakrishnan, and (3) preparing a rebuttal expert report."  (Id. at 10 (citing Rekor Sys., Inc. v. Loughlin, No. 19-CV-7767 (LJL), 2022 WL 3141288, at *2 (S.D.N.Y. Aug. 5, 2022); Webb v. Zimmer, Inc., No. 14-CV-01106 (ADS) (GRB), 2018 WL 836366, at *8 (E.D.N.Y. Feb. 12, 2018); Equant Integrations Servs., Inc. v. United Rentals (N. Am.), Inc., 217 F.R.D. 113, 118 (D. Conn. 2003)))

### III.    DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER

In objecting to Judge Figueredo's order,[4] MLBAM contends that she erred in ruling that the disclosure of Dr. Balakrishnan's indefiniteness opinions was untimely (1) under Judge Freeman's scheduling orders and Local Patent Rule 7; (2) given the parties' agreement that indefiniteness issues would be resolved at claim construction; and (3) even though this Court has not issued a claim construction decision.  Defendant further contends that Judge Figueredo erred in granting Plaintiffs a continuance in order to depose Dr. Balakrishnan and submit a rebuttal expert report, and in awarding Plaintiffs' reasonable attorneys' fees incurred in deposing Dr. Balakrishnan and preparing a rebuttal expert report.  (Def. Obj. (Dkt. No. 476) at 15-23)

According to MLBAM, Dr. Balakrishnan's indefiniteness opinions were timely, no continuance was appropriate, and the monetary sanctions levied on MLBAM should be vacated.  (Id. at 23)

### A.    Timeliness of Expert Disclosure Under Scheduling Orders

MLBAM contends that – in ruling that the disclosure of Dr. Balakrishnan's indefiniteness opinions was untimely under Judge Freeman's scheduling orders – Judge Figueredo violated "both the Local Patent Rules and Magistrate Judge Freeman's prior orders in this case."  (Def. Obj. (Dkt. No. 476) at 15)  MLBAM complains that while Judge Figueredo states that "Judge Freeman's Scheduling Order 'set a date by which the parties, pursuant to Local Patent Rule 7, had to identify any issues of indefiniteness and expert opinions related to indefiniteness'" (id. (quoting Nov. 21, 2023 Order (Dkt. No. 475) at 5)) (emphasis added in Def.

---

[4]  MLBAM incorrectly refers to Judge Figueredo's order as a report and recommendation.  (See Def. Obj. (Dkt. No. 476))  This Court referred this case to Judge Figueredo for general pretrial supervision (see Dkt. No. 343), and her non-dispositive order addressing Plaintiffs' motion to strike falls within that referral.

Obj.), "Local Patent Rule 7 says nothing about disclosing expert opinions with invalidity contentions. Nor does Judge Freeman's Scheduling Order – which required MLBAM to serve, '[p]ursuant to Local Patent Rule 7,' invalidity contentions that identify 'any other grounds of invalidity . . . of any of the asserted claims' – call for any expert disclosures." (Id. (citing Dkt. No. 74))

MLBAM further argues that in an October 2, 2020 order, Judge Freeman ruled – in connection with Plaintiffs' motion to compel MLBAM to disclose its invalidity contentions – that MLBAM was required to "'supplement its invalidity contentions by <u>specifying</u> . . . <u>which claims</u> are allegedly invalid for the additionally stated reasons [including indefiniteness],'" but "explicitly rejected 'requir[ing] any additional supplementation at [that] juncture.'" (Id. (quoting Dkt. No. 110)) (emphasis added in Def. Obj.) Accordingly, "Judge Figueredo's Order that MLBAM 'had to identify . . . expert opinions related to indefiniteness' in its Rule 7 disclosures thus conflicts head-on with Judge Freeman's prior ruling." (Id. at 15-16 (quoting Nov. 21, 2023 Order (Dkt. No. 475) at 5))

Plaintiffs respond that Judge Figueredo "correctly determined that [Judge Freeman's] Scheduling Order 'directed the parties to exchange by September 8, 2020 their proposed construction of each disputed term, together with "an identification of any extrinsic evidence known to the party on which it intends to rely . . . including . . . testimony of <u>all witnesses including experts</u>[,]"'" as "[t]he quoted language comes directly from [Judge Freeman's] Scheduling Order." (Pltfs. Resp. (Dkt. No. 477) at 12-13 (quoting Nov. 21, 2023 Order (Dkt. No. 475) at 6)) (emphasis in Nov. 21, 2023 Order) Plaintiffs contend that Judge Figueredo correctly concluded "that the parties were [directed] to 'identify in the chart of Joint Disputed Claim Terms their "proposed construction of each disputed term, together with an

identification of any extrinsic evidence . . . including the testimony of <u>all</u> <u>witnesses</u> <u>including</u>

<u>experts</u>[,]"'" as the language Judge Figueredo references comes directly from Judge Freeman's

scheduling order.  (<u>Id.</u> at 13 (quoting Nov. 21, 2023 Order (Dkt. No. 475) at 6)) (emphasis in

Nov. 21, 2023 Order)

         Plaintiffs also contend that while MLBAM "argues (irrelevantly) that Local

Patent Rule 7 did not require MLBAM to identify which claim terms were indefinite," "Rule 7 is

only one of the many steps in the local patent rules and the agreed claim construction process."

(<u>Id.</u> at 15)  In this regard, Plaintiffs point out that the Case Management Plan

> also included an orderly process for complying with Local Patent Rule 11.  That process
> required identifying all disputed claim terms and identifying the testimony of all
> witnesses including experts.  MLBAM listed eleven terms that it contended were
> indefinite and did not identify any expert testimony.  MLBAM provides no reason that it
> did not, or could not, identify all allegedly indefinite terms at that time, or why it failed to
> identify any expert testimony.

(<u>Id.</u>) (internal citations omitted)

         This Court concludes that Judge Freeman's scheduling orders required the parties

to "jointly exchange proposed constructions of each disputed term, together with an

identification of all references from the intrinsic evidence that support that construction, and an

identification of any extrinsic evidence known to the party on which it intends to rely either to

support its proposed construction or to oppose any other party's proposed construction,

including, but not limited to . . . testimony of all witnesses including experts," and to do so by

October 6, 2020.[5]  (Dkt. No. 74 at 3; Dkt. No. 92 at 2)  This Court further concludes that Judge

Freeman's scheduling orders required the parties to "file a Joint Disputed Claim Terms Charge

including . . . [e]ach party's proposed construction of each disputed term, together with an

---

[5]  As discussed above, Judge Freeman extended the original September 8, 2020 deadline to
October 6, 2020.  (<u>See</u> Dkt. No. 92 at 2)

identification of all references from the intrinsic evidence that support that construction, and an

identification of any extrinsic evidence known to the party on which it intends to rely either to

support its proposed construction or to oppose any other party's proposed construction,

including, but not limited to . . . testimony of all witnesses including experts," and to do so by

October 27, 2020.  (Dkt. No. 74 at 3; Dkt. No. 92 at 2)

    And while Local Patent Rule 7 may not have required the parties to disclose

expert opinions, "[a] party that fails . . . to obey a court order concerning discovery . . .  may be

sanctioned under Rule 37."  Columbia Cas. Co., 2016 WL 184407, at *2.  Here, Judge

Freeman's scheduling orders required the parties to identify and disclose any expert testimony

supporting their arguments about indefiniteness, and to do so by certain specified dates in

October 2020.  (Dkt. No. 74 at 3; Dkt. No. 92 at 2)

    And contrary to Defendant's argument, Judge Freeman's October 2, 2020 order –

which directed MLBAM "to supplement its invalidity contentions by specifying which claims of

the patent-in-suit are allegedly rendered invalid by the identified prior art (singly or in

combination with other prior art) and which claims are allegedly invalid for the additionally

stated reasons" – does not change the analysis.  (Dkt. No. 110)  While Judge Freeman opted "not

[to] require any additional supplementation at [that] juncture" (id.), that ruling was in response to

Plaintiffs' request

> that the Court order Defendant to disclose its invalidity contentions for each asserted
> claim, as required by Local Patent Rule 7, including:
>
> > (1) which of the 129 cited prior art references MLBAM contends
> > anticipates that claim;
> >
> > (2) which combination of prior art MLBAM contends renders the
> > claim obvious;
> >
> > (3) which claims MLBAM contends are invalid under 35 U.S.C. §

101; and

(4) which claim element of each claim (if any) MLBAM contends is indefinite, not enabled, or does not have an adequate written description.

(Pltfs. Mot. (Dkt. No. 106) at 2)

Accordingly, in deciding "not [to] require any additional supplementation at this juncture" (Dkt. No. 110), Judge Freeman was referring to the requirements of Local Patent Rule 7 cited by Plaintiffs, and not to the joint exchange of claim construction terms or the joint disputed claim terms chart requiring expert disclosure. (See Dkt. No. 74; Dkt. No. 92)

In sum, Judge Figueredo properly concluded that Dr. Balakrishnan's indefiniteness opinions were untimely in light of Judge Freeman's scheduling orders. (See Nov. 21, 2023 Order (Dkt. No. 475) at 5)

## B.    Timeliness of Expert Disclosure Given Agreement to Address Indefiniteness at Claim Construction

As discussed above, Judge Figueredo also ruled that the disclosure of Dr. Balakrishnan's indefiniteness opinions was untimely in light of the parties' agreement to address indefiniteness at claim construction. MLBAM complains, however, that "Judge Figueredo's Order cited no authority in this District, and MLBAM is aware of none, that prevented a party who raised certain indefiniteness arguments during claim construction from raising different indefiniteness arguments at summary judgment." (Def. Obj. (Dkt. No. 476) at 18) To the contrary, "courts in this District have decided some indefiniteness issues at claim construction and others at summary judgment," and have "considered indefiniteness summary judgment motions simultaneously with constructions of other disputed claims." (Id. at 17-18 (citing Focus Prod. Grp. Int'l, LLC v. Kartri Sales Co., Inc., No. 15 CIV. 10154 (PAE), 2018 WL 3773986, at *7 (S.D.N.Y. Aug. 9, 2018); Focus Prod. Grp. Int'l, LLC v. Kartri Sales Co., Inc., 454 F. Supp.

3d 229, 244 (S.D.N.Y. 2020); <u>Green Pet Shop Enters., LLC v. Eur. Home Design, LLC</u>, No. 17-

CV-6238 (JMF), 2019 WL 1172069, at *3 (S.D.N.Y. Mar. 13, 2019))) (emphasis in Def. Obj.)

MLBAM further contends that Judge Figueredo's finding "that 'the parties here

elected to resolve the issue [of indefiniteness] earlier and not to leave the issue for resolution at

summary judgment' . . . is also incorrect and contrary to the record." (<u>Id.</u> at 18 (quoting Nov. 21,

2023 Order (Dkt. No. 475) at 7))  In this regard, MLBAM states the following:

> When the Court asked the parties to brief whether to decide the indefiniteness issues
> before it during claim construction, MLBAM argued in favor of "settling the
> indefiniteness issues <u>before the Court</u> in the Court's forthcoming <u>Markman</u> order."
> MLBAM further represented that it "does not plan – and does not need – to present
> additional expert testimony" for those terms already briefed, and that "[i]t is proper for
> the Court to determine <u>all disputed claim construction</u> issues on this complete record."
> Crucially, nowhere did MLBAM say the "disputed claim construction issues" "before the
> Court" constituted all indefiniteness arguments MLBAM may bring in this case.

(<u>Id.</u>) (emphasis added in Def. Obj.) (internal citations omitted)

And while Plaintiffs "requested that MLBAM 'not [be] permitted to re-litigate

indefinite issues later in the case'" (<u>id.</u> at 19 (quoting July 6, 2021 Pltfs. Ltr. (Dkt. No. 243) at

3)), this "Court entered no such order.  Instead, the Court only indicated on the record that it

'intend[ed]' to determine the indefiniteness issues then before it in its claim construction order.

The parties did not discuss, and the Court did not rule, that MLBAM would be limited to the

indefiniteness issues raised at claim construction."  (<u>Id.</u>) (internal citations omitted)

Plaintiffs respond that MLBAM is "taking positions 180 degrees opposite of the

position it took to convince the Court to decide indefiniteness during claim construction, instead

of [at] summary judgment."  (Pltfs. Resp. (Dkt. No. 477) at 8)  Plaintiffs point out that this Court

heard argument and requested briefing on the issue of when indefiniteness should be addressed,

and that MLBAM vigorously asserted that indefiniteness should be addressed at claim

construction rather than at summary judgment:

On the first day of the <u>Markman</u> hearing, the Court asked the parties to explain "what the advantage is in this case of my addressing the indefiniteness points now <u>rather than</u> at summary judgment." MLBAM insisted on doing it during claim construction instead of summary judgment because it is "necessary for the Court to decide now whether claim terms are indefinite . . . to guide the rest of the process." The Court then agreed "to receive any additional briefing the parties wish to give me about why I should resolve the indefinite[ness] issues now" and issued an order requiring the parties to submit letters "addressing whether this Court should decide Defendant's indefiniteness arguments in connection with claim construction <u>or</u> at summary judgment." In its letter brief, MLBAM asked the Court to "decide whether any claims of the '530 Patent are indefinite in the Court's forthcoming claim construction order, in keeping with well-established Southern District practice." As explained by [MLBAM's counsel] in his letter to the Court, "<u>In short, it is in the interest of all involved – the Court and the litigants – to settle this issue now</u>." Plaintiffs acquiesced, "provided that Defendants are not permitted to re-litigate indefinite issues later in the case." In light of that agreement, the Court ruled that it would decide indefiniteness during claim construction. There is no ambiguity about when indefiniteness was to be heard — and no party has asked that the Court revisit that decision or reopen the record. MLBAM is estopped from arguing otherwise now.

(<u>Id.</u> at 16-17) (emphasis added in Pltfs. Resp.) (internal citations omitted)

As Judge Figueredo correctly determined, this Court accepted MLBAM's arguments and ruled that indefiniteness issues would be addressed at claim construction, rather than at summary judgment: "The defendant contends that I should address indefiniteness in connection with claim construction. Plaintiffs say that they do not object to the Court deciding the indefinite[ness] issues in connection with claim construction, so that is what I intend to do." (<u>Markman</u> Tr. (Dkt. No. 255) at 2:11 – 2:15)

Given MLBAM's request that indefiniteness be addressed at claim construction and the Court's ruling granting that request, Judge Figueredo did not err in concluding that the disclosure of Dr. Balakrishnan's indefiniteness opinions – after the <u>Markman</u> hearing – was untimely.

### C.    Timeliness of Expert Disclosure Given that No Claim Construction Ruling Has Been Issued

MLBAM argues that until this Court issues its rulings on claim construction "any finding that [Dr. Balakrishnan's indefiniteness] opinions are untimely is premature." (Def. Obj.

(Dkt. No. 476) at 20)  In this regard, MLBAM states that it "did not need to, and did not, submit expert testimony to support the indefiniteness issues it raised during claim construction." "Dr. Balakrishnan's report . . . is not a supplement to the claim construction record, nor is it an attachment to any submission to the Court." (Id. at 19) (internal quotations and citations omitted)  But because more than two years have passed since the <u>Markman</u> hearing and no claim construction order has been issued, and because "expert discovery ha[s] since commenced, Dr. Balakrishnan prepared a lengthy report on all the invalidity issues MLBAM had disclosed in its amended invalidity contentions," and "included additional opinions on those indefinite terms already argued to preserve potential arguments if the Court ultimately opts to decide these issues at summary judgment." (Id. at 20)  MLBAM also points out that Judge Figueredo acknowledged that Dr. Balakrishnan's indefiniteness opinions "'may . . . aid Judge Gardephe in ruling on the pending indefiniteness issues,'" and thus "any finding that [his] opinions are untimely is premature" until this Court issues claim construction rulings. (Id. (quoting Nov. 21, 2023 Order (Dkt. No. 475) at 8))

        Plaintiffs respond that Judge Figueredo "merely determined not to strike" Dr. Balakrishnan's indefiniteness opinions "from the expert report," but "left for another day" whether his testimony should be considered. (Pltfs. Resp. (Dkt. No. 477) at 17)

        While no claim construction ruling has been issued, that does not change the fact that the disclosure of Dr. Balakrishnan's indefiniteness opinions was untimely for the reasons stated above.  Accordingly, Judge Figueredo's ruling was not premature.

**D.     <u>Relief Granted by the Magistrate Judge</u>**

        MLBAM contends that Judge Figueredo erred in granting Plaintiffs the right to depose Dr. Balakrishnan concerning his indefiniteness opinions and to submit a rebuttal report addressing those opinions.  According to MLBAM, in granting such relief Judge Figueredo

"misperceive[d] the posture of this case." (Def. Obj. (Dkt. No. 476) at 20) According to

MLBAM, "[a]ll expert discovery deadlines were stayed after the parties served their opening

expert reports," and "[a]s of this filing, <u>no</u> party has served a rebuttal report, and <u>no</u> party has

deposed the other's expert during expert discovery." (<u>Id.</u>) (emphasis in Def. Obj.) Indeed,

"[b]efore the [expert discovery] schedule was interrupted, Plaintiffs were . . . going to serve a

rebuttal to Dr. Balakrishnan's entire 456-page expert, and depose Dr. Balakrishnan on that

report." (<u>Id.</u>) MLBAM further asserts "that only a small fraction of this work (and the

accompanying costs) would focus on the 23 pages of the expert report relating to the

indefiniteness issues raised by Plaintiffs' motion – work that will have been done in the ordinary

course of expert discovery pursuant to deadlines that have not yet been set." (<u>Id.</u> at 20-21)

Accordingly, "the Order's remedy of a 'continuance' is erroneous" and "should be set aside in

favor of resuming the ordinary expert discovery schedule the parties had been pursuing before

deadlines were stayed." (<u>Id.</u> at 21)

    Plaintiffs respond that Judge Figueredo "held that '[e]ven though Plaintiffs have

been prejudiced by Defendant's untimely disclosure, the prejudice can be adequately addressed

with a remedy short of preclusion,'" because "'it is feasible to provide Plaintiffs with a

continuance to depose Dr. Balakrishnan and submit a rebuttal report' on the issue of

indefiniteness." (Pltfs. Resp. (Dkt. No. 477) at 19 (quoting Nov. 21, 2023 Order (Dkt. No. 475)

at 9)) Judge Figueredo thus "determined [that] the last [<u>Outley</u>] factor weighed in favor of

MLBAM only because [the] lesser remedy [of a continuance] was available." (<u>Id.</u>) Finally,

Plaintiffs argue that absent the relief Judge Figueredo granted – the right to depose Dr.

Balakrishnan and submit a rebuttal report – the "[<u>Outley</u>] factors would mandate striking the

untimely and prejudicial expert opinions," given the unfair prejudice Plaintiffs would otherwise suffer.  (Id.)

       In her order, Judge Figueredo carefully weighed the Outley factors to determine the most appropriate sanction to ensure that Plaintiffs would not be prejudiced by MLBAM's untimely disclosure of Dr. Balakrishnan's indefiniteness opinions.  (See Nov. 21, 2023 Order (Dkt. No. 475) at 8-10)  While MLBAM is correct that expert discovery was stayed on April 28, 2023 (Dkt. No. 462), with the stay partially lifted on December 10, 2024 (Dkt. No. 494), a full resumption of the expert discovery schedule would not remedy the prejudice Plaintiffs face in having to address Dr. Balakrishnan's untimely opinions concerning indefiniteness.

       As discussed above, Defendant deposed Plaintiffs' expert, Dr. Robert Louis Stevenson, and questioned him about his indefiniteness opinions on November 23, 2020, before Defendant submitted its responsive claim construction brief on December 17, 2020, and before this Court conducted the Markman hearing on May 27, 2021, and July 15, 2021.  (See Pltfs. Br. (Dkt. No. 440) at 8-9)  By contrast, Plaintiffs had no opportunity to depose Dr. Balakrishnan concerning his indefiniteness opinions before submitting their reply claim construction brief, or before this Court conducted the Markman hearing.  The remedies granted by Judge Figueredo – allowing Plaintiffs to depose Dr. Balakrishnan and submit a rebuttal report addressing the indefiniteness opinions he offered – appropriately address the unfair prejudice Plaintiffs would otherwise face in addressing Dr. Balakrishnan's untimely indefiniteness opinions.  See, e.g., Simo Holdings, 354 F. Supp. 3d at 510–11 (extending deadline for plaintiffs to serve rebuttal expert report after defendants filed untimely expert reports; previous deadline was "too short a turnaround in light of defendants' dilatory action," and left "insufficient time for [plaintiffs'] expert to consider the new theories and references [offered by defendants' experts.]")  Moreover,

even if "Plaintiffs were . . . going to serve a rebuttal to Dr. Balakrishnan's entire 456-page expert, and depose Dr. Balakrishnan on that report" "[b]efore the [expert discovery] schedule was interrupted" (Def. Obj. (Dkt. No. 476) at 20) – as Defendant argues – an amended expert discovery schedule has not yet been implemented (see Dkt. No. 462), and the continuance granted to Plaintiffs to depose Dr. Balakrishnan and submit a rebuttal report addressing his indefiniteness opinions may factor into the deadlines set in an amended schedule.

This Court concludes that the remedies Judge Figueredo provided for – the deposition of Dr. Balakrishnan and the opportunity to submit a rebuttal expert report – are appropriate given Defendant's untimely disclosure of Dr. Balakrishnan's indefiniteness opinions.

E.    **Attorneys' Fee Award**

MLBAM contends that Judge Figueredo erred in awarding Plaintiffs the attorneys' fees they will incur in deposing Dr. Balakrishnan and preparing a rebuttal expert report.  According to Defendant, Judge Figueredo's order "requires MLBAM to pay for work that Plaintiffs would have had to undertake – and pay for – in the ordinary course of expert discovery regardless of their motion to strike."  (Def. Obj. (Dkt. No. 476) at 21)

MLBAM also complains that "[t]he Order grants relief that Plaintiffs never requested, that the parties never briefed, and that MLBAM was not aware the Court was considering until the Order issued."  (Id.)  MLBAM further complains that it "was not afforded a hearing on Plaintiffs' motion before the Court issued sanctions," and given that Judge Figueredo "denied Plaintiffs' motion entirely, the authority under which the Court issued sanctions is unclear."  (Id. (citing Mackler Prods., Inc. v. Cohen, 225 F.3d 136, 144 (2d Cir. 2000) and Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96 (2d Cir. 1997)))  MLBAM also points out that Judge Figueredo did not grant it monetary sanctions in connection with an unrelated discovery dispute. (Id. at 22)

32

In response, Plaintiffs say that "MLBAM does not dispute that Judge Figueredo had the authority to assign costs" under Fed. R. Civ. P. 37(c)(1), and does not "make any effort to distinguish the cases cited by Judge Figueredo in support of her assignment of costs given the issues before the Court and the violations she determined that MLBAM committed." (Pltfs. Resp. (Dkt. No. 477) at 23-24 (citing Nov. 21, 2023 Order (Dkt. No. 475) at 10)) As to MLBAM's due process argument, Plaintiffs argue that – in moving to strike Dr. Balakrishnan's indefiniteness opinions, they also asked Judge Figueredo to "grant[] such other and further relief as the Court deems just and proper.'" (Id. at 23 (quoting Pltfs. Mot. (Dkt. No. 439) at 1)) According to Plaintiffs, this boilerplate request put Defendant on notice that they might face an adverse attorneys' fee award. (Id. (citing Nov. 21, 2023 Order (Dkt. No. 475) at 10))

While Rule 37(c)(1) authorizes courts to award reasonable expenses, including attorneys' fees, where a party without substantial justification fails to disclose information required by Rule 26(a), Plaintiffs did not seek an award of attorneys' fees in their motion to strike. (See Pltfs. Mot. (Dkt. No. 439)) Accordingly, Defendant was not put on notice that it might face a sanction in the form of an attorneys' fee award in connection with Plaintiffs' motion, and Defendant did not address whether such a sanction would be appropriate in its opposition to Plaintiffs' motion. (See Def. Opp. (Dkt. No. 464)) Given these circumstances, Judge Figueredo's award of attorneys' fees is vacated, and this issue is remanded for further briefing and consideration by the Magistrate Judge.

## CONCLUSION

For the reasons stated above, Judge Figueredo's award of attorneys' fees is vacated and remanded. Judge Figueredo's order (Dkt. No. 475) is otherwise affirmed. Because the stay as to expert discovery has been lifted (see Dkt. No. 462), Plaintiffs' motion to compel Defendant to comply with the order partially lifting the expert discovery stay (Dkt. No. 504), and

Defendant's motion for a stay pending resolution of MLBAM's objections to Judge Figueredo's order partially lifting the expert discovery stay (Dkt. No. 505), are denied as moot.  The Clerk of Court is directed to terminate the motions (Dkt. Nos. 439, 504, 505)

Dated: New York, New York
      July 8, 2025

                        SO ORDERED.

                        Paul G. Gardephe
                        Paul G. Gardephe
                        United States District Judge